# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EDELSON PC, an Illinois Professional corporation, )<br>)<br>)<br>Plaintiff, )<br>)<br>THOMAS GIRARDI, an )<br>individual, et al., )<br>)<br>Defendants. )<br>) | Case No.:<br>20-cv-07115<br><br>Honorable Matthew F. Kennelly |

**DEFENDANT DAVID LIRA'S MEMORANDUM IN SUPPORT OF HIS OPPOSED MOTION TO DISMISS PURSUANT TO FEDERAL RULES OF CIVIL PROCEDURE 12(b)(1), 12(b)(2), AND 12(b)(6)**

Defendant, DAVID LIRA ("Lira"), an individual, by and through his attorneys, ROBIE & MATTHAI, APC and SWANSON, MARTIN & BELL, LLP, and, pursuant to Fed. R. Civ. P. 12(b)(1), 12(b)(3) and 12(b)(6), moves this court to dismiss Plaintiff's, EDELSON PC's. Complaint (Doc. No. 1), or alternatively to stay the matter pending administration of claims in the Girardi and Girardi Keese bankruptcies, and, in support thereof, Lira states as follows:

## I. INTRODUCTION

Edelson claims Girardi Keese, Thomas Girardi and David Lira (1) failed to pay certain Lion Air Plaintiffs their settlement monies and (2) breached the contract between Edelson and Girardi Keese by failing to pay Edelson its share of the attorneys' fees owed after payment to those plaintiffs in those actions.

1

First, Edelson does not represent the Lion Air plaintiffs and therefore lacks standing to bring any claims on behalf of those individuals. Those claims should be dismissed pursuant to FRCP 12(b)(1).

Second, the contract that Edelson alleges was breached is between Edelson and Girardi Keese. Monies paid by Boeing were paid to Girardi Keese. Lira was not an individual party to the contract and did not receive funds from Boeing. Mr. Lira, a salaried employee of Girardi Keese, has no individual liability under those contracts. Any determination as to Lira's derivative liability is first dependent on a finding that Girardi Keese, the party to the contract, is liable. Accordingly, Edelson cannot state a claim against Lira. (FRCP 12(b)(6)).

Third, Girardi Keese and Thomas Girardi are debtors in bankruptcy proceedings in California. Continued litigation against Lira on these claims would necessitate the continuance of litigation against Girardi and Girardi Keese in violation of the automatic bankruptcy stays.

Fourth, as an employer, Girardi Keese must indemnify Lira for the claims asserted in the complaint. As such, Girardi and Girardi Keese are indispensable parties and Lira cannot file a cross-claim against either of them here due to the automatic stays in bankruptcy. The claims against Lira and Girardi Keese and Girardi cannot be severed. Therefore, the claims against Lira should be dismissed, or at a minimum stayed, pursuant to 11 U.S.C.A. §362 (a)(1) and (3), and the court's inherent authority to control the proceedings before it.

Fifth, since the claims against Girardi and Girardi Keese will be litigated in the Bankruptcy Court for the Central District of California, co-defendant Griffin is likely to be dismissed in this action based on his FRCP 12(b)(2) motion for lack of personal jurisdiction, and Mr. Lira is a resident of the Central District of California, the proper venue for these claims is the Central District of California. Venue here is improper. FRCP 12(b)(3).

## II. PROCEDURAL HISTORY

Edelson PC filed the complaint in this action on December 2, 2020. The complaint alleges claims for (1) constructive trust, (2) accounting, (3) breach of contract, and (5) conversion against defendant David Lira ("Lira.")[1]

On December 18, 2020, Involuntary Bankruptcy Petitions were filed against Thomas Vincent Girardi ("Girardi") and Girardi Keese ("GK") in the Central District of California. (*See.* United States Bankruptcy Court for the Central District of California Case Nos. 2:20-bk-21020-SK and 2:20-bk-21022-SK; Request for Judicial Notice filed concurrently herewith Exhibits 1-4)

The deadline for Mr. Lira to respond to the complaint was continued by the January 27, 2021, order of this Court to February 12, 2021.

## III. STATEMENT OF RELEVANT FACTS

Girardi Keese represented certain plaintiffs in the matter of *In Re: Lion Air Flight JT610 Crash,* United District Court for the Northern District of Illinois, Eastern District Case No.: 1:18-cv-07686. Plaintiff Edelson, an Illinois professional corporation, was engaged as local counsel to assist Girardi Keese in the litigation and the settlement process for certain Lion Air Victims. (*See*, Doc. No. 1, ¶¶8, 38, 17). In that role, Edelson secured court approval for certain settlements in the underlying action (*See*, Doc. No. 1, ¶¶40, 42).[2]

The funds for the settlements were received and held by Girardi Keese. (*See*, Doc. No. 1, ¶45). GK was the law firm that had been engaged by and had the relationship with those clients. (*See*, Doc. No. 1, ¶48). Money was transferred from Boeing to Girardi Keese in mid-2020. This

---

[1] Edelson's Fourth Cause of Action for tortious interference with contract is not alleged against Mr. Lira.
[2] The clients for whom Edelson obtained Court Approved settlements are identified on *In Re: Lion Air Flight JT610 Crash,* United District Court for the Northern District of Illinois, Eastern District Case No.: 1:18-cv-07686, docket entries nos. 384, 419, 424, 427. (*See*, Doc No. 1, ¶¶40, 42 p. 11; ; Request for Judicial Notice filed concurrently herewith, Exhibits 5-8)

3

money was for the benefit of Lion Air clients represented by GK, minus agreed upon attorneys' fees. (*See*, Doc. No. 1, ¶¶86, 97, 115). Thomas Girardi exercised *exclusive and total control* of all bank accounts for GK. (*See*, Doc. No. 1, ¶63).

Edelson seeks to "recover monies due and owing to itself as well as to seek the disgorgement of all monies due and owing to all clients of Girardi Keese in the matter of *In Re: Lion Air Flight JT 610 Crash*" (*See*, Doc. No. 1). "While the present Complaint is brought in part to enforce [Edelson's] fee agreement with GK, those fees are not the primary focus of this Complaint; rather, this Complaint also seeks to force GK… to uphold its fiduciary duty to the surviving families of the victims of Lion Air Flight 610 that it agreed to represent." (*See*, Doc. No. 1, ¶7). Edelson cannot take possession of any commingled funds unless and until the Lion Air clients receive their share of the settlement money paid by Boeing. (*See*, Doc. No. 1, ¶94)."Edelson *will not* accept any attorneys' fees for its work in *In Re: Lion Air Flight JT 610 Crash* until a full, court supervised accounting has been performed that confirms each and every relevant client has first been paid in full." (*See*, Doc. No. 1, fn.3). Edelson seeks (1) an accounting; (2) the disgorgement of all such funds from any Defendant who is in receipt of those funds; (3) transfer of those funds to the appropriate client recipients; and "*only after those steps have been accomplished…*(4) the payment of contractually required attorneys' fees to Edelson PC." (*See*, Doc. No. 1, ¶16).

Plaintiff entered into two contracts with GK. (*See*, Doc. No. 1, ¶102). By the terms of both contracts with GK, Edelson was expected to act as local counsel, as well as to participate directly in the litigation and settlement process. (*See*, Doc. No. 1, ¶¶102-103). Edelson alleges that GK, Girardi and Lira breached those co-counsel agreements with Edelson for the Lion Air cases. (*See*, Doc. No. 1, ¶15). Edelson alleges that Defendants breached their contractual

4

obligations by not paying Edelson its share of attorneys' fees. (*See*, Doc. No. 1, ¶106). Edelson claims to have contractually created property rights to specific percentages of the attorneys' fees generated by the settlement funds at issue. (*See*, Doc. No. 1, ¶¶87, 116).

Edelson seeks the imposition of a constructive trust on all money transferred from Boeing to GK in connection with the Lion Air settlements, for the benefit of the Lion Air clients first, then for the benefit of Plaintiff, if sufficient funds remain in trust. In the alternative, Plaintiff requests that all such sums should be disgorged. (*See*, Doc. No. 1, ¶95). Edelson also seeks an order requiring a full and complete accounting of all transactions or records relating to the Lion Air settlement money. (*See*, Doc. No. 1, ¶100).

On December 18, 2020, Involuntary Bankruptcy Petitions were filed against Girardi and GK in the Central District of California. (United States Bankruptcy Court for the Central District of California Case Nos. 2:20-bk-21020-SK and 2:20-bk-21022-SK; Request for Judicial Notice filed concurrently herewith Exhibits 9-13). Edelson acknowledges that GK has substantial financial liabilities and obligations to creditors. (*See*, Doc. No. 1, ¶¶5, 75, 76, 77, 78, 79).

Edelson no longer represents the clients whose settlement funds are at issue. (Request for Judicial Notice filed concurrently herewith Exhibits 9-13.)

Defendant Lira is a former W-2 salaried employee of GK, a law firm based in Los Angeles, California, and a resident of Los Angeles, California. Lira is, and has always been, a resident of the State of California and has never had a place principal place of business or residence in Illinois. (*See,* Declaration of David Lira ¶¶2-4.)

## IV. LEGAL ARGUMENT

### A. EDELSON HAS NO STANDING TO BRING CLAIMS ON BEHALF OF INDIVIDUALS IT DOES NOT REPRESENT.

Edelson does not represent the clients whose settlement funds it seeks to recover or whose rights it purports to address in this action. (*See,* Request for Judicial Notice filed concurrently herewith Exhibits 9-13). Edelson has no standing to bring a claim on their behalf.

First, the individuals whose rights are sought to be adjudicated are not parties to this action.[3] Second, Edelson no longer represents them. When an attorney-client relationship ends, the attorney loses all right and power to advocate on the client's behalf or to seek remedies for the client. Third, the claims to the settlement funds belong to the clients.

A cognizable claim must relate to the plaintiff's own legal rights and interests, not the legal rights and interests of third parties. *See, Elk Grove United School District v. Newdow,* 542 U.S. 1, 14 (2004). By its own pleading, Edelson makes clear its intent to litigate the rights of others. This it cannot do.

Edelson's claims for Constructive Trust, Accounting, and Conversion, which seek an accounting and to recover fees on behalf of these individuals should be dismissed pursuant to F.R.C.P. 12(b)(1).

### B. THE BANKRUPTCY STAYS IN THE GIRARDI BANKRUPTCIES SHOULD APPLY TO LIRA; LITIGATION OF THE CLAIMS AGAINST LIRA NECESSARILY REQUIRES ADJUDICATION OF CLAIMS AGAINST GK AND GIRARDI—TWO DEBTORS IN BANKRUPTCY

Pursuant to 11 U.S.C.A. §362 (a)(1) the filing of an involuntary bankruptcy petition under U.S.C.A. §303 operates as a stay of the continuation of judicial or other actions against the debtor that were commenced before the commencement of the bankruptcy or to recover a claim

---

[3] The failure to join these individuals as parties would also justify this court dismissing the claims under Rule 12(b)(7).

6

against the debtor that arose before the commencement of the bankruptcy. Similarly, pursuant to 11 U.S.C.A. §362(a)(3) any act to obtain possession of property of the bankruptcy estate or to exercise control over property of the estate is stayed.

    The House Report on the bill enacting the §362 automatic stay succinctly explains,

> [t]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell form his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> [t]he automatic stay also provides creditor protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property. Those who acted first would obtain payment of the claims in preference to and to the detriment of other creditors. Bankruptcy is designed to provide an orderly liquidation procedure under which all creditors are treated equally. A race of diligence by creditors for the debtor's assets prevents that.
>
> …The scope of [§362(a)(1)] is broad. All proceedings are stayed, including arbitration, license revocation, administrative, and judicial proceedings. Proceeding in this sense encompasses civil actions as well, and all proceedings even if they are not before governmental tribunals.*See,* H.R.Rep. No. 95-595, at 340 (1977) *reprinted in* 1978 U.S.C.C.A.N. 5963, 6296-97. *See also* S. Rep. No 95-989, at 49, 54-55 (1978), *reprinted in* 1978 U.S.C.C.A.N. 5787, 5835m 5840-41.

    The stay protects creditors from acting unilaterally in self-interest to obtain payment from a debtor to the detriment of other creditors. *See, Assoc. of St. Croix Condominium Owners v. St. Croix Hotel Corp., 682 F. 2d 446, 448* (3d Cir. 1982). The stay "protect[s] the bankrupt's estate from being eaten away by creditors' lawsuits and seizures of property before the trustee has had a chance to marshal the estate's assets and distribute them equitably among the creditors." *See, Martin-Trigona v. Champion Fed. Sav. & Loan Assoc.*, 892 F.2d 575, 577 (7th Cir. 1989).

    The scope of the protection is determined not just by who is named in a proceeding but by who the party is with the real interest in the litigation. Pursuant to U.S.C.A. 362(c)(2) the stay

7

continues until the earliest of (A) the time the case is closed; (B) the time the case is dismissed; or (C) the time a discharge is granted or denied. Absent relief from the stay, judicial actions and proceedings against the debtor or which affect the debtor's estate are void ab initio.

### i. The Automatic Stay Pursuant To U.S.C 362(a)(1) Can Apply to A Non-Debtor

Courts have recognized that certain "unusual circumstances" warrant applying the §362(a)(1) stay to proceedings against a non-debtor defendant where such an application furthers the purposes behind the stay. An example of "such a situation would be a suit against a third-party who is entitled to absolute indemnity by the debtor on account of any judgment that might result against them in the case. To refuse application of the statutory stay in that case would defeat the very purpose and intent of the statute." *A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 999 (4th Cir. 1986).[4] Here, Lira has a right of indemnification against GK and/or Girardi under equitable principles of law, and has a statutory right to indemnification under California's Labor Code. Additionally, §362(a)(3) directs stays of any action, *whether against the debtor or third parties,* to obtain possession or to exercise control over property of the debtor. Here, as plead, the funds are or were in the possession of debtor GK. And, there is no question that GK funds in the possession of GK are now property of its bankruptcy estate.

Allowing Edelson to proceed against Lira in this matter would violate the spirit of §362 and allow it to circumvent the purpose of the automatic stay. Edelson's claims in this action for attorneys' fees are rooted in the attorney fee agreements that Edelson entered into with Girardi Keese. Plaintiff's complaint is clear, Edelson entered into the contract with GK not Lira. (*See,*

---

[4] Since *Robins*, courts have clarified that absolute indemnity is not required and that the possibility of a right to indemnification is sufficient. *See*, *In re Sudbury, Inc.,* 140 B.R.461, 464 (Bankr. N.D. Ohio 1992) and *In re American Film Technologies, Inc.,* 175 B.R. 847, 851-855 (Bankr. D. Del. 1994) (applying the "unusual circumstances" exception even though there were questions as to the enforceability of the indemnity o obligation because of alleged fraud on the part of individual officers and directors.)

8

Doc. No. 1, ¶102). Because it is founded upon the attorney fee allocation contract, Edelson's claim against Lira for Constructive Trust is at the first level a claim against Girardi Keese; Edelson's demand for an accounting is at the first level a claim against Girardi Keese; Edelson's claim of breach of contract is a claim which can only be brought against Girardi Keese; and Edelson's claim of conversion is at the first level a claim against Girardi Keese which received and held the settlement funds. Even assuming that Lira was somehow derivatively liable for GK's defalcations (which he is not), no liability against Lira can be established without a prerequisite initial finding against GK. In truth and in fact, GK is the party with the real interest in this litigation.

As such, the claims against Lira and Girardi Keese are inextricably interwoven. Litigation of Lira's liability requires litigation of Girardi and Girardi Keese's liability. To be clear, Lira has no independent liability under that contract as he was not a party to that contract in any individual capacity. Under the rule in *Robins* and the cases which followed it, where the debtor's interests are impossible to separate from the claims against the non-debtor, a stay of proceedings is an appropriate remedy.[5]

Finally, proceeding in the instant action could result in conflicting judgments. There is no question that the automatic stay precludes Edelson from proceeding further against GK or Girardi without leave of the bankruptcy court. Thus, in order to adjudicate GK's and Girardi's liability, Edelson will need to file a creditor's claim in the main bankruptcy case, obtain relief from the stay, and/or institute an adversary proceeding in the GK/Girardi bankruptcies. The claims which need to be adjudicated in the bankruptcy court would necessarily be identical to the

---

[5] Of course the most appropriate remedy is the dismissal of all claims against Lira which are presented by a party without standing, and the dismissal of the remainder of the claims pursuant to Rule 12(b)(3), as discussed infra.

claim filed in this action. Resolution of identical claims in two different forums risks inconsistent judgments and would be a waste of judicial resources. A stay is appropriate in this case until the claims resolution process in the bankruptcy proceeding has been completed or at minimum until Edelson obtains relief from the stay.

### ii. The *Robins* Stay Due To Indemnification Rule Applies Here.

Where a debtor and non-debtor are bound by statute or contract such that the liability of the non-debtor is imputed or shifted to the debtor by operation of law, the intent to provide relief to debtors with a stay would be frustrated by permitting indirectly what is expressly prohibited in the code. "Clearly the debtor's protection must be extended to enjoin litigation against others if the result would be binding upon the debtors estate." *A. H. Robins, supra,* 788 F. 2d 994 (4th Cir1986) at 999, citing *In re Metal Center, Inc.* 31 B.R. 458, 462 (Bankr. D. Conn. 1983.)

Mr. Lira was a salaried employee of GK. (*See,* Declaration of David Lira ¶¶3-4.) Pursuant to California Labor Code §2802(a) "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties…" California Labor Code §2802 requires an employer to indemnify an employee who is sued by third persons for conduct in the course and scope of his or her employment, including paying any judgment entered and attorneys' fees and costs incurred in defending the action. *Cassady v. Morgan, Lewis & Bockius, LLP,* 145 Cal.App.4th 220, 230 (2006).

Here a judgment in favor of Edelson would affect the Girardi bankruptcy estate, since under California law, a verdict in favor of Edelson against Lira would automatically trigger indemnification liability against Girardi Keese. Therefore the action is in effect one against the debtor and as such would qualify for relief under §362(a)(1).

Lira's claim for indemnity against GK would ordinarily take the form of a compulsory cross-claim against GK. However, the automatic stay precludes Lira from pursuing that claim here. Thus, allowing the case against Lira to proceed here would severely prejudice Lira, and would require him to proceed in two different forums. Exposing Lira to liability here and denying him indemnification relief at the same time would impermissibly interfere with his indemnity rights.

"[I]f the indemnitee, who has suffered a judgment for which he is entitled to be absolutely indemnified by the debtor, cannot file and have allowed as an adjudicated claim the actual amount of the judgment he has secured but must submit his claim for allowance in the bankruptcy proceeding with the prospect that his claim may not be allowed in the full amount of the judgment awarded in favor of him, the indemnitee will be unfairly mulcted by inconsistent judgments and his contract of indemnity in effect nullified." *A.H Robins, supra,* 788 F. 2d 994,1000 (4th Cir1986).

    **b.**    **The Matter Should Be Stayed Pursuant To 11 U.S.C §362(a)(3) Because Edelson Seeks to Obtain or Exercise Control Over Property Of The Girardi Estates.**

U.S.C. §362(a)(3) is not limited to actions against the debtor. It stays "any act to obtain possession of property of the estate of property from the estate or to exercise control over property of the estate." U.S.C. §362(a)(3). Courts have applied the §362 (a)(3) stay to non-debtor

actions that have an adverse impact on property of the estate.[6] Section 541(a)(1) defines "property" in the bankruptcy context. It provides that the "estate is comprised of all the following property, wherever located…all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. §541(a)(1).

Edelson's claims against Lira seek monies paid to Girardi/Girardi Keese pursuant to a contract between Girardi Keese and Edelson. Any fees at issue were paid to the Girardi Keese firm. These claims on their face an act to obtain possession of property of the bankruptcy estate and continued action against Lira would have an adverse impact on the property of the estate via a potential finding of a breach of contract and determination of monies owed by the estate.

It is beyond cavil that a proper administration of the GK/Girardi bankruptcy estates will require a full accounting of all monies possessed, transferred and owed by the firm and Mr. Girardi. That accounting will undoubtedly include a determination of the amounts due and owing the Lion Air Plaintiffs and Edelson (whose claim to fees is derivative of those Plaintiffs' rights to payment).

The only proper forum for that accounting is in the bankruptcy court. Professionals have already been appointed to undertake that task. It would be a waste of judicial resources to have this court litigate—even in part—the same accounting issues which will be dealt with in the

---

[6] *In re Jefferson County, Ala.* 491 B.R. 277, 295 (Bankr. N.D. Ala. 2013); *See also, Kagan v. Saint Vincents Catholic Med. Ctrs. of New York* (*In re Saint Vincents Catholic Med. Ctrs. of New York* ), 449 B.R. 209, 217–18 (S.D.N.Y.2011) ("the automatic stay provision is not limited solely to actions against the debtor, but rather bars actions against even against third-parties that would have an adverse impact on the property of the estate"); *Queenie, Ltd v. Nygard.,* 321 F.3d at 287 (2d Cir. 2003) "The automatic stay can apply to non-debtors, but normally does so only when a claim against the non-debtor will have an immediate adverse economic consequence for the debtor's estate."); *48th Street Steakhouse, Inc. v. Rockefeller Grp. (In re 48th Street Steakhouse, Inc.),* 835 F.2d 427, 430–31 (2d Cir.1987) (applying (a)(3) stay to non-debtor); *Kaiser,* 315 B.R. at 659 (same). "Property of the estate" within the meaning of § 362(a)(3) is governed by 11 U.S.C. § 541(a) and includes " '[e]very conceivable interest of the debtor,' including those that are 'future, nonpossessory, contingent, speculative, and derivative.' "

bankruptcy court. And, of course the risk of inconsistent determinations would be present. Finally, having an accounting, let alone any determination of GK or Girardi's liability to the Lion Air Plaintiffs or Edelson, done here would improperly interfere with the bankruptcy court's jurisdiction over the GK and Girardi estates.

   **C. Edelson's Claim For Attorneys' Fees Cannot Be Resolved Until The Lion Air Plaintiffs Are Paid.**

  Edelson cannot take possession of any commingled funds unless and until the Lion Air clients receive their share of the settlement money paid by Boeing. (*See,* Doc. No. 1, ¶94). "Edelson *will not* accept any attorneys' fees for its work in *In Re: Lion Air Flight JT 610 Crash* until a full, court supervised accounting has been performed that confirms each and every relevant client has first been paid in full." (*See,* Doc. No. 1, fn.3). Edelson seeks (1) an accounting; (2) the disgorgement of all such funds from any Defendant who is in receipt of those funds; (3) transfer of those funds to the appropriate client recipients; and "*only after those steps have been accomplished…*(4) the payment of contractually required attorneys' fees to Edelson PC." (*See,* Doc. No. 1, ¶16). In short, Edelson admits that it is not entitled to one red cent until the Lion Air Plaintiffs are compensated, and the amount of Edelson's purported fee recovery is dependent upon those plaintiffs being paid in full. (*See*, Doc. No. 1, fn.3).

  Edelson acknowledges that GK has substantial financial liabilities and obligations to creditors. (*See,* Doc. No. 1, ¶¶ 5, 75, 76, 77, 78, and 79). The automatic stay is designed to provide creditors' protection. Without it, certain creditors would be able to pursue their own remedies against the debtor's property and who acted "first" would obtain payment of the claims in preference to and to the detriment of other creditors. The bankruptcy court will have to determine what creditors are paid, how much they are paid, and when they are paid.

13

Edelson admits that until the monies due them are paid to the Lion Air Plaintiffs through the bankruptcy, Edelson cannot recover attorneys' fees. This action should be stayed if it is not dismissed.

### D. Venue Is Improper. The Action Should Be Dismissed Pursuant To FRCP 12(b)(3)

Since Mr. Lira's liability in this action is derivative of Girardi Keese's liability these claims should be tried in the same venue as the claims against Girardi and Girardi Keese. Edelson's claims against Girardi and Girardi Keese will be pursued in the Bankruptcy Court for the Central District of California.

Likewise, Defendant Griffin has filed a motion to dismiss for lack of personal jurisdiction pursuant to FRCP 12(b)(2). If Griffin's motion is granted, Edelson will need to pursue its claims against Griffin in the Central District of California where Mr. Griffin works and resides.

The proper venue for these claims against Mr. Lira is the Central District of California where Mr. Lira works and resides and where these claims against his co-defendants will be pursued. The claims against Girardi, Girardi Keese, Lira and Griffin should all be tried in the same forum in the interest of judicial economy and to avoid the potential for inconsistent rulings and judgments.

### E. If The Court Is Not Inclined To Stay The Action Against Lira Based On The Bankruptcy Stay It Should Impose A Stay Under Its Equitable Powers.

Permitting a judgment to be entered that the contract between Edelson and Girardi Keese was breached would be inequitable since Girardi would not have had the opportunity to defend itself and a judgment in favor of Edelson could have a significant impact on the Girardi and Girardi Keese bankruptcy estates. Given the relationship of the parties and the effect of this proceeding on the debtor's estate, an extension of the stay to Lira in this action is clearly warranted.

Additionally, Lira cannot provide the accounting sought by Edelson. The money in question was paid to Girardi and/or Girardi Keese. Lira has no access to, or rights to, the books and records of Girardi or Girardi Keese. Those are in the control of the bankruptcy trustees. Lira cannot personally provide an accounting of the funds at issue in this action. A stay to allow the bankruptcy court and the retained professionals there to do this is proper under these circumstances.

The power to stay proceedings is incidental to the power inherent in every court to control the disposition of cases on its docket. *Landis v. North American Co.,* 299 U.S.248, 254 (1936). For reasons of judicial economy, deference to the jurisdiction and role of the bankruptcy court, the protection of Lira's and the debtors' rights, and the avoidance of potential inconsistent outcomes, to the extent these claims are not dismissed, they should be stayed.

## V. CONCLUSION

For the foregoing reasons, this Court should dismiss the claims Edelson purports to bring on behalf of the Lion Air Plaintiffs. The Court should dismiss the remaining claims pursuant to Rule 12(b)(3) as venue is improper here. As to any claims to which Edelson has standing, or which cannot be otherwise dismissed, the court should stay the proceedings pending administration and claims resolution in the GK and Girardi bankruptcies.

DAVID LIRA

By:   */s/Christopher T. Sheean*
  _____
  His Attorney

| | |
|---|---|
| Christopher T. Sheean | Edith R. Matthai, Esq. |
| Swanson, Martin & Bell LLP | Leigh P. Robie, Esq. |
| 330 N. Wabash Ave., Suite 3300 | 350 S. Grand Avenue, Suite 3950 |
| Chicago, Illinois 60611 | Los Angeles, California 90071 |
| (312) 222-8559 | (213) 706-8000 |
| csheean@smbtrials.com | ematthai@romalaw.com |

## **CERTIFICATE OF SERVICE**

      I, Christopher T. Sheean, the undersigned attorney, hereby certify that on February 12, 2021, I served a true and correct copy of the foregoing Defendant David Lira's Memorandum In Support Of His Opposed Motion To Dismiss Pursuant To Federal Rules Of Civil Procedure 12(b)(1), 12(b)(2), AND 12(b)(6) upon all counsel of record via the Court's CM/ECF System.

                                                  */s/Christopher T. Sheean*