IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| EDELSON PC, | Case No.: 20-cv-07115 |
| *Plaintiff,* | |
| | Hon. Matthew F. Kennelly |
| v. | |
| THOMAS GIRARDI, et al. | |
| *Defendants.* | |

**PLAINTIFF'S MOTION FOR LEAVE TO TAKE DEPOSITIONS
OF KEITH GRIFFIN AND DAVID LIRA**

1

# INTRODUCTION

When Plaintiff Edelson PC signed agreements to act as local Illinois counsel for two former Girardi Keese partners, Defendants Keith Griffin and David Lira, it seemed like an easy decision. Griffin and Lira were partners at a prominent Los Angeles law firm, represented victims who had lost parents and spouses in the deadly Lion Air crash, and needed counsel familiar with the Illinois courts to help litigate their cases against Chicago-based Boeing. Edelson knew that it was more than competent to handle the cases, and it was proud of the substantial settlements it helped obtain for the victims of the Lion Air tragedy.

In what can only be described as a shocking embarrassment to the legal profession, large chunks of the settlement money never made it to the victims' families. Edelson now believes that Lira and Griffin were helping their boss, celebrity Los Angeles attorney Thomas Girardi, orchestrate both the theft of their clients' money and the subsequent cover-up. Now, the *Lion Air* clients are missing millions of dollars, and Edelson hasn't been paid at all. Edelson is seeking to track down whoever might be liable for the stolen funds so that everyone—first the *Lion Air* victims, then Edelson—can be made whole.

Both Griffin and Lira have filed Rule 12 motions seeking to avoid having to answer for their actions in Illinois and before this Court. Griffin insists that the Court lacks personal jurisdiction over him on the basis that he lacks minimum contacts with Illinois. Lira, for his part, argues that he is statutorily entitled to full indemnification from Girardi Keese under the California Labor Code, and that therefore all claims against him must be brought in the Girardi Keese bankruptcy. Because both rely on facts outside the complaint, limited discovery in the form of a three-hour deposition of each defendant is warranted before Edelson is required to respond to the motions to dismiss.

**FACTUAL BACKGROUND**

On October 29, 2018, a Boeing 737 MAX aircraft operated by Lion Air crashed into the Java Sea off the coast of Indonesia, killing all 189 passengers and crew. Anice Kasim, Septiana Damayanti, Bian Daniaty Binti Udin Zaenudin, Bias Ramadhan A.S. Bin Misyadi, and Multi Rizki all lost close family members in the crash. To prosecute their claims against Boeing, they hired the law firm of Girardi Keese, which was run by Thomas Girardi with his former partners, David Lira and Keith Griffin. (Dkt. 1 ("Compl.") ¶ 9.) Because Lira and Griffin are California attorneys and Boeing is based in Chicago, they brought in Plaintiff Edelson PC to act as local counsel and assist in the litigation and settlement process under a fee-sharing agreement. (*Id.* ¶ 8.) Lira and Griffin signed the contracts, and Girardi Keese maintained total control of all communications with the clients. (*Id.* ¶¶ 39, 102-03.) The cases settled in early 2020 for a substantial amount of money, and the proceeds were transferred from Boeing to Girardi Keese's client trust account. (*Id.* ¶ 8.)

But even though Boeing transferred the money to Girardi Keese, a large portion of it never ended up in the victim's hands, and Edelson's portion of the attorneys' fees never materialized either. (*Id.* ¶ 9.) The facts evolved slowly, and many details remain murky. From April 2020 until December 2020, Edelson communicated with Lira and Griffin about the status of the settlement, receiving vague but facially plausible explanations for the delay. Through April and May, Lira and Griffin said that Boeing wouldn't release any of the funds until all of the clients had signed releases. (*Id.* ¶¶ 42-44.) Then, over the summer, Lira suddenly left Girardi Keese, claimed that Girardi Keese had received the Boeing funds, and sent Edelson a letter stating that some of the clients had received their funds while others had not, without providing almost any additional detail. (*Id.* ¶¶ 45-46.) When confronted with this information, Griffin

admitted that Girardi Keese had received the settlement funds from Boeing and that the clients had received about half of what they were owed, but he was unable to explain how that came to be, or whether the clients had agreed to that arrangement. (*Id.* ¶ 49.) In September, he advised Edelson that a wire transfer for the other half of the money was set to be initiated in a few days. (*Id.* ¶ 52.) In late November, Griffin admitted that this transfer had never occurred, and that he doubted that Girardi Keese could pay either the clients or Edelson. (*Id.* ¶ 56.) Edelson then filed both this lawsuit and a motion for a rule to show cause in the *Lion Air* case before Judge Durkin of this District.

In the show-cause proceedings, which took place after this complaint was filed, Girardi admitted through counsel that the clients have not been paid in full. Judge Durkin held Girardi and Girardi Keese in contempt of court for violating orders relating to the distribution of settlement funds to minors and entered judgment in the amount of $2,000,000. Civil contempt proceedings against Lira and Griffin remain pending, and Judge Durkin has indicated that he is likely to hold an in-person evidentiary hearing.

Girardi now says that "this is Keith Griffin's fault." (Declaration of Ari Scharg ("Scharg Decl."), attached hereto as Exhibit 1 ¶ 6.) Griffin and Lira blame Girardi. (Dkt. 42-9 ¶ 1, 9-17; Declaration of David Lira ("Lira Decl."), attached hereto as Exhibit 2 ¶¶ 28-33.) Edelson believes that all three of them worked together to embezzle the clients' settlement proceeds, commingle them with attorneys' fees that belong to Edelson, and share in the illicit profits. (Compl. ¶¶ 63, 92.) Edelson has not taken a penny in connection with any of the *Lion Air* settlements, and it does not intend to do so until the clients are paid.

**ARGUMENT**

Griffin's and Lira's motions to dismiss each rely on matters outside the complaint and outside Edelson's knowledge. Limited discovery as to jurisdiction and venue is therefore appropriate. In support of his motion to dismiss for lack of personal jurisdiction, Griffin has submitted a declaration attesting to his role at Girardi Keese, his involvement in the *Lion Air* cases, and the nature of his interactions with Edelson. If the Court intends to consider that declaration, which relates to facts that Edelson cannot possibly know on its own, Edelson should be permitted to take discovery and explore the topics Griffin raises.

In support of his motion, Lira relies on California Labor Code § 2802(a) to argue that he is entitled to absolute indemnity from Girardi Keese, and that therefore all claims against him must be litigated in bankruptcy court even though he is not the debtor. (Dkt. 44 at 10.) However, Lira cuts off the statute in the middle of a sentence, eliding the portion that denies indemnification to employees who believed that their actions were unlawful. Before having to respond to Lira's motion, Edelson should be permitted to explore whether his indemnification claim has even a remote chance of success.

None of this discovery should be burdensome or take long. Edelson does not seek any written discovery at all. A three-hour remote video deposition of each defendant can be taken quickly and will provide the required information in a safe and efficient manner.

**I.      Plaintiff Is Entitled to Take a Short Deposition of Griffin Because He Asks the Court to Dismiss the Case Based on Facts Outside the Complaint.**

"In responding to a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), plaintiffs bear the burden of demonstrating the existence of jurisdiction." *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 136 F. Supp. 3d 968, 972 (N.D. Ill. 2015) (Kennelly, J.) [hereinafter "*TRT*"]

4

(internal quotation omitted). "If the plaintiffs' allegations establish a 'colorable' showing of personal jurisdiction, the Court has discretion to order limited discovery that would allow plaintiffs to uncover facts that might establish jurisdiction." *Id.* at 973 (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000)). "Courts generally will grant jurisdictional discovery if the plaintiff can show that the factual record is at least ambiguous or unclear on the jurisdiction issue." *Id.* (quoting *Gilman Opco LLC v. Lanman Oil Co.*, No. 13–CV–7846, 2014 WL 1284499, at *6 (N.D. Ill. Mar. 28, 2014) (St. Eve, J.)); *see also Ticketreserve, Inc. v. viagogo, Inc.*, 656 F. Supp. 2d 775, 782 (N.D. Ill. 2009) (describing the standard as "low").

Here, Edelson can establish a *prima facie* case of jurisdiction. However, Griffin's motion to dismiss is based on statements he voluntarily made in a declaration, and that Edelson, without having the opportunity to take discovery, has no way to challenge. Because the statements relate to Griffin's position at Girardi Keese and his conduct with respect to the *Lion Air* cases, no written discovery is necessary. A short deposition on limited topics will suffice.

### A. Plaintiff Has Established a Colorable Showing of Jurisdiction.

"For a court to exercise jurisdiction over a defendant consistent with the Fourteenth Amendment's Due Process Clause, the defendant must 'have certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *TRT*, 136 F. Supp. 3d at 973 (quoting *Int'l Shoe Co. v. State of Wash., Office of Unemployment Comp. & Placement*, 326 U.S. 310, 316 (1945)) (alterations omitted). "Due process requires that a defendant be haled into court in a forum State based on his own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State." *Walden v. Fiore*, 571 U.S. 277, 286

5

(2014). Here, the issue is whether there is specific personal jurisdiction over Griffin. "Specific personal jurisdiction is appropriate where (1) the defendant has purposefully directed his activities at the forum state or purposefully availed himself of the privilege of conducting business in that state, and (2) the alleged injury arises out of the defendant's forum-related activities." *N. Grain Mktg., LLC v. Greving*, 743 F.3d 487, 492 (7th Cir. 2014) (citation omitted).

Plaintiff's allegations, along with additional evidence, establish a colorable showing of personal jurisdiction. *Cf. Carter v. Siemens Bus. Servs., LLC*, No. 10 C 1000, 2010 WL 3522949, at *3 (N.D. Ill. Sept. 2, 2010) (Kennelly, J.) ("A plaintiff is not required to allege in his complaint facts establishing personal jurisdiction."). Edelson alleges that Griffin participated in the theft and subsequent cover-up of money paid by Illinois-based Boeing to settle cases pending in Illinois, resulting in injury to Griffin's associated Illinois counsel. (Compl. ¶¶ 40-56.) Indeed, Griffin himself prepared and executed a contract under which Edelson would act as local counsel, so that Griffin would be permitted to appear in the Circuit Court of Cook County. (*Id.* ¶ 102.) Griffin then executed verified petitions for permission to practice law *pro hac vice* in Illinois, designated Chicago-based Edelson attorney Ari Scharg as his associated Illinois attorney, and registered with the Illinois Attorney Registration and Disciplinary Commission. (Exhibit A to the Declaration of Alexander Tievsky, attached hereto as Exhibit 3; Rule 707 Statements, attached hereto as Exhibit 4.) Griffin even flew to Chicago on two separate occasions specifically to participate in the in-person mediations that resulted in the settlements at issue in this case. (Scharg Decl. ¶ 5.) Contrary to Griffin's declaration, in which he insists that his communications were with another attorney in California, he regularly communicated with Scharg about the case and the settlements. (*Id.* ¶ 3.)

6

Under these facts, it does not offend traditional notions of fair play and substantial justice to require Griffin to come to Illinois and answer to allegations that he misappropriated the settlement funds. In that regard, *Schindler v. Lyon*, No. 12-CV-5928 JFB AKT, 2013 WL 4544263 (E.D.N.Y. Aug. 28, 2013), is directly on point. In *Schindler*, the defendant, a California attorney, had retained the plaintiff, a New York attorney, as local counsel to prosecute an action in New York. *Id.* at *1. The defendant allegedly refused to pay plaintiff for his legal work on the case pursuant to their agreement, and the plaintiff sued him in New York. *Id.* The New York court denied the defendant's motion to dismiss for lack of personal jurisdiction, holding that "[b]ecause defendant allegedly hired a New York lawyer to assist him with a lawsuit in New York, and had a substantial attorney-client relationship with an attorney of this state, defendant had sufficient contacts with New York such that it should have been reasonably foreseeable to him that he would be subject to suit in New York." *Id.* at *7. Here, like in *Schindler*, the facts suggest that the *entire purpose* of Griffin's agreeing to retain Edelson as local counsel was to allow him to conduct litigation in the State of Illinois. *See Clark v. Gannett Co.*, 122 N.E.3d 376, 390 (Ill. App. Ct. 2018) (holding that provision of legal services in Illinois court was sufficient to subject out-of-state attorney to personal jurisdiction in Illinois for matters related to the suit). It does not take a great leap of logic to arrive at the conclusion that Griffin's alleged theft of the settlement funds from that same Illinois litigation is an injury arising directly out of his relationship with Illinois.

    **B.**    **Having Made a *Prima Facie* Case for Jurisdiction, It Is Appropriate to Permit Discovery on Matters Outside the Complaint and Raised by Griffin.**

Limited discovery is appropriate here because Griffin decided to introduce new facts into the record by voluntarily submitting a declaration under penalty of perjury. He uses that declaration to contend that "[t]here can be no argument that employee-attorney Griffin engaged

7

in any intentional or tortious conduct knowing that such would injure the plaintiff in the forum state" and that "any injury suffered by the Plaintiff did not arise from any forum related activity by Defendant Griffin." (Dkt. 42 at 9-10.)

Edelson has plenty of reason to believe those assertions aren't entirely accurate or complete. (*See generally* Compl. ¶¶ 43-53) (detailing Griffin's misleading, evasive, and false statements to Edelson throughout 2020). Even more has come out since the complaint was filed. For example, from documents filed in the contempt proceeding, Edelson now knows that Griffin sent a memo to Girardi and Lira on May 4, 2020 that stated "Lots of messages from Boeing clients over the weekend. Client funds need to be wired," followed by a list of cases and amounts of money. (Exhibit E to the Declaration of Keith Griffin ("Griffin Decl."), attached hereto as Exhibit 5.) One of the cases that is listed is *Huzaifah*, which, according to Griffin, was fully funded by Boeing on March 11, 2020. (*Id.*, Exhibit B.) But the amount listed as owing to the client in the May memo is slightly less than what is listed in the March memo. Girardi Keese's records, also filed in the contempt proceeding, show why: the difference had been wired to the client on April 6, 2020, nearly a month after Girardi Keese had received all of the money from Boeing. (Girardi Accounting Statement, attached hereto as Exhibit 6.) Griffin, in other words, knew both that the clients weren't being paid even though Girardi Keese had received the settlement money from Boeing, and he knew the *precise* amount of the partial payments that were being made. That knowledge suggests that he was far more involved in this scheme than he is saying, and the fact that Edelson didn't learn any of this until after it filed suit demonstrates that Griffin has not been forthcoming.

Limited discovery is warranted to clear these matters up and respond to the factual assertions in Griffin's motion. The burden on Griffin should be minimal—he need not respond to

8

written discovery or produce documents. A short video deposition, three hours at most, will allow Edelson to get the information it needs. Specifically, Edelson proposes limiting the deposition to the following topics:

1. Griffin's role and decision-making authority at Girardi Keese both generally and as it relates specifically to the *Lion Air* cases (*see* dkt. 42-9 ¶¶ 1, 4-6);

2. Griffin's involvement in the decision to hire Illinois-based Edelson attorneys as local counsel in the *Lion Air* cases and enter into fee-sharing arrangements with them (*see id.* ¶ 7); and

3. Griffin's knowledge of and involvement with what happened to the settlement money in the *Lion Air* cases (*see id.* ¶¶ 3, 9, 11, 14-15, 18).

No doubt, those areas might overlap some with the merits of the case. That's unsurprising, given that Griffin's declaration specifically denies the central premise of Edelson's complaint. (*Id.* ¶ 3) ("At no time was I the recipient of, nor promised any money, from the settlement proceeds of the Lion Air Crash [cases]."). "Often personal jurisdiction is closely linked to the nature, and merit, of the claim being asserted[.] … When jurisdiction or venue depends on contested facts—even facts closely linked to the merits of the claim—the district judge is free to hold a hearing and resolve the dispute before allowing the case to proceed." *Szabo v. Bridgeport Machs., Inc.*, 249 F.3d 672, 676–77 (7th Cir. 2001). Griffin should not be heard to complain that he will have to answer questions about the merits of the case when he put them at issue. If there is genuine dispute as to the facts after Griffin's deposition, Edelson will request an evidentiary hearing.[1]

---

[1] If the Court does not hold such a hearing, then Edelson "bears only the burden of making a prima facie case for personal jurisdiction," and the Court must disregard any materials

9

## II. A Short Video Deposition of David Lira Is Warranted.

Unlike Griffin, Lira has consented to this Court's jurisdiction. *See* Fed R. Civ. P. 12(h). Instead of contesting jurisdiction, he has filed a motion that, although styled a motion to dismiss for improper venue, appears to be mostly a motion to stay the case indefinitely pending Girardi Keese's bankruptcy. Either way, Lira contends even though he is not himself a debtor in a bankruptcy case, the claims against him should not be litigated in this Court because he is entitled to be indemnified by his former employer, Girardi Keese, which is in bankruptcy. His argument rests on the premise that "a verdict in favor of Edelson against Lira would *automatically* trigger indemnification liability against Girardi Keese" under California Labor Code § 2802(a). (Dkt. 44 at 10) (emphasis added). It is possible for Edelson to avoid dismissal without discovery if the Court declines to accept Lira's legal argument that actions against a non-debtor have to take place in bankruptcy court based on an indemnification right (a "rule" that has never been accepted in the Seventh Circuit). But if the Court accepts Lira's legal premise, then there is an important factual question: does California Labor Code § 2802(a) actually give Lira a right to indemnification?[2]

In his motion, Lira employs a creative use of ellipses to omit a key portion of California Labor Code § 2802(a) that seriously calls into question his right to indemnification. In full, and without omissions, that subsection reads:

---

submitted by Griffin—affidavits included—that conflict with the complaint. *Curry v. Revolution Labs., LLC*, 949 F.3d 385, 393 (7th Cir. 2020).

[2] There is a short argument at the end of Lira's brief that suggests venue is improper based on his residency in California, but it cites no case law and merely argues that "[t]he claims against Girardi, Girardi Keese, Lira and Griffin should all be tried in the same forum in the interest of judicial economy and to avoid the potential for inconsistent rulings and judgments." (Dkt. 44 at 14.) While the Central District of California may also be a proper venue, that does not make Northern District of Illinois the "wrong" venue within the meaning of 28 U.S.C. § 1391. *See Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Texas*, 571 U.S. 49, 56 (2013).

10

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

The second half of that sentence means that the "statute requires an employer to indemnify an employee for legal expenses incurred as a result of lawful or unlawful work-related acts, *unless the employee 'believed them to be unlawful.'*" *Dowie v. Fleishman-Hillard Inc.*, 422 F. App'x 627, 629 (9th Cir. 2011) (emphasis added). Lira's indemnification claim will fail as a matter of law if he "fails to satisfy the provision in § 2802 restricting indemnification where an employee knew his conduct was unlawful." *See id.* at 630.[3]

Edelson alleges in its complaint that "Lira had knowledge of and cooperated with Girardi's misappropriation and conversion of settlement proceeds[.]" (Compl. ¶ 54.) This is not mere speculation. In the *Lion Air* contempt proceeding, Lira has admitted that he knew that some of the clients hadn't been paid, but he has never explained when he found out or how long he knew, nor has he explained how that knowledge squares with his communications to Edelson before he left Girardi Keese. (*Compare* Lira Decl. ¶ 30 *with* Compl. ¶¶ 43-44.) Further, after Edelson filed the complaint, it learned that partial payments were wired to the *Lion Air* clients on May 11, 2020 and July 6, 2020. (Exhibit 6.) Those dates correspond neatly with when Edelson communicated with Lira about this matter, but Lira never brought up the payments. (Compl. ¶¶ 44, 46.) If Lira did know about and participate in the theft of the settlement funds, it is difficult to see how he could have an indemnification right. It is frankly not plausible that a licensed attorney would believe stealing client funds and covering it up to be lawful.

---

[3] Plaintiff's counsel raised this issue with Lira's counsel during the meet and confer process, but Lira's counsel refused to say whether Lira was taking the position that he is entitled to indemnification even if he believed his actions to be unlawful.

11

Edelson is not suggesting that the Court would need to definitively resolve the legal issue of whether Lira is entitled to indemnification in order to rule on the motion to dismiss or stay. However, it would be unfair to dismiss or stay this case without giving Edelson an opportunity to demonstrate that the rationale for a stay or dismissal is based on a faulty factual predicate. *See, e.g.*, *Nat'l Cas. Co. v. Nat'l Ass'n of Intercollegiate Athletics*, No. 16-2145, 2016 WL 10789397, at *4 (C.D. Ill. July 26, 2016) (permitting venue discovery to allow the plaintiff to "develop its argument"); *New Berry Inc. v. Smith*, No. 2:19-CV-159 JD, 2021 WL 411154, at *3 (N.D. Ind. Feb. 5, 2021) ("[T]here is enough of a 'factual haze' … to warrant limited discovery on whether venue is … proper in this Court[.]"); *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 n.13 (1978) ("[W]here issues arise as to jurisdiction or venue, discovery is available to ascertain the facts bearing on such issues.").

As with Griffin, no written discovery is necessary. Rather, Edelson asks to take a short video deposition, again no more than three hours, limited to the issues of:

1. Lira's role and decision-making authority at Girardi Keese both generally and as it relates specifically to the *Lion Air* cases; and

2. Lira's knowledge of and involvement with what happened to the settlement money in the *Lion Air* cases.

Exploring these areas will permit Edelson and the Court to understand whether it is even remotely plausible that Lira believed his actions with respect to the *Lion Air* cases to be lawful. If there is a genuine dispute as to the facts after Lira's deposition, Edelson will request an evidentiary hearing. *See Hausen v. PS Illinois Tr.*, No. 11 C 6888, 2012 WL 266169, at *4 (N.D. Ill. Jan. 29, 2012) (Kennelly, J.) (citing *Local 73, Serv. Emps. Int'l Union, AFL-CIO v. Argonne Nat. Lab., Univ. of Chicago*, No. 05 C 2772, 2006 WL 695532, at *3 (N.D. Ill. Mar. 13, 2006)

12

for the proposition that a "district court deciding a 12(b)(3) motion can hold an evidentiary hearing and make findings of fact").

## CONCLUSION

The Court should permit Edelson to take three-hour remote video depositions of Keith Griffin and David Lira before Edelson is required to respond to their Rule 12 motions.

Respectfully submitted,

**EDELSON PC**

Dated: March 4, 2021

By: /s/ Alexander G. Tievsky
One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Alexander G. Tievsky
atievsky@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378