# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| EDELSON PC, | Case No.: 20-cv-07115 |
| *Plaintiff,* | |
| | Hon. Matthew F. Kennelly |
| *v.* | |
| THOMAS GIRARDI, et al. | |
| *Defendants.* | |

## PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTIONS TO DISMISS

## TABLE OF CONTENTS

FACTUAL BACKGROUND ........................................................................................................ 2

I.     Edelson Has Article III Standing ................................................................................ 4

II.    Lira's Threadbare Argument with Respect to the Forum is Forfeit ........................... 7

III.   Lira Cannot Take Advantage of the Girardi Keese Bankruptcy to Avoid Litigating
       this Action ................................................................................................................... 7

       A.    If Lira Wants an Injunction from the Bankruptcy Court, He Must Ask the
             Bankruptcy Court ............................................................................................ 8

       B.    There Are No "Unusual Circumstances" that Justify Extending the
             Bankruptcy Stay to Lira ................................................................................ 10

       C.    The Action Should Not Be Stayed Indefinitely ............................................ 15

IV.    The Court Has Personal Jurisdiction Over Griffin ................................................... 16

CONCLUSION ................................................................................................................... 22

**TABLE OF AUTHORITIES**

**United States Supreme Court Cases**

*Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*,
571 U.S. 49 (2013) ............................................................................. 7

*Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*,
137 S. Ct. 1773 (2017) ................................................................. 16, 17

*Calder v. Jones*,
465 U.S. 783 (1984) ..................................................................... 20, 21

*Clinton v. Jones*,
520 U.S. 681 (1997) ..................................................................... 15, 16

*Daimler AG v. Bauman*,
571 U.S. 117 (2014) ............................................................................ 17

*Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*,
141 S. Ct. 1017 (2021) ................................................................. 16, 17

*Walden v. Fiore*,
571 U.S. 277 (2014) ............................................................... 16, 17, 18

**United States Appellate Court Cases**

*A.H. Robins Co. v. Piccinin*,
788 F.2d 994 (4th Cir. 1986) .................................................... 8, 9, 10

*Cote v. Wadel*,
796 F.2d 981 (7th Cir. 1986) ............................................................ 19

*Dowie v. Fleishman-Hillard Inc.*,
422 F. App'x 627 (9th Cir. 2011) ..................................................... 13

*Fox Valley Const. Workers Fringe Benefit Funds v. Pride of Fox Masonry & Expert Restorations*,
140 F.3d 661 (7th Cir. 1998) ............................................................ 10

*Gerhardson v. Gopher News Co.*,
698 F.3d 1052 (8th Cir. 2012) ......................................................... 14

*Harbor Ins. Co. v. Schnabel Found. Co.*,
946 F.2d 930 (D.C. Cir. 1991) ......................................................... 21

*In re Chugach Forest Prods., Inc.*,
    23 F.3d 241 (9th Cir. 1994) ............................................................... 9

*In re C.P. Hall Co.*,
    750 F.3d 659 (7th Cir. 2014) ............................................................. 5

*In re Excel Innovations, Inc.*,
    502 F.3d 1086 (9th Cir. 2007) ......................................................... 9

*Klinkenborg Aerial Spraying & Seeding, Inc. v. Rotorcraft Dev. Corp.*,
    690 F. App'x 540 (9th Cir. 2017) ................................................... 9

*Matter of Fernstrom Storage & Van Co.*,
    938 F.2d 731 (7th Cir. 1991) ................................................... 10, 11

*Patton v. Bearden*,
    8 F.3d 343(6th Cir. 1993) ................................................................ 9

*Robertson v. Allied Sols., LLC,*
    902 F. 3d 690 (7th Cir. 2018) ......................................................... 4

*Schur v. L.A. Weight Loss Ctrs., Inc.*,
    577 F.3d 752 (7th Cir. 2009) ........................................................ 11

*Silha v. ACT, Inc.*,
    807 F.3d 169 (7th Cir. 2015) ........................................................... 4

*Tamburo v. Dworkin*,
    601 F.3d 693 (7th Cir. 2010) ........................................................ 21

**United States District Court Cases**

*Carter v. Siemens Bus. Servs., LLC*,
    No. 10 C 1000, 2010 WL 3522949 (N.D. Ill. Sept. 2, 2010) ............................ 17

*Celtic Bank Corp. v. Exec. Title, Inc.*,
    No. 15 CV 30, 2015 WL 5951844 (N.D. Ill. Oct. 13, 2015) ......................... 7

*Electroplated Metal Sols., Inc. v. Am. Servs., Inc.*,
    500 F. Supp. 2d 974 (N.D. Ill. 2007) .............................................. 14

*Fid. Nat'l Title Ins. Co. v. Archer Land Title, LLC*,
    No. 106-CV-0048, 2007 WL 2301277 (S.D. Ind. Aug. 8, 2007) ................... 15

*Harley-Davidson Credit Corp. v. JHD Holdings Inc.*,
    No. 19-CV-155-JDP, 2020 WL 7078828 (W.D. Wis. Dec. 3, 2020) ........... 8, 9

*In re Bidermann Indus. U.S.A., Inc.*,
　　200 B.R. 779 (Bankr. S.D.N.Y. 1996) ..................................................... 12, 14

*In re Girardi Keese*,
　　No. 2:20-bk-21022 (Bankr. C.D. Cal.) ............................................................ 3

*In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*,
　　136 F. Supp. 3d 968 (N.D. Ill. 2015) ............................................................ 16

*In re Thomas Vincent Girardi*,
　　No. 2:20-bk-21020 (Bankr. C.D. Cal.) ............................................................ 3

*Johnson v. Fifth Third Bank, Inc.*,
　　476 B.R. 493 (W.D. Ky. 2012) ................................................................. 12, 13

*New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*,
　　564 B.R. 192 (S.D.N.Y. 2016) ...................................................................... 12

*Purvis v. Blitz, U.S.A., Inc.*,
　　No. 7:11-CV-111 HL, 2012 WL 645884 (M.D. Ga. Feb. 28, 2012) ................. 12

*Schindler v. Lyon*,
　　No. 12-CV-5928, 2013 WL 4544263 (E.D.N.Y. Aug. 28, 2013) ............... 19, 20

*Shickel v. Blitz USA Inc.*,
　　No. 11-3380 JBM/JAG, 2012 WL 13012959 (C.D. Ill. Feb. 21, 2012) ........... 12

*United States v. Saint Louis Univ.*,
　　No. 07-CV-0156-DRH, 2012 WL 359995 (S.D. Ill. Feb. 2, 2012) ................. 14

**Illinois Supreme Court Cases**

*Baird v. Shipman*,
　　23 N.E. 384 (Ill. 1890) .............................................................................. 11

*In re Thebus*,
　　483 N.E.2d 1258 (Ill. 1985) ....................................................................... 11

**Illinois Appellate Court Cases**

*Clark v. Gannett Co.*,
　　122 N.E.3d 376 (Ill. App. Ct. 2018) ............................................................ 20

*Metro-Goldwyn-Mayer, Inc. v. Antioch Theatre Co.*,
　　367 N.E.2d 247 (Ill. App. Ct. 1977) .............................................................. 6

*People ex rel. Daley for Use of Cook Cnty. v. Warren Motors, Inc.*,
    483 N.E.2d 427 (Ill. App. Ct. 1985) .............................................................. 5, 6

**Rules and Statutory Provisions**

11 U.S.C. § 362 .................................................................................................. 7, 8, 9

11 U.S.C. § 105 .................................................................................................. 8, 9

Cal Labor Code § 2802 ...................................................................................... 12, 13

Fed. R. of Bankr. Proc. 9011(b) ........................................................................ 9

Fed. R. Civ. Proc. 12 ......................................................................................... 1, 7, 14

Ill. R. of Prof'l Conduct 5.4 .............................................................................. 6

Until last year, Defendants Keith Griffin and David Lira were partners at the law firm Girardi Keese, a high-profile plaintiff's firm in Los Angeles. Their positions at Girardi Keese unraveled when, last year, Plaintiff Edelson PC ("Edelson") learned that they participated in the misappropriation of millions of dollars in settlement funds paid by Boeing to the victims of the Lion Air Flight 810 crash. Edelson, who acted as local counsel for Griffin and Lira in this district, lost its share of the attorneys' fees in the scheme. Edelson now seeks to recover those fees.

Aside from an offhand reference to Rule 12(b)(6) in Lira's motion, neither Griffin nor Lira have argued that Edelson has failed to state a claim. Instead, they have raised other procedural challenges to the motion. Lira begins by making a threadbare contention that Edelson lacks standing, which Edelson responds to in full to assist the Court in discharging its obligation to consider the matter of Article III standing. He then argues that the case should be either dismissed or stayed indefinitely because the proper forum is the court overseeing the bankruptcy of his former employer, Girardi Keese. However, Lira ignores the general rule that a non-debtor cannot take advantage of a bankruptcy stay, ignores the proper procedural mechanism for requesting such relief, and fails to demonstrate the type of unusual circumstances that might conceivably allow him to avoid litigating this case without himself declaring bankruptcy.

Griffin's arguments are no stronger. Despite engaging Edelson as local counsel in Illinois, registering with the Illinois ARDC, litigating the *Lion Air* cases in Illinois, and traveling to Chicago twice to negotiate the settlements in those cases, Griffin insists that this Court lacks personal jurisdiction over him because he believes that Edelson PC managing partner Rafey Balabanian was in California when they communicated about the attorneys' fees in this case. This argument ignores the entire context of the relationship between Griffin and Edelson.

1

Both motions to dismiss lack merit, and Griffin and Lira should each be required to account for their actions in this Court.

## FACTUAL BACKGROUND

On October 29, 2018, a Boeing 737 MAX aircraft operated by Lion Air crashed into the Java Sea off the coast of Indonesia, killing all 189 passengers and crew. Anice Kasim, Septiana Damayanti, Bian Daniaty Binti Udin Zaenudin, Bias Ramadhan A.S. Bin Misyadi, and Multi Rizki all lost close family members in the crash. To prosecute their claims against Boeing, they hired the law firm of Girardi Keese, which was run by Thomas Girardi with his former partners, David Lira and Keith Griffin. (Dkt. 1 ("Compl.") ¶ 9.) Because Lira and Griffin are California attorneys and Boeing is based in Chicago, they brought in Chicago-based Edelson PC to act as local counsel and assist in the litigation and settlement process under a fee-sharing agreement. (*Id.* ¶ 8.) Lira and Griffin signed the contracts, and Girardi Keese maintained total control of all communications with the clients. (*Id.* ¶¶ 39, 102-03.) The cases settled in early 2020 for a substantial amount of money, and the proceeds were transferred from Boeing to Girardi Keese's client trust account. (*Id.* ¶ 8.)

But even though Boeing transferred the money to Girardi Keese, a large portion of it never ended up in the victim's hands, and Edelson's portion of the attorneys' fees never materialized either. (*Id.* ¶ 9.) The facts evolved slowly, and many details remain murky. From April 2020 until December 2020, Edelson attorneys communicated with Lira and Griffin about the status of the settlement, receiving vague but facially plausible explanations for the delay. Through April and May, Lira and Griffin said that Boeing wouldn't release any of the funds until all of the clients had signed releases. (*Id.* ¶¶ 42-44.) Then, over the summer, Lira suddenly left Girardi Keese, claimed that Girardi Keese had received the Boeing funds, and sent Edelson a

letter stating that some of the clients had received their funds while others had not, without providing almost any additional detail. (*Id.* ¶¶ 45-46.) When confronted with this information, Griffin admitted that Girardi Keese had received the settlement funds from Boeing and that the clients had received about half of what they were owed, but he was unable to explain how that came to be, or whether the clients had agreed to that arrangement. (*Id.* ¶ 49.) In September, he advised Edelson that a wire transfer for the other half of the money was set to be initiated in a few days. (*Id.* ¶ 52.) In late November, Griffin admitted that this transfer had never occurred, and that he doubted that Girardi Keese could pay either the clients or Edelson. (*Id.* ¶ 56.) Edelson then filed both this lawsuit and a motion for a rule to show cause in the *Lion Air* case before Judge Durkin of this District.

In the show-cause proceedings, which took place after this complaint was filed, Girardi admitted through counsel that the clients have not been paid in full. Judge Durkin held Girardi and Girardi Keese in contempt of court for violating orders relating to the distribution of settlement funds to minors and entered judgment in the amount of $2,000,000. Civil contempt proceedings against Lira and Griffin remain pending, and Judge Durkin has indicated that he is likely to hold an in-person evidentiary hearing.

In December 2020, a group of creditors filed involuntary Chapter 7 bankruptcy petitions against Girardi Keese and Girardi in the United States Bankruptcy Court for the Central District of California. (Case Nos. 2:20-bk-21020 and 2:20-bk-21022.) The bankruptcy court agreed to open Chapter 7 cases against each debtor, and trustees have been appointed to manage the estates. Neither Lira nor Griffin has declared bankruptcy, and neither has moved for relief in the bankruptcy courts with respect to this action.

Edelson believes that all three attorneys—Girardi, Griffin, and Lira—worked together to embezzle the clients' settlement proceeds, commingle them with attorneys' fees that belong to Edelson, and share in the illicit profits. (Compl. ¶¶ 63, 92.) Edelson has not taken a penny in connection with any of the *Lion Air* settlements and does not intend to until after the clients are paid. It has brought this lawsuit to recover whatever money it can from those responsible for its disappearance and protect its interest in the missing funds. After Griffin and Lira filed their motions to dismiss the lawsuit, Edelson requested discovery before responding. Griffin then withdrew the portion of his declaration that denied the allegations in Edelson's complaint, leading the Court to deny the motion with respect to him. (Dkt. 72.) The motion was also denied with respect to Lira on the basis that only legal matters are currently before the Court. (Dkt. 73.)

## I.     Edelson Has Article III Standing.

In a short section with almost no citation to authority, Lira contends that Edelson lacks standing to advance claims of constructive trust, accounting, and conversion. Normally, an argument this cursory would be forfeit, but because standing is an element of federal jurisdiction, the Court is obliged to address it anyway. *See Robertson v. Allied Sols., LLC*, 902 F.3d 690, 698 (7th Cir. 2018) ("The district court was duty-bound to look into its jurisdiction the minute the question arose.").

"To establish Article III standing, a plaintiff must show (1) it has suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Silha v. ACT, Inc.*, 807 F.3d 169, 173 (7th Cir. 2015) (citation omitted). Lira argues that Edelson has failed to satisfy the "particularized" injury requirement, which "excludes suits

4

concerning what John Stuart Mill in On Liberty (1859) called 'self-regarding acts,' to distinguish them from 'other-regarding acts,' that is, acts that harm other people." *In re C.P. Hall Co.*, 750 F.3d 659, 660 (7th Cir. 2014). In this action, Edelson alleges that Lira "wrongfully transferred, misappropriated, and retained settlement funds owed to the victims of Lion Air Flight 610, *as well as attorneys' fees owed to Edelson*[.]" (Compl. ¶ 82) (emphasis added). The lawsuit seeks return of the attorneys' fees owed to Edelson. Lira's arguments that Edelson is somehow still acting on behalf of its former clients is both misguided and indicative of the low regard in which Lira holds the interests of his past clients.

First, with respect to the conversion claim, Edelson's lawsuit does not seek to recover money on behalf of its former clients. Rather, the claim is that Lira is liable for converting money that belongs to Edelson itself. Edelson alleged that it has an "has an absolute and unconditional right to the immediate possession of the attorneys' fees" generated by the *Lion Air* cases, that it made "numerous demands" on Lira to turn over that money, and that Lira "wrongfully and without authorization assumed control and ownership over the attorneys' fees and refused to provide them to" Edelson. (*Id.* ¶¶ 117-119.) There is no way to read that allegation as an attempt to vindicate the rights of anyone other than Edelson.

Second, as to the requests for a constructive trust and an accounting, these are simply possible equitable remedies that the Court can use to get Edelson the money it is owed. "[A]n action for a constructive trust is designed to prevent profit from wrongful activity and unjust enrichment and is maintainable in all cases where a person has received money or property which, in equity and good conscience, he ought not be allowed to retain, *regardless of whether a fiduciary relationship exists between him and the aggrieved*." *People ex rel. Daley for Use of Cook Cnty. v. Warren Motors, Inc.*, 483 N.E.2d 427, 431 (Ill. App. Ct. 1985), *aff'd* 500 N.E.2d

22 (1986) (emphasis in original). Further, "[a] court will exercise jurisdiction for the purpose of ordering an accounting: when discovery is necessary; when complicated or mutual accounts are involved; or when a fiduciary relationship exists between the parties." *Metro-Goldwyn-Mayer, Inc. v. Antioch Theatre Co.*, 367 N.E.2d 247, 255 (Ill. App. Ct. 1977).

Here, the accounting and constructive trust provide a way for Edelson to vindicate its own rights without violating its obligations to its former clients. The clients' fee arrangement was always contingent: they are only required to pay fees based on the recovery obtained. Recovery has been obtained from Boeing, but a large chunk of it did not make it into the clients' hands. Edelson does not believe that, as a matter of equity and good conscience, it can receive payment of attorneys' fees unless its former clients get what is owed to them. Lira obviously disagrees, having attempted to pay Edelson without ensuring payment to his former clients. (Compl. ¶¶ 46-47, 54.) Edelson believes this was unethical.

Only equity can allow Edelson to vindicate its rights while maintaining the standards required of the legal profession. A legal remedy—monetary damages—risks compensating a law firm ahead of the family members of those who died in the Lion Air crash. Edelson could not give the amount recovered in that manner to its former clients even if it wanted to, because Illinois Rule of Professional Conduct 5.4 prohibits it from sharing legal fees. Imposition of a constructive trust with both Edelson and its former clients as beneficiaries solves that problem. The accounting is necessary both to trace the stolen funds and to understand the nature of the financial relationship among Lira, Girardi Keese, and the Boeing funds, which is disputed. It is immaterial to the standing inquiry that as a side effect of this remedy, Edelson's former clients could also get what is owed to them.

In sum, Edelson has suffered an injury-in-fact (loss of attorneys' fees) fairly traceable to Lira's actions that can be redressed by imposition of a constructive trust on the proceeds of the settlement. Jurisdiction is secure.

## II.     Lira's Threadbare Argument with Respect to the Forum Is Forfeit.

Lira very briefly argues that the case should be dismissed on the basis of improper venue in the Northern District of Illinois. As the Court already noted at the April 6, 2021 hearing, the "passing reference to lack of venue" in Lira's motion "is unsupported, it's undeveloped, and it's forfeited[.]" (April 6, 2021 H'g Tr. at 5:24-25; 6:7-8.) Even if it were not forfeited, it's meritless. Lira argues only that the Central District of California is a better venue, not that the Northern District of Illinois is an improper venue. Such an argument cannot support dismissal under Rule 12(b)(3). *See Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).

## III.    Lira Cannot Take Advantage of the Girardi Keese Bankruptcy to Avoid Litigating this Action.

Lira's main argument is that because Girardi Keese has filed for bankruptcy, the automatic bankruptcy stay, 11 U.S.C. § 362(a)(1), necessitates dismissal under Rule 12(b)(3).[1] That is wrong as a matter of law. "Although [the] automatic stay provision prevents on-going litigation against a debtor, the general rule in this circuit is that plaintiffs are free to pursue the debtor's codefendants regardless of the automatic stay." *Celtic Bank Corp. v. Exec. Title, Inc.*, No. 15 CV 30, 2015 WL 5951844, at *2 (N.D. Ill. Oct. 13, 2015) (internal quotations omitted). Only "unusual circumstances" might merit a departure from this rule, and the required

---

[1]     Although Lira's motion is captioned a motion under Rule 12(b)(2) and 12(b)(6), it contains no argument about personal jurisdiction and no developed argument that Edelson has failed to state a claim upon which relief can be granted. The body of the motion refers to Rule 12(b)(3), and Edelson assumes that is what Lira intended to invoke. (Dkt. 43 ¶ 4.)

circumstances are unusual enough that in the three decades since that doctrine was developed in in *A.H. Robins Co. v. Piccinin*, 788 F.2d 994, 999 (4th Cir. 1986), the Seventh Circuit has not found them to exist even once. *See Harley-Davidson Credit Corp. v. JHD Holdings Inc.*, No. 19-CV-155-JDP, 2020 WL 7078828, at *1 (W.D. Wis. Dec. 3, 2020).

Even if it is possible in theory for a non-debtor to take advantage of the bankruptcy stay, Lira cannot do so here. As a threshold matter, this isn't the right forum to seek that relief; the bankruptcy court is. And procedural issues aside, this case does not present the unusual circumstances that would justify any court extending bankruptcy protections to a non-debtor. There is no reason to stay or dismiss this action because a defendant's former employer has been forced into involuntary bankruptcy.

### A. If Lira Wants an Injunction from the Bankruptcy Court, He Must Ask the Bankruptcy Court.

Lira fundamentally misunderstands the mechanism by which the bankruptcy stay could in theory be extended to cover claims against him. He suggests that the *A.H. Robins* rule allows the bankruptcy stay to extend to a non-party automatically, just like to the debtor, without any further action by the bankruptcy court. That is incorrect because "*A.H. Robins* isn't based solely on § 362(a)(1). Rather, the court also relied on 11 U.S.C. § 105, which gives the bankruptcy court the authority to issue injunctions that are 'necessary or appropriate to carry out the provisions' of the bankruptcy code. For this reason, if defendants want the automatic stay to include non-debtors, they must first seek relief with the bankruptcy court." *Harley-Davidson*, 2020 WL 7078828, at *2.

And that relief is not granted automatically or as a matter of course. The Ninth Circuit, whose law governs the bankruptcy proceeding in the Central District of California, has made clear that it is error to "treat[] the 'unusual circumstances' doctrine and the usual preliminary

injunction standard as separate and distinct bases" for extending the bankruptcy stay to a non-debtor. *In re Excel Innovations, Inc.*, 502 F.3d 1086, 1096 (9th Cir. 2007) As the Ninth Circuit explained:

> [T]he "unusual circumstances" doctrine does not negate the traditional preliminary injunction standard. As we have noted, stays under the doctrine, "although referred to as extensions of the automatic stay, were in fact injunctions issued by the bankruptcy court after hearing and the establishment of unusual need to take this action to protect the administration of the bankruptcy estate." *Chugach Forest Prods.*, 23 F.3d at 247 n.6 (quoting *Patton v. Bearden*, 8 F.3d 343, 349 (6th Cir. 1993)). Indeed, [*A.H. Robins*] itself applied the usual preliminary injunction standard in affirming the stay. 788 F.2d at 1008.

*Id.* In other words, unless Lira goes to the bankruptcy court and demonstrates that he is entitled to a preliminary injunction to stop this proceeding, the automatic stay cannot apply. *See id.*; *Klinkenborg Aerial Spraying & Seeding, Inc. v. Rotorcraft Dev. Corp.*, 690 F. App'x 540, 541 (9th Cir. 2017); *Patton*, 8 F.3d at 349 ("Even if we were to adopt the unusual circumstances test, the bankruptcy court would first need to extend the automatic stay under its equity jurisdiction pursuant to 11 U.S.C. § 105"); "[T]he plain language of § 362(a)(1) doesn't allow this court" to enter that injunction and effectively usurp the decision from the bankruptcy court. *See Harley-Davidson*, 2020 WL 7078828, at *2.

The Court need not go any further to reject the contention that the Girardi Keese bankruptcy automatically stays the proceeding against Lira. If Lira truly believes that the bankruptcy stay should apply to him, nothing (other than perhaps Federal Rule of Bankruptcy Procedure 9011(b)) is stopping him from presenting a request for an injunction to the bankruptcy court. If he had acted promptly, the matter could already be set for hearing before the bankruptcy court. Instead, he has asked for a stay of proceedings while taking no action in the bankruptcy court at all. He is not entitled to that relief.

**B.** **There Are No "Unusual Circumstances" that Justify Extending the Bankruptcy Stay to Lira.**

Assuming for the sake of argument that this Court can properly consider the issue, Lira has failed to demonstrate the type of unusual circumstances that would allow him to take advantage of the bankruptcy stay as a non-debtor. The Seventh Circuit has recognized only two "closely related" exceptions "to the rule permitting suits against third parties[.]" *Matter of Fernstrom Storage & Van Co.*, 938 F.2d 731, 736 (7th Cir. 1991). Neither applies here.

"The first [exception] is applicable where 'there is such identity between the debtor and the third-party defendant that the debtor may be said to be the real party defendant and that a judgment against the third-party defendant will in effect be a judgment or finding against the debtor.'" *Id.* (quoting *A.H. Robins*, 788 F.2d at 999). On its face, that's not happening here. Lira and Girardi Keese are legally distinct entities, and the assets at issue are Lira's, not Girardi Keese's. *See Fox Valley Const. Workers Fringe Benefit Funds v. Pride of Fox Masonry & Expert Restorations*, 140 F.3d 661, 666 (7th Cir. 1998) (rejecting "specious argument that the automatic stay protects [non-debtor's] personal assets").

Lira contends that this exception must apply because "no liability against Lira can be established without a prerequisite initial finding against GK." (Dkt. 44 at 9.) According to Lira, that's the case because "Edelson entered into the contract with GK not Lira," meaning that "Lira has no independent liability under that contract as he was not a party to that contract in any individual capacity." (*Id.* at 8-9.) This argument is flawed in a number of respects. Most obviously, it contradicts the allegations in the complaint. Edelson asserted a breach of contract allegation against Lira, personally, on the basis that he "presented and executed" the contract. (Compl. ¶ 103). Further, Lira's own conduct suggests that he views himself as a party to it. After he left Girardi Keese, Lira attempted to make payments of attorneys' fees to Edelson pursuant to

the contract. (*Id.* ¶ 46). If Lira believed the contract was solely with Girardi Keese, that payment wouldn't make any sense. Because Edelson has plausibly alleged that Lira is a party to the contract at issue in this case, the Court cannot assume otherwise at this stage.

Even setting the breach of contract claim aside, Lira ignores that Edelson pleaded other claims against him. It expressly set out a claim for conversion, which is a tort claim, not a contract claim. *See In re Thebus*, 483 N.E.2d 1258, 1262 (Ill. 1985) ("A typical, although not necessarily exclusive, type of conversion by an attorney which warrants discipline involves the conversion of funds that have been deposited or received by an attorney for a specific purpose or for the use of another."). That claim is based on Lira's own conduct. (*See* Compl. ¶¶ 45-48, 62-63, 118-119.) Under Illinois law, "[w]hether [an] employer is held vicariously liable for the agent's conduct …, does not affect the agent's independent tort liability." *Schur v. L.A. Weight Loss Ctrs., Inc.*, 577 F.3d 752, 765 (7th Cir. 2009). It is a well-settled principle of law that "[i]t is not the agent's contract with the principal which exposes him to, or protects him from, liability to third persons, but his common-law obligation to so use that which he controls as not to injure another. That obligation is neither increased nor diminished by his entrance upon the duties of agency; nor can its breach be excused by the plea that his principal is chargeable." *Id.* (quoting *Baird v. Shipman*, 23 N.E. 384, 384 (Ill. 1890) (per curiam)). Lira's motion does not argue that Edelson failed to plausibly allege a conversion claim, and any argument to that effect is therefore forfeited. If Lira converted funds that belong to Edelson, he is liable to Edelson.

The second exception to the rule that non-debtors are not covered by a bankruptcy stay "operates where the pending litigation, though not brought against the debtor, would cause the debtor, the bankruptcy estate, or the reorganization plan irreparable harm." *Fernstrom*, 938 F.2d at 736. Lira contends that this exception applies because he is purportedly entitled to

11

indemnification by Girardi Keese under Section 2802 of the California Labor Code, which provides for employers to indemnify their employees under certain circumstances. Again, this is wrong. To start, there is no Seventh Circuit authority suggesting that a potential indemnification right is grounds to extend the automatic stay to a non-debtor. Even in courts where that rule is recognized, "simply pointing to claims such as indemnity do not rise to the level of hardship sufficient to support an extension of the stay to a non-debtor." *Shickel v. Blitz USA Inc.*, No. 11-3380 JBM/JAG, 2012 WL 13012959, at *2 (C.D. Ill. Feb. 21, 2012). Here, "there is nothing in the record to suggest that [Lira] would be entitled to absolute indemnity, only that [he] might elect to pursue indemnification or contribution in the event of an unfavorable result here." *See New Jersey Carpenters Health Fund v. Royal Bank of Scotland Grp., PLC*, 564 B.R. 192, 195 (S.D.N.Y. 2016). "The mere possibility of a future indemnification claim will not support application of the automatic stay[.]" *Id.*

It is true that some "[c]ourts have held that absolute indemnity can justify a stay." *Purvis v. Blitz, U.S.A., Inc.*, No. 7:11-CV-111 HL, 2012 WL 645884, at *2 (M.D. Ga. Feb. 28, 2012). However, that rule doesn't apply here because application is limited to situations where "a non-debtor defendant has a contractual right to *absolute* indemnity from the debtor." *Johnson v. Fifth Third Bank, Inc.*, 476 B.R. 493, 502 (W.D. Ky. 2012) (emphasis in original). For example, in *In re Bidermann Industries U.S.A., Inc.*, 200 B.R. 779, 784 (Bankr. S.D.N.Y. 1996), a non-debtor defendant argued for application of the automatic stay to litigation against him on the basis that under "Delaware corporation law and the debtor's by-laws, the debtor must indemnify [the defendants] if he was sued because he is an officer, director or agent of the debtor, and he acted in good faith and in a manner that he reasonably believed to be in the best interests of the debtor." *Id.* The bankruptcy court rejected that argument on the basis that "[t]he right to

indemnity is not absolute, and [the non-debtor] must ultimately demonstrate his entitlement to indemnity under the criteria set forth in the statute and the by-laws." *Id.* at 784-85. The court in *Johnson v. Fifth Third Bank, Inc.* came to the same conclusion in a case where an indemnification provision applied "except to the extent of the willful misconduct or gross negligence of such indemnified party" on the basis that "[a] jury could find that the allegations contained within the Complaint, if proven true, demonstrate willful misconduct on the part of the Defendant, making indemnification inappropriate." 476 B.R. at 503.

To make the indemnification seem like a foregone conclusion, Lira employs a creative use of ellipses to omit a key portion of California Labor Code § 2802(a). In full, and without omissions, that subsection reads:

> An employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful.

The second half of that sentence means that the "statute requires an employer to indemnify an employee for legal expenses incurred as a result of lawful or unlawful work-related acts, *unless the employee 'believed them to be unlawful.'*" *Dowie v. Fleishman-Hillard Inc.*, 422 F. App'x 627, 629 (9th Cir. 2011) (emphasis added). Lira's indemnification claim will fail as a matter of law if he "fails to satisfy the provision in § 2802 restricting indemnification where an employee knew his conduct was unlawful." *See id.* at 630.

Edelson alleges in its complaint that "Lira had knowledge of and cooperated with Girardi's misappropriation and conversion of settlement proceeds[.]" (Compl. ¶ 54.) This is not mere speculation. In the *Lion Air* contempt proceeding, Lira has admitted that he knew that some of the clients hadn't been paid, but he has never explained when he found out or how long he

knew, nor has he explained how that knowledge squares with his communications to Edelson before he left Girardi Keese. (*Compare* Exhibit 1, Declaration of David Lira, ¶ 30 *with* Compl. ¶¶ 43-44.) Further, after Edelson filed the complaint, it learned that partial payments were wired to the *Lion Air* clients on May 11, 2020 and July 6, 2020. (Girardi Accounting, attached as Exhibit 2.) Those dates correspond neatly with when Edelson communicated with Lira about this matter, but Lira never brought up the payments. (Compl. ¶¶ 44, 46.)[2] If Lira, a licensed attorney, did know about and participate in the theft of the settlement funds, it is difficult to see how he could have believed those actions to be legal. At the very least, the purported right is far from absolute. The question of whether he has an indemnification right will need to be litigated, and that is a matter between Lira and his former employer. *See Bidermann*, 200 B.R. at 785 ("[T]he risk and uncertainty of indemnity is something he, not his victim, should have to bear.").

Finally, Lira states without citation that he has to bring his claim for indemnity against Girardi Keese as a compulsory cross-claim in this litigation, and that he will be prejudiced by having to litigate it in the bankruptcy court. Lira's failure to cite any authority whatsoever for this proposition is not surprising, because the federal system does not have compulsory cross-claims. *See Gerhardson v. Gopher News Co.*, 698 F.3d 1052, 1061 (8th Cir. 2012); *United States v. Saint Louis Univ.*, No. 07-CV-0156-DRH, 2012 WL 359995, at *3 (S.D. Ill. Feb. 2, 2012). The truth is, nothing is stopping Lira from pursuing his purported indemnity claim in the bankruptcy court, and he is in no way prejudiced by having to do so. Indeed, indemnification

---

[2]     Edelson recognizes that some these matters were not alleged in the complaint, because it learned about them after the complaint was filed. However, in deciding a Rule 12(b)(3) motion, "the Court may examine facts outside the complaint" as long as it "resolve[s] all factual conflicts and draw[s] all reasonable inferences in the plaintiff's favor." *Electroplated Metal Sols., Inc. v. Am. Servs., Inc.*, 500 F. Supp. 2d 974, 976 (N.D. Ill. 2007). Edelson further submits that federal notice pleading standards did not require it to anticipate and plead facts to defeat a hypothetical indemnification claim to which it is not and likely will never be a party.

14

claims are often litigated separately, and courts even sever such claims where they "draw focus and attention away" from the main suit. *See, e.g.*, *Fid. Nat'l Title Ins. Co. v. Archer Land Title, LLC*, No. 106-CV-0048, 2007 WL 2301277, at *1 (S.D. Ind. Aug. 8, 2007).

In sum, Lira is seeking relief he is not entitled to in a forum that cannot provide it to him. That request should be denied.

### C. The Action Should Not Be Stayed Indefinitely.

As an alternative to dismissing the case, Lira suggests that the Court can stay it indefinitely while the bankruptcy works itself out. There is no reason for that. To do so would effectively extend the automatic stay to Lira even though, as discussed above, he is not entitled to that relief. Moreover, it wouldn't do anyone any good. Edelson dealt directly with Lira and Griffin while they were partners at Girardi Keese, and it is confident that they and Edelson together have the requisite knowledge and documents to allow all active parties to be able to litigate this case.

As far as the argument that the case should be stayed because Edelson cannot be paid until the clients are paid, it relies on the incorrect premise that only Girardi Keese owes any money. Edelson alleged, and intends to prove, that Lira is personally liable for the missing funds. Edelson's interest in the recovered funds may be subordinate to that of its former clients (either as a matter of law or just as a matter of good conscience), but that doesn't mean it has no interest at all, nor does it mean that it has to sit back and wait to see if its former clients happen to get paid at some indeterminate time in the future. Edelson believes that Lira is liable today, and because Lira is not bankrupt, Edelson can pursue its claims against him today. It intends to exercise its "right to an orderly disposition of [its] claims[.]" *See Clinton v. Jones*, 520 U.S. 681,

710 (1997) (affirming reversal of litigation stay that would have lasted for duration of the defendant's term of office as president).

## IV. The Court Has Personal Jurisdiction Over Griffin.

Griffin does not challenge venue or standing but instead attacks only the Court's ability to exercise jurisdiction over him. According to Griffin, he can only be sued in California because he had a handful of communications with an Edelson attorney who happens to live there. This myopic view of jurisdiction has been roundly rejected by the Supreme Court. This case is directly related to Griffin's substantial and voluntary contacts with Illinois, and there is jurisdiction over him in this state.

"In responding to a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), plaintiffs bear the burden of demonstrating the existence of jurisdiction." *In re Testosterone Replacement Therapy Prod. Liab. Litig. Coordinated Pretrial Proceedings*, 136 F. Supp. 3d 968, 972 (N.D. Ill. 2015) (Kennelly, J.) (internal quotation omitted). For a court to exercise jurisdiction over a defendant consistent with the Fourteenth Amendment's Due Process Clause, the defendant "must take some act by which it purposefully avails itself of the privilege of conducting activities within the forum State." *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1024 (2021) (internal quotation marks omitted). "The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous,'" such as by "entering a contractual relationship centered" in the state. *Id.*

Griffin begins with a detailed discussion of *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 137 S. Ct. 1773 (2017) and *Walden v. Fiore*, 571 U.S. 277 (2014). He contends that those cases permit the Court to narrow the jurisdictional inquiry to *solely* the fee dispute here, without considering the rest of the circumstances that led to this

lawsuit. According to Griffin, because "any injury suffered by the Plaintiff did not *arise from* any forum-related activity by Defendant Griffin," he cannot be subject to personal jurisdiction in Illinois. (Dkt. 42 at 9) (emphasis added).

This "causation-only approach finds no support in [the Supreme] Court's requirement of a 'connection' between a plaintiff's suit and a defendant's activities." *Ford Motor*, 141 S. Ct. at 1026; *see also id.* at 1030-32 (explaining that it is *Bristol-Myers* and *Walden* do not support this incorrect principle). In reality, the Supreme Court has "never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.,* proof that the plaintiff's claim came about because of the defendant's in-state conduct." *Id.* at 1046. As the court explained:

> None of our precedents has suggested that only a strict causal relationship between the defendant's in-state activity and the litigation will do. As just noted, our most common formulation of the rule demands that the suit "arise out of *or relate to* the defendant's contacts with the forum." *Id*., at ___ (slip op., at 5) (quoting *Daimler*, 571 U. S., at 127; emphasis added; alterations omitted); see *supra,* at ___. The first half of that standard asks about causation; but the back half, after the "or," contemplates that some relationships will support jurisdiction without a causal showing.

*Id.* at 1026. Accordingly, the specific personal jurisdiction inquiry here cannot be limited to the narrow set of actions that might have caused Edelson's injury. Rather, the question is whether "the connection between [Edelson's] claims and [Griffin's] activities in [Illinois]—or otherwise said, the relationship among the defendant, the forums, and the litigation—is close enough to support specific jurisdiction." *Id.* at 1032 (internal quotation marks and alterations omitted).

Plaintiff's allegations, along with additional evidence, demonstrate that the relationship is sufficiently close. *Cf. Carter v. Siemens Bus. Servs., LLC*, No. 10 C 1000, 2010 WL 3522949, at *3 (N.D. Ill. Sept. 2, 2010) (Kennelly, J.) ("A plaintiff is not required to allege in his complaint facts establishing personal jurisdiction."). Edelson alleges that Griffin participated in the theft and subsequent cover-up of money paid by Illinois-based Boeing to settle cases pending in

Illinois, resulting in injury to Griffin's associated Illinois counsel. (Compl. ¶¶ 40-56.) Indeed, Griffin himself prepared and executed a contract under which Edelson would act as local counsel, so that Griffin would be permitted to appear in the Circuit Court of Cook County. (*Id.* ¶ 102.) Griffin then executed verified petitions for permission to practice law *pro hac vice* in Illinois, designated Chicago-based Edelson attorney Ari Scharg as his associated Illinois attorney, and registered with the Illinois Attorney Registration and Disciplinary Commission. (Exhibit A to the Declaration of Alexander G. Tievsky, attached hereto as Exhibit 3; Rule 707 Statements, attached hereto as Exhibit 4.) Griffin even flew to Chicago on two separate occasions specifically to participate in the in-person mediations that resulted in the settlements at issue in this case. (Exhibit 5, Declaration of Ari J. Scharg, ¶ 5.) Contrary to Griffin's declaration, in which he insists that his communications were with Rafey Balabanian in California, Griffin regularly communicated with Scharg about the case and the settlements. (*Id.* ¶ 3.)

And while Griffin puts great emphasis on his communications with Balabanian, it is mere coincidence, as far as this case is concerned, that Balabanian lives in California. As Griffin admits (in boldface text, no less), the "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." (Dkt. 42 at 9) (quoting *Walden*, 571 U.S. at 285). Griffin's contacts with Balabanian had everything to do with the State of Illinois, and nothing to do with the fact that Balabanian resides in California. Balabanian is the managing partner of Chicago-based Edelson PC, and he is a member of the bar of the State of Illinois and of this Court.[3] (Exhibit 6, Declaration of Rafey S. Balabanian, ¶ 1.) He, like the firm as a whole, was brought into the case *specifically* because of his connections to Illinois. (*Id.* ¶ 2.)

---

[3]       Balabanian is also licensed to practice law in California.

It bears mention that although Griffin swears that "all of [his and Balabanian's] communications took place in California" and goes so far as to term them "undisputed," he has no personal knowledge of where Balabanian was when they spoke. (Dkt. 42-9, Griffin Decl. ¶ 7; dkt. 42 at 3.) If he did, he would know that he spoke with Balabanian at times when Balabanian was in Colorado. (Ex. 6, Balabanian Decl., ¶ 4.) The fact that Griffin did not either know or care what state Balabanian was in when they communicated underscores how irrelevant Balabanian's location is to the personal jurisdiction question. At bottom, if the *Lion Air* matters could have been handled by a California lawyer, Griffin could have done it himself. He needed Illinois lawyers, like Balabanian and Scharg, so that he could work on an Illinois case in an Illinois court. Illinois is the only reason Griffin communicated with Balabanian about this case, regardless of where Balabanian happened to be at the time.

Griffin's arguments against the exercise of jurisdiction are unavailing. He first directs the Court to *Cote v. Wadel*, 796 F.2d 981, 983 (7th Cir. 1986), which does not support his position. In that case, a Wisconsin resident hired a Michigan lawyer to represent her in a lawsuit in Michigan court, then tried to file a malpractice suit in Wisconsin. *Id.* at 983. Here, the situation is literally the reverse. Keith Griffin, a California resident, reached into Illinois to engage Illinois-based Edelson PC to assist in the prosecution of an Illinois lawsuit against an Illinois company on behalf of clients who live in Indonesia, not California. Just as the entire relationship at issue in *Cote* centered on Michigan, the relationship here centers around the forum state of Illinois.

A better comparison is *Schindler v. Lyon*, No. 12-CV-5928, 2013 WL 4544263 (E.D.N.Y. Aug. 28, 2013), in which the defendant, a California attorney, had retained the plaintiff, a New York attorney, as local counsel to prosecute an action in New York. *Id.* at *1. The defendant allegedly refused to pay plaintiff for his legal work on the case pursuant to their

19

agreement, and the plaintiff sued him in New York. *Id.* The New York court denied the defendant's motion to dismiss for lack of personal jurisdiction, holding that "[b]ecause defendant allegedly hired a New York lawyer to assist him with a lawsuit in New York, and had a substantial attorney-client relationship with an attorney of this state, defendant had sufficient contacts with New York such that it should have been reasonably foreseeable to him that he would be subject to suit in New York." *Id.* at *7. Here, like in *Schindler*, the facts suggest that the *entire purpose* of Griffin's agreeing to retain Edelson as local counsel was to allow him to conduct litigation in the State of Illinois. *See Clark v. Gannett Co.*, 122 N.E.3d 376, 390 (Ill. App. Ct. 2018) (holding that provision of legal services in Illinois court was sufficient to subject out-of-state attorney to personal jurisdiction in Illinois for matters related to the suit). It does not take a great leap of logic to arrive at the conclusion that Griffin's alleged theft of the settlement funds from that same Illinois litigation is an injury relating to his relationship with Illinois.

Griffin's remaining scattershot arguments fare no better. Like Lira, Griffin offers the incorrect statement that the "co-counsel agreement at issue is indisputably between Girardi Keese, on the one hand, and Edelson PC, on the other hand," and not with Griffin. (Dkt. 42 at 9.) Edelson alleges otherwise. (Compl. ¶ 102.) Further, Edelson has alleged counts other than breach of contract against Griffin, including the tort of conversion. (*See id.* ¶¶ 114-120.) It is black letter law that Griffin's "status as [an] employee[] does not somehow insulate [him] from jurisdiction." *Calder v. Jones*, 465 U.S. 783, 790 (1984). Griffin also argues that "[t]here can be no argument that employee-attorney Griffin engaged in any intentional or tortious conduct knowing that such would injure the Plaintiff in the forum state," for which he cites his own declaration. (Dkt. 42 at 10.) The only portion of Griffin's declaration that could support that statement has now been withdrawn, (dkt. 64 at 8 n.1), leaving only Edelson's allegations that Griffin did do precisely

20

that. (*See* Compl. ¶¶ 40-43, 49-53, 56, 102, 106-07, 118-120.) And because Griffin does not challenge the sufficiency of Plaintiffs' allegations, it is not in question that for the purposes of this motion, Griffin is to be considered a "primary participant[] in an alleged wrongdoing intentionally directed at a[n] [Illinois] resident, and jurisdiction over [him] is proper on that basis." *See Calder*, 465 U.S. at 790.

Finally, Griffin offers a cursory argument that the exercise of personal jurisdiction over him in Illinois is somehow unreasonable because he is now unemployed as a result of his actions. When considering whether exercise of personal jurisdiction is reasonable, courts consider "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies." *Tamburo v. Dworkin*, 601 F.3d 693, 709 (7th Cir. 2010). Here, "Illinois has a strong interest in providing a forum for its residents and local businesses to seek redress for tort injuries suffered within the state and inflicted by out-of-state actors." *Id.* Edelson, which was engaged to be *local* counsel for out-of-state lawyers, should not have to chase those lawyers back to their home states to enforce its co-counsel agreements and seek relief when its money is stolen. And Griffin should not be heard to complain that he no longer has a job when, on the record currently before the Court, he directly participated in the conduct that bankrupted his former firm, causing his unemployment. *Cf. Harbor Ins. Co. v. Schnabel Found. Co.*, 946 F.2d 930, 937 n.5 (D.C. Cir. 1991) (citing the "legal definition of chutzpah" as "a young man, convicted of murdering his parents, who argues for mercy on the ground that he is an orphan").

The only unreasonable and unfair outcome would be to permit Griffin to force the local

counsel he hired to chase him back to California—a state that has effectively nothing to do with

this case—in order to hold him accountable for his misconduct.

## CONCLUSION

The motions to dismiss should be denied, and the action should not be stayed.

Respectfully submitted,

**EDELSON PC**

Dated: April 27, 2021             By: /s/Alexander G. Tievsky
One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Alexander G. Tievsky
atievsky@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378

Rafey S. Balabanian
rbalabanian@edelson.com
EDELSON PC
150 California Street, 18th Floor
San Francisco, California 94111
Tel: 415.212.9300