## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | |
|---|---|
| EDELSON PC, an Illinois professional corporation, | Case No.: 1:20-cv-07115 |
| *Plaintiff,* | |
| *v.* | |
| THOMAS GIRARDI, an individual, GIRARDI KEESE, a California general partnership, ERIKA GIRARDI a/k/a ERIKA JAYNE, an individual, EJ GLOBAL LLC, a California limited liability company, GIRARDI FINANCIAL, INC., a Nevada corporation, DAVID LIRA, an individual, KEITH GRIFFIN, an individual, JOHNSTON HUTCHINSON & LIRA LLP, a California limited liability partnership, ROBERT FINNERTY, an individual, ABIR COHEN TREYZON SALO, LLP, a California limited liability partnership, CALIFORNIA ATTORNEY LENDING II, INC., a New York corporation, STILLWELL MADISON, LLC, a Delaware limited liability company, and JOHN DOE 1-10, | |
| *Defendants.* | |

## DEFENDANT KEITH GRIFFIN'S ANSWER AND AFFIRMATIVE DEFENSES DEMAND FOR JURY TRIAL

## INTRODUCTORY STATEMENT BY MR. GRIFFIN

NOW COMES the Defendant, KEITH GRIFFIN, by and through his attorney Ryan D. Saba of ROSEN SABA, who submits his Answer to the allegations contained in the Complaint of Plaintiff EDELSON PC ("Plaintiff"), and states as follows:

Plaintiff's Complaint alleges that Thomas Girardi, the sole owner of Girardi Keese, "who exercises exclusive and total control of all bank accounts for GK," embezzled settlement funds meant for Lion Air clients and failed to pay Edelson its co-counsel fees. (*See*, Complaint, ¶ 63). Plaintiff alleges that it entered a fee sharing agreement only with Girardi Keese, but now seeks to recover money that Girardi Keese failed to pay from individual former employee Defendant Keith Griffin, personally. Mr. Griffin is a former W-2 employee attorney of Defendant Girardi Keese. Mr. Griffin was not an equity partner or shareholder with Girardi Keese and should not be made a scapegoat for the conduct of his former employer and should not be forced to personally satisfy the debts of his former employer. Mr. Griffin never had access to or signatory authority over the client trust accounts of Girardi Keese where the money was deposited, Lion Air Litigation settlement funds or the co-counsel fees allegedly owed to Plaintiff. Mr. Griffin does not and never had access to the financial accounting records of Girardi Keese, its servers, or any financial documents in the possession or control of the law firm. Plaintiff should not be permitted to obtain the requested relief from Mr. Griffin, personally, as the claims properly lie against Girardi Keese.

## NATURE OF THE ACTION

1. Tom Girardi ("Tom" or "Girardi") and his law firm Girardi Keese ("GK") are on the verge of financial collapse and locked in a downward spiral of mounting debts and dwindling funds. They presently owe tens of millions of dollars to clients, lenders, co-counsel, settlement administrators, and experts, to name only a few, and have tried in vain to forestall the payment of

these debts with hollow promises, excuses, misdirection, and outright fraud.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

2.      At the heart of this deception is Defendant Girardi and his need to fund outrageous lifestyles for himself and his soon-to-be ex-wife, Erika Jayne ("Erika" or "Jayne"). Tom and Erika have reached celebrity status in the glitz-and-glam world of Hollywood and Beverly Hills. Tom is a well-known and powerful personal injury attorney. Erika is a performer who is perhaps better known for her years-long presence on *The Real Housewives of Beverly Hills*, a show centered on the larger-than-life extravagances of its cast members. To keep up their celebrity status, Tom and Erika must project a public image of obscene wealth at all times, and at whatever the cost.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

3.      As a result, and most egregiously, Tom has resorted to embezzling the proceeds of settlements that should have been directed to his clients—including, as the basis for this Complaint, the widows and orphans who lost loved ones in the tragic crash of Lion Air Flight 610—in order to continue funding his and Erika's lavish Beverly Hills lifestyles.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

4.      While Erika publicly filed for divorce this month, on information and belief, that "divorce" is simply a sham attempt to fraudulently protect Tom's and Erika's money from those that seek to collect on debts owed by Tom and his law firm GK. This would not be the first attempt by Tom to hide and divert assets. Indeed, in a likely violation of the California Uniform Fraudulent Transfer Act (Cal. Civ. Code § 3439), Defendant Jayne's company, Defendant EJ Global, has allegedly received *tens of millions* in "loans" directly from Defendant GK, of which

Tom is the sole equity shareholder.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

5.      Tom's downward spiral appears to have finally bottomed out. On information and belief, Tom's mounting loans and debt have piled up to such an extent that GK can no longer meet its financial obligations and it is likely that GK will soon not be a going concern. But Tom's litigation financers and other creditors (including Erika) are not the ones who stand to lose the most from the fall of GK. Instead, it's the Lion Air clients (and potentially other clients) who stand to lose everything. That's because, on information and belief, Tom has embezzled andredirected the funds that were due the Lion Air clients (and of lesser importance, Plaintiff Edelson) to his family members, friends, and his and GK's lenders and other creditors.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

6.      These family members, friends, lenders and other creditors of Defendants Girardiand GK have not simply been passively receiving funds that could plausibly be construed as valid repayments for loans made or obligations owed. Instead, with Defendants Girardi's and GK's financial woes in full view, these people and entities—including Defendants Lira, California Attorney Lending, and Stillwell Madison—have, on information and belief, with the agreement of Defendants Girardi and GK, structured an inter-creditor agreement amongst themselves that redirects to them any monies received into the bank accounts of Defendant GK. Pursuant to that agreement, on information and belief, Defendants Lira, California Attorney Lending, and Does 1-10 have knowingly demanded and received embezzled funds belonging to the Lion Air clients and Plaintiff Edelson, despite all the while knowing that those funds belongto the Lion Air clients represented by Defendant GK and Plaintiff Edelson PC (itself counsel ofrecord in the Lion Air litigation).

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

7.      Girardi's and GK's embezzlement and wrongful transfers to third parties of client funds simply cannot go unchecked. And while the present Complaint is brought in part to enforce Plaintiff's fee agreement with GK, those fees are not the primary focus of this Complaint; rather, this Complaint also seeks to force GK, a firm that pushes the slogan "*We Treat Our Clients Like Family*," to uphold its fiduciary duty to the surviving families of the victims of Lion Air Flight 610 that it agreed to represent.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

8.      In October 2018, Lion Air Flight 610 crashed, killing all 189 individuals on board. Litigation against Boeing followed, and nearly a dozen families, including widows and minor children, retained GK to represent them in seeking to recover for the tragic loss of their loved ones. Plaintiff Edelson PC was later brought in as local counsel to assist in the litigation and settlement process. The litigation was individually settled for those clients in early 2020 for asubstantial, but confidential, sum. The proceeds of those settlements were allegedly transferred thereafter from Boeing to GK.

**ANSWER:** Defendant admits that the Lion Air flight crashed in October 2018 and killed all individuals on board.  Defendant further admits that certain families retained Girardi Keese to represent them in connection with the crash.  Defendant denies the remaining allegations in this paragraph.

9.      Yet, on information and belief, Girardi, with cover for his actions provided by his former partner David Lira ("Lira") and current partner Keith Griffin ("Griffin"), prevented a

significant portion of that money, and potentially all of it, from ever reaching the victims of this horrific crash. Girardi has instead kept it for his own purposes and doled it out to his friends and family, all the while evading attempts by the clients to gain access to it.[1] On information and belief, the Lion Air settlement proceeds are not the only client funds Girardi has withheld and misappropriated for personal use.

---

[1]     As described herein, Edelson only recently learned of the true nature of this situation, andconcurrent with the filing of this Complaint, is also filing a Motion for Rule to Show Cause with the Court in *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.).

**ANSWER:** Defendant denies that he is or ever has been a "partner" of Girardi and further denies that he provided "cover" to Girardi.  Defendant lacks sufficient knowledge to admit or deny the rest of the allegations in this paragraph.


10.     In addition to embezzling his clients' funds, Girardi has also taken massive litigation loans for the stated purposes of funding the successful operation of his law firm (utilizing ongoing cases and his own personal guarantee as collateral). Contrary to that purpose, on information and belief, these loans appear to have been utilized to fund Girardi's and Jayne's personal spending habits. Indeed, the timing of new litigation loans have allegedly corresponded with new "loans" from GK to his wife's company, Defendant EJ Global. As a result of this misuse, millions of dollars in loans have fallen into default, resulting in litigation against Tom, his wife, and his firm.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.


11.     In a Madoff-inspired attempt to protect his own wealth and appease his aggressive and well-heeled lenders, on information and belief, Girardi has in fact used client settlement funds,

including money owed to the families of the victims of Lion Air Flight 610, to pay down loans, leaving the clients with little, if anything.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

12. Defendant California Attorney Lending is one such lender. On information and belief, it has knowingly received embezzled client money from the Lion Air settlements. Similarly, Defendant Stillwell Madison, a lender that recently had a writ of attachment for

$5,847,411 placed against GK for a defaulted loan, and that is presently seeking to recover thosefunds (and potentially has recovered some already), may also be receiving the proceeds of the embezzled client money.[2]

---

[2] Importantly, the Defendants named here are only those that are publicly known. On information and belief, others, included here as Does 1-10, have also improperly received LionAir client settlement funds and will be identified through discovery and the accounting process.This includes other lenders, co-counsel, referring counsel, and vendors, among others.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

13. But these two lenders are hardly alone. Numerous other lenders and creditors have collected or are seeking to collect from Girardi. Yet, on information and belief, Girardi continues to embezzle funds owed to clients into his own personal and firm bank accounts. In turn, he continues to use that money to fund his and Erika's lavish lifestyle, release personal guarantees, pay down loans, route the money to friends and family, and satisfy other outstandingdebts.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

14. By receiving Tom's money, creditors are accepting ill-gotten gains, which they

know or should know was money collected by Girardi through criminal embezzlement of client funds.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

15.     Secondary to the concerns regarding client funds, Defendants GK, Girardi, Griffin, and Lira have breached enforceable co-counsel agreements with Plaintiff Edelson for the litigation of cases centralized in *In Re: Lion Air Flight JT 610 Crash*. On information and belief, the money Plaintiff Edelson is owed is also being misappropriated by Defendants, including by Defendant California Attorney Lending. California Attorney Lending has accepted illegally gotten gains it knew or should have known were not the property of GK, but instead belonged to Edelson PC, such that California Attorney Lending tortiously interfered with the fee contract between Edelson and GK.[3]

---

[3]     For the sake of clarity, Plaintiff Edelson *will not* accept any attorneys' fees for its work in *In Re: Lion Air Flight JT 610 Crash* until a full, court-supervised accounting has been performed that confirms each and every relevant client has first been paid in full.

**ANSWER:** Defendant denies that he breached any agreement with Plaintiff Edelson and further denies that any such agreement was enforceable. Defendant lacks sufficient knowledge to admit or deny the balance of the allegations in this paragraph.

16.     As such, this lawsuit requests that the Court order (1) an accounting of all funds transferred from Boeing that were intended for any GK client (inclusive of any transfers to third parties associated with, or transfers made for the benefit of, GK) related to settlements in *In Re: Lion Air Flight JT 610 Crash*, and a full accounting of what subsequently became of those funds; (2) the disgorgement of all such funds from any Defendant (or any non-party) who is improperly in receipt of those funds; (3) the transfer of those funds to the appropriate client recipients; and, *only*

*after those steps have been accomplished* (and any other remedial steps the Court deems warranted), (4) the payment of the contractually required attorneys' fees to Edelson PC.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.

## PARTIES

17.     Plaintiff Edelson PC is an Illinois professional corporation operating as a lawfirm, with its principal place of business located at 350 North LaSalle, 14th Floor, Chicago, Illinois 60654. Edelson PC also has offices located at 123 Townsend Street, Suite 100, San Francisco, California 94107.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

18.     Defendant Thomas Girardi is a natural person and resident of the State of California. Thomas Girardi is the sole equity partner of Defendant GK.

**ANSWER:** Defendant admits the allegations in this paragraph.

19.     Defendant GK is a general partnership formed under the laws of the State of California, with its principal place of business located at 1126 Wilshire Boulevard, Los Angeles, California 90017. GK does business in the State of Illinois and in this District.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

20.     Defendant Erika Girardi, also known as Erika Jayne, is a natural person and resident of the State of California. Jayne is the wife of Defendant Girardi. On information and belief, Jayne has a legal and financial interest in a community property interest in GK and the

actions of her husband, Girardi, taken for the benefit of their marital community property. Jayne is also a principal owner of Defendants EJ Global and Girardi Financial.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

21.     Defendant EJ Global LLC is a limited liability company existing under the laws of the State of California, with its principal place of business located at 1126 Wilshire Boulevard, Los Angeles, California 90017. EJ Global LLC does business in the State of Illinois and in this District.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

22.     Defendant Girardi Financial, Inc. is a corporation existing under the laws of the State of Nevada, with its principal place of business located at 1126 Wilshire Boulevard, Los Angeles, California 90017. The President of Girardi Financial is Defendant Girardi, the Secretary is Defendant Jayne, and the Treasurer and Director is Defendant Lira. Girardi Financial does business in the State of Illinois and in this District. Plaintiff is including Girardi Financial purely as a defendant to Count II, which seeks an accounting.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

23.     Defendant Lira is a natural person and resident of the State of California. Lira is formerly a partner at Defendant GK (as of May 2020) and a current partner at Defendant Johnston Hutchinson & Lira LLP. Lira is also Defendant Girardi's son-in-law.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

24.     Defendant Griffin is a natural person and a resident of the State of California. Griffin is currently a partner at Defendant GK.

**ANSWER:** Defendant admits that he is a natural person and a resident of the State of California.

Defendant denies that he is or ever was a partner at Defendant GK.

25.     Defendant Johnston Hutchinson & Lira LLP is a California limited liability partnership with its principal place of business located at Two California Plaza, 350 South Grand Avenue, Suite 2220, Los Angeles, California 90071. Johnston Hutchinson & Lira LLP does business in the State of Illinois and in this District.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

26.     Robert Finnerty ("Finnerty") is a natural person and resident of the State of California. Finnerty is formerly a partner at Defendant GK (as of May 2020) and currently apartner at Defendant Abir Cohen Treyzon Salo. Plaintiff is including Finnerty purely as a defendant to Count II, which seeks an accounting.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

27.     Defendant Abir Cohen Treyzon Salo, LLP, is a California limited liability partnership with its principal place of business located at 16001 Ventura Boulevard, Suite 200, Encino, California 91436. Abir Cohen Treyzon Salo does business in the State of Illinois and in this District. Plaintiff is including Abir Cohen Treyzon Salo purely as a defendant to Count II, which seeks an accounting.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

28.     Defendant California Attorney Lending II, Inc. is a corporation existing under the laws of the State of New York with its principal place of business located at 6400 Main Street, Suite 120, Williamsville, New York 14221. California Attorney Lending II does business in the State of Illinois and in this District.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

29.     Defendant Stillwell Madison, LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 36600 North Pima Road, Suite 202B, Carefree, Arizona 85377. Stillwell Madison does business in the State of Illinois and in this District. Plaintiff is including Stillwell Madison purely as a defendant to Count II, which seeks an accounting.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

30.     Defendants John Doe 1-10 ("John Doe 1-10" or "Doe Defendants") are yet to be identified entities and individuals who have improperly received and retained *Lion Air* client settlement funds. The Doe Defendants will be identified by and through discovery and the accounting process, and likely include lenders, co-counsel, referring counsel, and vendors, among others.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

## JURISDICTION AND VENUE

31.      This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the jurisdictional amount exceeds $75,000 and the Plaintiff does not share a state of citizenship with any Defendant.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

32.     The Court has personal jurisdiction over Defendants because they conduct business in this District and because they have committed tortious acts purposefully directed at Illinois, and such conduct was designed to create an injury in Illinois and this District.

**ANSWER:** Defendant denies the allegations in this paragraph.

12

33.     Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants have committed tortious acts purposefully in this District and the underlying litigation giving rise to this Action (*In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.)) is ongoing in thisDistrict before the Honorable Thomas M. Durkin.

**ANSWER:** Defendant denies the allegations in this paragraph.

## FACTUAL ALLEGATIONS

### The Crash of Lion Air Flight 610 and Subsequent Litigation

34.     On the morning of October 29, 2018, Lion Air Flight 610, flying on a Boeing 737 Max 8 model aircraft, departed Jakarta, Indonesia. Shortly after takeoff, the flight crew contacted air traffic control and requested to return to Jakarta, but the flight never made it.

**ANSWER:** Defendant admits the allegations in this paragraph.

35.     After a series of chaotic maneuvers resulting from a fundamental system failure, Flight 610 plummeted into the ocean. All 189 souls on board, who would have experienced unthinkable terror in their final moments, were killed on impact.

**ANSWER:** Defendant admits the allegations in this paragraph.

36.     Following this tragic accident, government investigations determined that the aircraft's anti-stall system—the maneuvering characteristics augmentation system—caused the aircraft's nose to suddenly, and without warning, drop and dive steeply.

**ANSWER:** Defendant admits the allegations in this paragraph.

37.     Following the revelations regarding Boeing's design defects and other failures,

litigation ensued on behalf of those that had lost loved ones—in some cases entire families and minors who lost both parents. More than a dozen of those families directly or indirectly retained GK and expected that Girardi and other lawyers at his firm would represent their best interests and deliver the proceeds of any successful outcome to them.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

38.     In the months that followed, litigation took place in this District, with the assistance of Plaintiff Edelson, before the Honorable Thomas M. Durkin, eventually leading to a series of mediations. In the end, Boeing reached individual settlements with each of the clients and families represented by GK and Edelson. The principle terms of the settlements were reached in early 2020 and finalized thereafter.

**ANSWER:**  Defendant admits that litigation took place in this District, with the assistance of Plaintiff Edelson, before the Honorable Thomas M. Durkin, eventually leading to a series of mediations eventually leading to aseries of mediations.  Defendant denies the remaining allegations in this paragraph.

**The Failure of Defendants Girardi, GK, Griffin, and Lira to TransferProceeds of the Settlements to the Victims' Families**

39.     Throughout the pendency of the Lion Air litigation and the post-settlement process, GK attorneys maintained total and exclusive control over communications with the clients.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

40.     In February 2020, Edelson attorney Ari Scharg was notified by GK attorney Griffin that he was beginning to receive executed settlement agreements from the clients. As was

14

the plan, Edelson, in turn, began preparing motions seeking court approval for each settlement providing for an allocation of settlement proceeds to minor heirs of the decedents, the first of which, was filed on February 21, 2020. (Dkt. 379.)[4] That motion was granted by the Court on February 24, 2020 and the case was dismissed. (Dkt. 384.)

**ANSWER:** Defendant admits that he notified Edelson attorney Ari Scharg that he was beginning to receive executed settlement agreements from the clients. Defendant lacks sufficient knowledge to admit or deny the remaining allegations in this paragraph.

41.     Soon after the order dismissing the case was entered on February 24, 2020, Mr. Scharg inquired with Defendant Griffin as to when he expected Boeing to fund the settlements. Griffin stated that Boeing was waiting to receive all of the executed settlement agreements from each of GK's and Edelson's collective clients. Griffin further stated that he was still waiting on several releases to be executed and returned but expected to receive them shortly.

**ANSWER:** Defendant denies the allegations in this paragraph.

42.     The following week, Edelson secured approval of three more settlement agreements involving allocations to minors that were returned executed, and those cases were also dismissed. (Dkts. 419, 424, 427.) Meanwhile, Defendant Griffin and his then partner at GK, Defendant Lira, continued to represent that they expected the remaining settlement agreements to be executed by the clients shortly, at which time Boeing would fund the settlements. As it turned out, though, it would take several more months for the remaining settlement agreements to be executed by the clients.

**ANSWER:** Defendant denies the allegations in this paragraph.

---

4       All "Dkt." cites are to *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.).

43.    Beginning in April 2020, Edelson attorneys began reaching out to Defendants Griffin and Lira, almost on a weekly basis, to get an update on the status of getting the settlement agreements executed and the settlements funded—the thought being that the clients who had executed the settlement agreements shouldn't have to continue to wait for the others to do the same. Defendants Griffin and Lira would respond periodically with little more than a statement that they were still waiting on executed settlement agreements from the clients, and that nothing could be done to move Boeing off its position that it needed all of the clients to sign and return the settlement agreements before it would release the settlement proceeds.

**ANSWER:** Defendant denies the allegations in this paragraph.

44.    On May 11, 2020, Jay Edelson sent Defendant Lira an email expressing concern about the delay in finalizing the settlements (particularly in light of Boeing's public pronouncements at the time that it was considering whether to file for bankruptcy) and the need to get them funded for the sake of the clients. Defendant Lira responded by email, providing a more detailed explanation of where things stood on specific releases, why it was taking so long for them to be translated and executed by the clients, and repeating that Boeing would release the settlement funds when they received the signed releases. He assured Edelson that the funds were paid by insurance and secure in an escrow account, so there was no risk posed by a potential bankruptcy. Lira's explanation was not completely satisfying, but Lira and the other lawyers at GK were the only ones in contact with the clients and Lira's explanation of why it was taking longer for certain of them to execute and return the settlement agreements seemed plausible.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

45.    But several more weeks passed without any further updates regarding the status of

the outstanding settlement agreements. Then, on June 11, 2020, Defendant Lira sent an email to Edelson asking to set up a call to discuss the status of the cases. On that call, which occurred on June 16, 2020, Defendant Lira informed Edelson that he had recently resigned from GK and explained that the settlements had finally been funded and that the bulk of the funds were received and held by GK. Though Defendant Lira was intent on discussing which firm he believed should be held responsible for paying Edelson's share of attorneys' fees (GK or his newfirm), the attorneys at Edelson were instead focused on the more fundamental question that they had been asking for several months: Have the clients received their proceeds from the settlements?

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

46. Defendant Lira, now a partner at Defendant Johnston Hutchinson & Lira, failed to provide a coherent answer to this question, and instead, on July 6, 2020, sent a letter to Edelson that, without detail, claimed that certain Lion Air clients had received their settlement proceeds by Boeing, certain clients had not, and that a check to Edelson for some portion of the attorneys' fees owed to them was included with the letter as "partial payment." Edelson did not then, and has not since, cashed that check.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

47. A few days later, Edelson responded with a letter to Defendants Girardi and Lira, which stated, among other things, that "in response to David's cover letter that encloses a check to our firm for some portion of the fees owed on three of the Lion Air cases, we decline to accept any monies until we are given adequate assurances that each and every one of our collective clients who are entitled to settlement monies have, in fact, received the entirety of the monies owed." The letter also requested, again, information about the status of the settlement proceeds owed to the

clients.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.


48.      Several days later, Defendant Lira responded, but again did not say with any clarity which of the clients had received full settlement payments and whether any were still owed money. Lira also took the position that because he left GK, he no longer had any ongoing involvement in the cases and any further questions regarding the status of the settlement proceeds owed to the clients and the fees owed to Edelson should be directed to Defendants Girardi and Griffin, since GK was the law firm that had been engaged by and had the relationship with the clients.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.


49.      Edelson attorneys continued to press Defendants Girardi and Griffin as to the status of the settlement proceeds and whether any clients were yet to be paid. Starting in July 2020, Edelson's managing partner, Rafey Balabanian, took the lead in communicating with Girardi and Griffin. In a series of phone calls that took place over the course of the latter half of July 2020, Defendant Griffin indicated that despite Boeing fully funding the settlements, he understood from Defendant Girardi that the clients had not received the full amount owed to them and were still owed about half of what was due to them. Griffin could not elaborate on why such an amount was still owed to certain clients or the status of the remaining settlement proceeds because Girardi is the sole equity owner of GK with sole and exclusive control over the firm's bank accounts, including its client trust accounts. As a result, Griffin said those questions could only be answered by Girardi. Griffin also claimed that part of the difficulty in speaking with and delay in getting answers from Girardi was attributable to Girardi being unavailable in recent weeks due to a serious illness that caused him to be hospitalized and for which he sought treatment.

**ANSWER:** Defendant admits that Girardi is the sole equity owner of GK with sole and exclusive control over the firm's bank accounts, including its client trust accounts, that Defendant directed questions to Girardi, and that Girardi was unavailable because of illness. Defendant denies the remaining allegations in this paragraph.

50. Balabanian ultimately got an opportunity to speak with Defendant Girardi in late July. Girardi's explanation regarding the status of the settlement proceeds was extremely convoluted and meandering, and he couched everything in terms of him recovering from the illness that he was being treated for, so Balabanian would have to bear with his inability to give along and detailed explanation of why payment of the settlement proceeds to the clients (and of lesser importance, payment of Edelson's portion of fees) had been delayed. Girardi claimed that his illness, which caused him to be away from his firm for several weeks, is what ultimately caused the—in his words—"mistake" of not getting certain clients paid in full, and that he planned to immediately remedy the issue by getting the remaining amount that was owed wired out[5] within a few days. Girardi said that he or Griffin would follow up once that occurred.
**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

51. Despite his assurances, Girardi did not follow back up with Balabanian. Instead, Balabanian made several more attempts over the course of the following weeks to reach Girardi to confirm that payment had been made to the clients. They finally spoke again in late August 2020, at which point the conversation quickly became contentious after Girardi stated that he didn't need to explain himself to Balabanian when it came to clients of GK and that, as he promised a few weeks ago, arrangements had been made for them to receive the remaining monies owed to them, as well as the attorneys' fees owed to Edelson. Girardi then advised that

Griffin would follow up and quickly ended the call.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

52.     In what started to feel like a recurring theme, though, Balabanian was the one who would need to follow up to confirm Girardi had made good on his promises. Eventually, though, on or about September 3, 2020, Griffin advised Balabanian that a wire for half of the outstanding amount owed to the clients had been initiated, with the other half set to be initiated the following Monday. While Griffin said he could send proof of the wired funds, he ultimately never did. With the payments to the clients seemingly out of the way, the conversation shifted to the fees owed to Edelson on account of the settlements. As Edelson had made clear from the outset, the timing of payment of their fees wasn't of particular concern and that since the clients had been paid, payment of the fees could be made at any time before the end of the year. To that end, Balabanian requested, and Griffin agreed to provide, a final statement showing the settlement proceeds disbursed, and the amount of fees owed to Edelson, and when they would likely be paid.

**ANSWER:** Defendant admits that he agreed to provide a statement to Balabanian of the fees allegedly owed to Edelson. Defendant denies the remaining allegations in this paragraph.

---

5     Consistent with what Defendants Griffin and Lira were initially saying, Girardi also attributed the delay in paying out the settlement proceeds to the clients to Boeing's refusal to fund the settlement without all of the executed settlement agreements in hand. Girardi also mentioned something about working on and even retaining lawyers for the benefit of the clients to assist with some sort of tax issue affecting the tax treatment of proceeds recovered on account of wrongful death claims and that getting a determination from the IRS was also holding up finalizing and getting the settlements funded. In all honesty, the conversation with Girardi was strained and he didn't make a whole lot of sense when it came to this point.

53.     Then, in November 2020, Plaintiff Edelson received another letter from Defendant Lira regarding the settlement proceeds paid to certain other Lion Air clients and how

said proceeds were being distributed. Among other things, the letter stated that GK's 50% interest (which included Edelson portion) in the gross attorneys' fees generated from the settlements of certain of the clients' cases had been directly transferred to Defendant California Attorney Lending at the direction of Girardi. Lira also included a check to Edelson as another partial payment of the attorneys' fees owed to them. Edelson did not then, and has not since, cashed this check. This letter makes clear Lira had knowledge of and cooperated with Girardi's misappropriation and conversion of settlement proceeds, since at least a portion of said proceeds were being transferred to (and accepted by) lenders of Girardi instead of Edelson who are rightfully entitled to them.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

54.     Though Edelson was under the impression that the settlement proceeds owed to the clients had finally been paid, Lira's letter once again raised concerns, particularly with regard to the part referencing Girardi directing the attorneys' fee portion of the settlement proceeds that, in part, belonged to Edelson, to a litigation funder. As a result, Balabanian reached back out to Griffin to inquire about whether he could provide any more insight into when Edelson could expect payment of its fees.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

55.     Defendant Griffin responded that there had been some "positive developments," but that Girardi was undergoing another medical procedure, so Griffin needed a couple more days to speak with him and report back. After several more days passed, Balabanian again followed up with Griffin and inquired about what Griffin characterized as "positive developments." Griffin advised that the positive developments were that certain of the Lion Air

21

clients had demanded a call with Girardi to gain an understanding of when they would be paid the balance of the settlement proceeds owed to them. Balabanian responded that his understanding from Girardi and Griffin was that the clients had been paid, and that the only outstanding obligation on the Lion Air Litigation was Edelson's attorneys' fees. But Griffin advised that that understanding was mistaken, and that Girardi hadn't actually paid the clients as previously represented. Griffin further stated that he was skeptical that Girardi or GK had the financial means to satisfy GK's obligations to those certain Lion Air clients that are still owed settlement proceeds and Edelson.

**ANSWER:** Defendant denies the allegations in this paragraph.

56.     In the week following this letter, and after attempts by Edelson to elicit additional information from Defendant Griffin, Girardi called Balabanian numerous times (including over Thanksgiving weekend) to plead his case and presumably ward off this Complaint. Two voicemails from Girardi can be found here[6] and here.[7]

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

57.     The first voicemail states, in part:

We're doing good on this thing, getting things squared away and shit. Don't be mean to me, be nice to me. I'm doing good. It was because of me that we got this by the way. … I'll be in touch, don't worry about everything, we're friends, things are going to work out good.

The second voicemail states, in part:

We screwed up here a little bit. … We had three different air crashes and they got a little screwed up. I'll get everything worked out by Thursday. I'm so sorry, this neverhappened before, anyway, everything will be smoothed over on Thursday.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

---

6      https://edelson.com/wp-content/uploads/voicemail-2101.mp3
7      https://edelson.

58.     Just before the filing of this Complaint, Jay Edelson and Rafey Balabanian reached out to and spoke with Defendant Griffin. During that call, Defendant Griffin informed them that they should get in touch with Defendant Robert Finnerty, who would be serving as a receiver charged with overseeing the wind up of Defendant GK.

**ANSWER:** Defendant admits that he spoke with Rafey Balabanian and Jay Edelson but denies that he indicated that Robert Finnerty would be serving as a receiver charged with overseeing the wind up of Defendant GK.

59.     Shortly thereafter, Edelson and Balabanian reached out to Defendant Finnerty. Defendant Finnerty explained that he and his (apparently new) firm, Defendant Abir Cohen Treyzon Salo, represent a creditor of Girardi and GK and that they, along with Girardi's lenders and certain other creditors, have more or less agreed that he and his firm would act as receiver, which meant his firm would essentially be taking over GK for the purpose of liquidating its assets, including litigating to settlement or judgment, as necessary, any ongoing cases, and winding up its affairs, including payment of debts owed to creditors, which would presumably include the Lion Air clients and Plaintiff Edelson.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

60.     Following the call, Plaintiff Edelson came to learn that Defendant Finnerty had beena decades-long partner at GK, who only recently left GK in May 2020, and who has on numerous occasions represented Girardi and the firm against actions by clients claiming their money had been mishandled. At no time during this call, or the call with Defendant Griffin, was

23

any of this disclosed to Edelson or Balabanian.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation.

61.     Despite the initial representations of Defendant Griffin (and later ones by Defendants Lira and Girardi), on information and belief, upon the dismissal of each case, Boeing transferred the settlement proceeds to GK in accordance with the terms of the settlement agreements, for the purpose of GK distributing said proceeds to GK's Lion Air clients.

**ANSWER:** Defendant denies the allegations in this paragraph.

62.     On further information and belief, Girardi, who exercises *exclusive and total control* of all bank accounts for GK, embezzled the settlement proceeds transferred by Boeing for his own personal use, with the knowledge and cooperation of Defendants Lira and Griffin.

**ANSWER:** Defendant admits that Girardi exercised *exclusive and total control* of all bank accounts for GK.  Defendant denies that he knew about or cooperated regarding the transfer of funds.  Defendant lacks sufficient knowledge to admit or deny the remaining allegations in this paragraph.

**The Opulent, and Expensive, Life of Girardi and Jayne**

63.     By all accounts, Girardi keeps engaging in fraud and deception in order to support a never-ending spending spree by himself and Jayne.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

64.     Girardi and Jayne lead notoriously lavish lifestyles.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

65.     Erika reportedly spends *$40,000 per month* on her "look."[8] Erika even performs a song called "Exxpen$ive," featuring the hook "it's expensive to be me."[9]

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

66.     Tom, for his part, has a daily standing reservation and exclusive table at Morton's Steak House in Los Angeles, routinely flies on private jets, and owns multiple homes across the country. In other words, he too maintains a significant monthly tab.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

67.     When asked why she and Tom required two private planes, Erika responded "Because one is small and one is big!"[10] Erika also bragged that the most expensive thing she owns is a singular piece of jewelry but would not say how much it was worth (which would presumably mean it's more expensive than her $250,000 Lamborghini).[11] And she bought Tom a $5,000 toilet as a gift.[12]

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

---

[8]     Lindsey Cronin, *RHOBH Star Erika Jayne Reveals She Spends $40,000 A Month On Her Appearance! Says Being Rich AF Gets 'Boring'*, REALITY BLURB,

https://realityblurb.com/2018/03/21/rhobh-erika-jayne-spends-40000-a-month-on-her-appearance-says-being-rich-af-gets-boring/.

9 *Erika Jayne - XXpen$ive – Expensive*,
YOUTUBE,
https://www.youtube.com/watch?v=D26WFPl2ROQ.

10 Marenah Dobin, *The Craziest Thing Erika Girardi Owns*, BUSTLE,
https://www.bustle.com/articles/149204-the-craziest-thing-erika-girardi-owns-truly-sets-the-real-housewives-of-beverly-hills-star-apart.


  68. Funding this lifestyle requires large sums of cash.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this

paragraph.


  69. On information and belief, Girardi and Jayne siphoned significant sums of money

from lenders and clients and moved it out of GK's bank accounts for personal use. This exact

scheme was described in a sworn declaration by Alan Zimmerman, CEO of Law Finance, in its

litigation against Girardi:

> [Girardi's] claim [that Law Finance Group] included an unwarranted attack in their complaint by claiming that Mr. Girardi was using LFG's money to support his lavish lifestyle, but even if that were somehow relevant here, LFG's allegations are true. As explained above, LFG has obtained financial records that demonstrate that Girardi has been using Girardi Keese funds to "loan" over $20 million dollars to his wife's company, EJ Global. LFG even tried previously to redact the name of the recipient of these funds from the prior filings, in order to save Mr. Girardi the embarrassment.[13]

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this

paragraph.


  70. Now that Tom and Erika are facing increasing pressure to actually pay down their

debts, as well as Tom living up to his fiduciary duty by transferring settlement funds to clients

who are otherwise prepared to sue him, they are searching for new methods to protect their

money.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

71.     On information and belief, Tom's and Erika's divorce is a sham proceeding, designed to further the scheme described by Mr. Zimmerman above: place assets outside of Tom's and his law firm's name to shield it from the collection efforts of his creditors.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

---

11     Jocelyn Vena, *What Is the Most Expensive Thing Erika Girardi Owns?* THE DAILY DISH,https://www.bravotv.com/the-daily-dish/the-most-expensive-thing-erika-girardi-owns.

12     Marenah Dobin, *Erika Girardi Gave Her Husband Tom Girardi A $5,000 Toilet As A Gift*, REALITY TEA, https://www.realitytea.com/2017/12/29/erika-girardi-gave-husband-tom-girardi-5000-toilet-gift/.

13     *Law Finance Group, LLC v. Girardi Keese, et al*., No. 19STCV01455 (Cal. Sup. Ct.) (#Bl-63).

**Girardi and GK Have Consistently Defrauded and Failed to Pay Clients, Lenders,and Others, For Their Own Benefit**

72.     A 2017 article noted that "Girardi Keese has been sued for malpractice, fraud or breach of contract at least 22 times since 1995…"[14] And numerous lawsuits have been filed since.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

73.     Based only upon publicly available information, these prior lawsuits were brought by clients, consultants, vendors, and lenders, among others, and amount to tens of millions of

dollars improperly withheld and embezzled by Girardi and his firm.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

74.    Most recently, GK has been sued by multiple financial firms that loaned the firm over twenty million dollars collectively.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

75.    Law Finance Group sued GK and Girardi personally in January 2019 after they defaulted on a $16 million note.[15] Defendant Stillwell Madison likewise filed suit a month later to recover on a $5 million defaulted loan.[16]

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

76.    As alleged in those complaints, Girardi failed to make payments and quickly defaulted on these loans; however, he managed to negotiate forbearance agreements with both lenders within weeks of each other (without either lender having knowledge of the other), that obligated his firm to make millions of dollars in payments just in the following few months. As it turns out, the forbearance agreements were simply stalling tactics, as Girardi and his firm then failed to make any of those payments as well.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

77.    Eventually, under court order in 2019, GK paid Law Finance Group $16 million

dollars to clear the loan. The source of this money is unknown. By contrast, Stillwell Madison

sought and received a writ of attachment for nearly $6 million in October 2020, and on

information and belief, is proceeding with collection efforts.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this

paragraph.

---

14      Sandy Mazza, *Famed attorney Thomas Girardi accused of hoarding settlement funds for Carson's Carousel residents*, DAILY BREEZE, https://www.dailybreeze.com/2017/07/01/famed- attorney-thomas-girardi-accused-of-hoarding-settlement-funds-for-carsons-carousel-residents/.

15      *Law Finance Group, LLC, v. Girardi Keese*, No. 19STCV01455 (Cal. Sup. Ct.).

16      *Stillwell Madison, LLC, v. Girardi Keese*, No. 20STCV07853 (Cal. Sup. Ct.).

78.      On information and belief, to stave off collection efforts, Girardi and his lenders

and other creditors have entered into a series of inter-creditor agreements, which provide that any

monies received into Defendant GK's bank accounts be directed to those lenders and creditors.

But because of Girardi's now widely-known financial troubles, these lenders and other creditors

knew or should have known that monies being redirected by Defendant Girardi are likely

embezzled client funds and co-counsel fees and thus, were illegally obtained by Defendant Girardi

in the first instance. As a result, by knowingly accepting these embezzled funds, the lenders,

including Defendants California Attorney Lending, and Defendant Girardi's other creditors are

furthering his illegality.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this

paragraph.

79.      Indeed, on information and belief, Girardi and GK have directed Lion Air client

funds, and money otherwise owed to third parties like Edelson, to lenders including Defendant

California Attorney Lending in order to stave off these creditors.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

80.     For its part, on information and belief, Defendant California Attorney Lending, through its due diligence process, would be aware (1) if client settlement funds had been received in the Lion Air cases and if and when they were paid out to the client; (2) of the amount of fees held back from those funds under the client contract; (3) of any obligations imposed on those fees by a third party, such as Edelson; and (4) that Edelson had appearances on file in the Lion Air cases and was a primary participant in the litigation. By entering into an agreement with GK that requires 50% of gross attorneys' fees to be directed to itself, California Attorney Lending cannot avoid the knowledge that it is accepting embezzled funds that are contractually owed to the victims' families and of lesser importance, to Edelson. This is both unethical and an unlawful interference with enforceable contracts.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

81.     On information and belief, Defendants Girardi, Jayne, EJ Global, GK, Lira, Griffin, and Johnston Hutchinson & Lira LLP, California Attorney Lending, and other Doe Defendants yet to be identified, have wrongfully transferred, misappropriated, and retained settlement funds owed to the victims of Lion Air Flight 610, as well as attorneys' fees owed to Edelson and other third parties.

**ANSWER:** Defendant denies the allegations in this paragraph.

## COUNT I

### UNJUST ENRICHMENT – CONSTRUCTIVE TRUST

### (As Against Defendants Girardi, GK, Jayne, EJ Global,

### Lira, Griffin, Johnston Hutchinson & Lira, California Attorney Lending II)

82.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

**ANSWER:** In response to this paragraph, Defendant incorporates herein, as if set forth in full, the preceding paragraphs of his Answer.

83.     Unjust enrichment, or restitution, may be alleged where a defendant unjustly obtains and retains a benefit to the plaintiff's detriment, and where such retention violates fundamental principles of equity, justice, and good conscience.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.

84.     On information and belief, Defendants Girardi, GK, Jayne, EJ Global, Lira, Griffin, Johnston Hutchinson & Lira, and California Attorney Lending II are each holding funds that properly belong to the victims of Lion Air Flight 610 and to Plaintiff Edelson.

**ANSWER:** Defendant denies the allegations in this paragraph.

85.     A large, but confidential sum of money, was transferred from Boeing to Defendant GK in mid-2020. This money was for the benefit of Lion Air clients represented by GK, minus agreed upon attorneys' fees.

**ANSWER:** Defendant admits that certain funds were transferred from Boeing to GK in 2020.  Defendant lacks sufficient knowledge to admit or deny the remaining allegations in

this paragraph.

86.     Plaintiff Edelson has contractually created property rights to specific percentages of the attorneys' fees generated by those settlement funds.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.

87.     However, on information and belief, the funds owed to Plaintiff Edelson are now commingled with the funds owed to the Lion Air clients and have been distributed among the Defendants and other unknown entities. Nevertheless, the funds are identifiable, and there is a direct chain from the Boeing payments to the current persons in possession of the money.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

88.     On information and belief, Defendants Jayne and EJ Global have received and retained a portion of the funds transferred by Boeing to GK. Specifically, a portion of those funds have, on information and belief, been unlawfully transferred to Defendants Jayne and EJ Global for their personal use as well as to shield the money, for the benefit of Defendant Girardi, from their creditors, including Plaintiff.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

89.     On information and belief, funds transferred by Boeing to GK that properly belong to the Lion Air clients and Plaintiff Edelson or are due and owing to the Lion Air clients and Plaintiff Edelson, have unlawfully been transferred to and are being retained by Defendant

California Attorney Lending.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.


90.     On information and belief, funds transferred by Boeing to GK that properly belong to the Lion Air clients and Plaintiff Edelson or are due and owing to the Lion Air clients and Plaintiff Edelson, have unlawfully been transferred to and are being retained by Defendant Johnston Hutchinson & Lira.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.


91.     Defendants Girardi, Griffin, and Lira represent or represented the Lion Air clients and owe them a fiduciary duty as counsel. On information and belief, Defendants Girardi, Griffin, and Lira breached their fiduciary duties to the Lion Air clients by causing, permitting, facilitating, or otherwise allowing the Lion Air clients' money to be commingled with funds belonging to Plaintiff Edelson and distributed to the other Defendants and/or retained for their own personal benefit.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.


92.     Under principles of equity and good conscience, Defendants should not be permitted to retain any of the funds transferred from Boeing to GK.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.

93.     However, principles of equity and good conscience, as well as the Rules of Professional Conduct, prevent Plaintiff Edelson from taking possession of any of these commingled funds unless and until the Lion Air clients receive their share of the settlement money paid by Boeing.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.

94.     Plaintiff seeks the imposition of a constructive trust on all money transferred from Boeing to GK in connection with the Lion Air settlements, for the benefit of the Lion Air clients first, then for the benefit of Plaintiff, if sufficient funds remain in trust. In the alternative, Plaintiff requests that all such sums should be disgorged.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.

## COUNT II

### ACCOUNTING

**(As Against Defendants Girardi, GK, Jayne, EJ Global, Girardi Financial, Lira, Griffin, Johnston Hutchinson & Lira, Finnerty, Abir Cohen Treyzon Salo, California Attorney Lending II, Stillwell Madison, and John Doe 1-10)**

95.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

**ANSWER:** In response to this paragraph, Defendant incorporates herein, as if set forth in full, the preceding paragraphs of his Answer.

96.     A large, but confidential sum of money, was transferred from Boeing to Defendant GK in mid-2020. This money was for the benefit of the Lion Air clients represented by GK, minus agreed upon attorneys' fees.

**ANSWER:** Defendant admits that certain funds were transferred from Boeing to GK in 2020. Defendant lacks sufficient knowledge to admit or deny the remaining allegations in this paragraph.

97.     Presently, the whereabouts, distribution, allocation, or transfer of those funds is not known to Plaintiff.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.

98.     Any information on the current status and location of that money is within the exclusive knowledge of Defendants. As such, Plaintiff has an inadequate legal remedy in that it cannot determine what party is responsible, in what amount, for its damages.

**ANSWER:** Defendant lacks sufficient knowledge to admit or deny the allegation in this paragraph.  The statement about legal remedies is a legal contention/conclusion to which no response by Defendant is required.

99.     Plaintiff therefore seeks an order requiring all Defendants to provide a full and complete accounting of all transactions or records relating to the Lion Air settlement money.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.

## COUNT III

### BREACH OF CONTRACT

**(As Against Defendants GK, Girardi, Griffin, and Lira)(*In the*
*Alternative to Counts I and II*)**

100.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein,
excluding paragraphs 83-100.

**ANSWER:** In response to this paragraph, Defendant incorporates herein, as if set forth in
full, the preceding paragraphs of his Answer.


101.     Plaintiff entered into two enforceable contracts with GK. The first contract,
presented and executed by Defendant Griffin, provided that Edelson would receive 50% of total
attorneys' fees recovered for a specific set of Lion Air clients in the matter of *In Re: Lion Air
Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.). By the terms of the contract, Edelson was
expected to act as local counsel, as well as participate directly in the litigation and settlement
process.

**ANSWER:** Defendant denies the allegations in this paragraph.


102.     The second contract, presented and executed by Defendant Lira, provided that
Edelson would receive 20% of total attorneys' fees recovered for a separate set of specific Lion
Air clients in the matter of *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.). By
the terms of the contract, Edelson was expected to act as local counsel, as well as participate
directly in the litigation and settlement process.

**ANSWER:** Defendant denies the allegations in this paragraph.


103.     These contract terms were negotiated and agreed to both verbally and in writing.

36

**ANSWER:** Defendant denies the allegations in this paragraph.

104.   Edelson fully performed its obligations under the contracts by acting as local counsel and assisting in the litigation and settlement of the Lion Air cases.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.

105.   Defendants GK, Girardi, Griffin, and Lira breached their contractual obligations by not paying Edelson its share of attorneys' fees.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.

106.   As a direct, foreseeable, and proximate result of Defendants' breaches, Plaintiff has been damaged in amount to be proven at trial.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.

**COUNT V**

**CONVERSION**

**(As Against Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira)(*In the Alternative to Counts I and II*)**

113.   Plaintiff incorporates the foregoing paragraphs as if fully set forth herein, excluding paragraphs 83-100.

**ANSWER:** In response to this paragraph, Defendant incorporates herein, as if set forth in

37

full, the preceding paragraphs of his Answer.

114. A large, but confidential sum of money, was transferred from Boeing to Defendant GK in mid-2020. This money was for the benefit of Lion Air clients represented by GK, minus agreed upon attorneys' fees.

**ANSWER:** Defendant admits that certain funds were transferred from Boeing to GK in 2020. Defendant lacks sufficient knowledge to admit or deny the remaining allegations in this paragraph.

115. Plaintiff Edelson has contractually created property right to specific percentages of the attorneys' fees generated by those settlement funds.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.

116. Under those contracts, Plaintiff Edelson has an absolute and unconditional right to the immediate possession of the attorneys' fees, once the appropriate settlement funds have been transferred to the Lion Air clients.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.

117. Plaintiff has made numerous demands on Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira for an accounting and payment of attorneys' fees, to no avail.

**ANSWER:** Defendant denies the allegations in this paragraph.

118. Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira have

wrongfully and without authorization assumed control and ownership over the attorneys' fees and refused to provide them to Plaintiff.

**ANSWER:** Defendant denies the allegations in this paragraph.

119.    As a direct, foreseeable, and proximate result of the conversion of Plaintiff's share of attorneys' fees by Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira, Plaintiff has been damaged in amount to be proven at trial.

**ANSWER:** This paragraph sets forth legal contentions/conclusions to which no response by Defendant is required.

## PRAYER FOR RELIEF

Defendant denies the allegations set forth under the "Prayer for Relief" and denies that Plaintiff is entitled to any of the damages and other remedies alleged.

## JURY DEMAND

Defendant requests a jury on all claims asserted herein.

## AFFIRMATIVE DEFENSES

Defendant's affirmative defenses are as follows:

## FIRST AFFIRMATIVE DEFENSE
### (Lack of Personal Jurisdiction / Wrong Venue)

Plaintiff's claims are barred, in whole or in part, because this Court does not have personal jurisdiction over Defendant. Alternatively, if there is personal jurisdiction the Northern District of Illinois is the wrong venue.  Defendant is and always has been a resident of the State of California who has never held or owned any business or property in the State of Illinois.  There are not sufficient minimum contacts with the State of Illinois to justify the grant of personal jurisdiction over

Defendant. Defendant travelled to Illinois on two separate occasions for mediation sessions at the request and directive of his then employer, Girardi Keese. The alleged fee sharing agreement(s) for the *Lion Air* cases were entered into between Girardi Keese, on the one hand, and Plaintiff on the other hand. Defendant is not a party to the alleged agreement.

## SECOND AFFIRMATIVE DEFENSE

### (Fiduciary Shield)

Plaintiff's claims are barred, in whole or in part, pursuant to the fiduciary shield doctrine. Defendant was and had always been a W-2 employee for Defendant Girardi Keese. Defendant never had an ownership interest and/or partnership interest in Defendant Girardi Keese. Defendant never had any financial interest in the settlement of the *Lion Air* cases. Defendant's involvement in the *Lion Air* cases was created by assignment from the owner of Girardi Keese, Thomas Girardi. Defendants Girardi Keese and Thomas Girardi are and remain the responsible parties to the alleged fee sharing agreement. As a former employee of Girardi Keese, Defendant is entitled to indemnification by Girardi Keese.

## THIRD AFFIRMATIVE DEFENSE

### (No Privity of Contract)

Plaintiff's claims are barred, in whole or in part, because Plaintiff did not have privity of contract with Defendant. The alleged fee sharing agreement(s) for the *Lion Air* cases were entered into between Girardi Keese, on the one hand, and Plaintiff on the other hand. Defendant is not a party to the alleged agreement.

## FOURTH AFFIRMATIVE DEFENSE

### (Unclean Hands)

Plaintiff is barred from maintaining the Complaint and each purported cause of action therein as a result of its unclean hands. Plaintiff failed to perform its duties as local co-counsel.

## FIFTH AFFIRMATIVE DEFENSE

### (Indemnification)

Defendant alleges that all of the acts and/or omissions alleged in the Complaint were solely, entirely, and fully those of other defendants and/or parties named or unnamed herein other than Defendant, and that therefore such parties are fully and solely liable to Plaintiff and that Defendant is entitled to total or complete indemnification from such parties, including, but not limited to, any and all damages, costs, and attorneys' fees that may be sustained as a result of Plaintiff's claims. Defendant is entitled to contribution, set-off, and/or indemnification, either in whole or in part. Defendant was and had always been a W-2 employee for Defendant Girardi Keese. Defendant never had an ownership interest and/or partnership interest in Defendant Girardi Keese. Defendant never had any financial interest in the settlement of the *Lion Air* cases. Defendant's involvement in the *Lion Air* cases was created by assignment from the owner of Girardi Keese, Thomas Girardi. Defendants Girardi Keese and Thomas Girardi are and remain the responsible parties to the alleged fee sharing agreement. As a former employee of Girardi Keese, Defendant is entitled to indemnification by Girardi Keese.

## SIXTH AFFIRMATIVE DEFENSE

### (Stayed as to Necessary Parties)

Plaintiff's claims are barred, in whole or in part, because this action is subject to a bankruptcy stay in regard to necessary parties to this action. Defendants Girardi Keese and Thomas Girardi have entered into bankruptcy and are necessary parties to this action.

## SEVENTH AFFIRMATIVE DEFENSE

### (Not a Party to the Contract)

Plaintiff's claims are barred, in whole or in part, because Defendant was not a party to the contact. Defendant was and had always been a W-2 employee for Defendant Girardi Keese. Defendant never had an ownership interest and/or partnership interest in Defendant Girardi Keese. Defendant never had any financial interest in the settlement of the *Lion Air* cases. Defendant's

41

involvement in the *Lion Air* cases was created by assignment from the owner of Girardi Keese, Thomas Girardi. Defendants Girardi Keese and Thomas Girardi are and remain the responsible parties to the alleged fee sharing agreement. As a former employee of Girardi Keese, Defendant is entitled to indemnification by Girardi Keese.

## EIGHTH AFFIRMATIVE DEFENSE

### (Contract in Violation of Law)

Plaintiff's claims are barred, in whole or in part, because the contract did not comply with applicable law. The alleged fee sharing agreement between Defendant Girardi Keese and Plaintiff Edelson P.C. is void, illegal and/or unenforceable because client consent to the fee sharing agreement was never obtained.

## NINETH AFFIRMATIVE DEFENSE

### (Fraud)

Plaintiff's claims are barred as a matter of law because one or more people committed fraud which caused the harm to Plaintiff.

## TENTH AFFIRMATIVE DEFENSE

### (Lack of Consideration)

Defendant did not get any consideration for entering into the alleged contract with Plaintiff.

## ELEVENTH AFFIRMATIVE DEFENSE

### (Ambiguity)

The alleged contract is ambiguous and vague and, as such, cannot be enforced since the terms are uncertain.

## TWELFTH AFFIRMATIVE DEFENSE

### (Failure to Mitigate Damages)

Plaintiff has failed to take all reasonable steps to collect its damages from Tom Girardi and others responsible for the alleged harm.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (Impossibility)

A third party prevented Defendant from performing on the terms of the contract because the money that should have been available to pay Plaintiff disappeared.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (Waiver)

Plaintiff has stated that it is not interested in collecting its attorneys' fees and therefore any claim has been waived.

## DEFENDANT'S PRAYER

WHEREFORE, Answering Defendant prays for judgment as follows:

1.  That Plaintiff take nothing from its Complaint and that all causes of action be dismissed against Defendant;

2.  That judgment be entered against Plaintiff and in favor of Defendant;

3.  For costs of suit herein incurred;

4.  For attorney's fees pursuant to contract or applicable law;

5.  For expert witness fees and costs; and

6.  For such other and further relief as the court deems proper.

DATED:  August 9, 2021                    ROSEN ◇ SABA, LLP


                              By:   __s/ Ryan D. Saba_____
                                    RYAN D. SABA
                                    Attorneys for Defendant,
                                    KEITH GRIFFIN