**IN THE UNITED STATES DISTRICT COURT**

**FOR THE NORTHERN DISTRICT OF ILLINOIS**

**EASTERN DIVISION**

| | | |
|---|---|---|
| EDELSON PC, an Illinois Professional corporation, | ) ) | Case No.: |
| Plaintiff, | ) ) ) | 20-cv-07115 |
| THOMAS GIRARDI, an individual, et al., | ) ) ) | Honorable Matthew F. Kennelly |
| Defendants. | ) ) ) ) | |

<u>**ANSWER OF DEFENDANT DAVID LIRA**</u>

1

COME NOW Defendant, David Lira, by and through his undersigned attorneys, respectfully submits the following answer to Plaintiff's Complaint filed on December 2, 2020, [Dkt. #1.] and states as follows:

## DEFENDANT'S RESPONSES TO THE NUMBERED PARAGRAPHS

In response to the Complaint, all allegations in the Complaint, including relief sought, are denied except when specifically admitted. Defendant admits, denies, or otherwise avers as follows:

## NATURE OF THE ACTION

1.      Tom Girardi ("Tom" or "Girardi") and his law firm Girardi Keese ("GK") are on the verge of financial collapse and locked in a downward spiral of mounting debts and dwindling funds. They presently owe tens of millions of dollars to clients, lenders, co-counsel, settlement administrators, and experts, to name only a few, and have tried in vain to forestall the payment of these debts with hollow promises, excuses, misdirection, and outright fraud.

**ANSWER:** Defendant admits that both Thomas Girardi and Girardi Keese are in bankruptcy proceedings in the Central District of California and that various court filings confirm that Thomas Girardi and Girardi Keese have significant debts.  Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph one of the Complaint, and therefore denies the remaining allegations.

2.      At the heart of this deception is Defendant Girardi and his need to fund outrageous lifestyles for himself and his soon-to-be ex-wife, Erika Jayne ("Erika" or "Jayne"). Tom and Erika have reached celebrity status in the glitz-and-glam world of Hollywood and Beverly Hills. Tom is a well-known and powerful personal injury attorney. Erika is a performer who is perhaps better known for her years-long presence on *The Real Housewives of Beverly Hills*, a show centered on the larger-than-life extravagances of its cast members. To keep up their celebrity

status, Tom and Erika must project a public image of obscene wealth at all times, and at whatever the cost.

**ANSWER**: Defendant admits that Thomas Girardi is and was a well-known and powerful personal injury attorney and that Erika Jayne was, and remains, one of The Real Housewives of Beverly Hills. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph two of the Complaint, and therefore denies the remaining allegations.

3.       As a result, and most egregiously, Tom has resorted to embezzling the proceeds of settlements that should have been directed to his clients—including, as the basis for this Complaint, the widows and orphans who lost loved ones in the tragic crash of Lion Air Flight 610—in order to continue funding his and Erika's lavish Beverly Hills lifestyles.

**ANSWER**: Defendant is informed and believes, based upon the admissions made by Girardi's criminal counsel that Girardi did not pay monies that were due to certain Lion Air Plaintiffs, that Girardi is not able to pay those monies to them and that Girardi allegedly does not know where the monies have gone. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph three of the Complaint and therefore denies the remaining allegations.

4.       While Erika publicly filed for divorce this month, on information and belief, that "divorce" is simply a sham attempt to fraudulently protect Tom's and Erika's money from those that seek to collect on debts owed by Tom and his law firm GK. This would not be the first attempt by Tom to hide and divert assets. Indeed, in a likely violation of the California Uniform Fraudulent Transfer Act (Cal. Civ. Code § 3439), Defendant Jayne's company, Defendant EJ Global, has allegedly received *tens of millions* in "loans" directly from Defendant GK, of which Tom is the sole equity shareholder.

3

**ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph four of the Complaint and therefore denies the allegations.

5.      Tom's downward spiral appears to have finally bottomed out. On information and belief, Tom's mounting loans and debt have piled up to such an extent that GK can no longer meet its financial obligations and it is likely that GK will soon not be a going concern. But Tom's litigation financers and other creditors (including Erika) are not the ones who stand to lose the most from the fall of GK. Instead, it's the Lion Air clients (and potentially other clients) who stand to lose everything. That's because, on information and belief, Tom has embezzled and redirected the funds that were due the Lion Air clients (and of lesser importance, Plaintiff Edelson) to his family members, friends, and his and GK's lenders and other creditors

**ANSWER:** Defendant admits that both Thomas Girardi and Girardi Keese are in bankruptcy proceedings in the Central District of California and that various court filings confirm that Thomas Girardi and Girardi Keese have significant debt.  Defendant is informed and believes, based upon the admissions made by Girardi's criminal counsel that Girardi did not pay certain Lion Air Plaintiffs monies that were due to them, that Girardi is not able to pay those monies to them and that Girardi allegedly does not to know where the monies have gone. Defendant specifically denies that he has received any monies from any Lion Air settlement. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph five of the Complaint and therefore denies the remaining allegations.  Additionally, this paragraph contains Plaintiff's statement of the case and legal arguments to which no response is required.

6.      These family members, friends, lenders and other creditors of Defendants Girardi and GK have not simply been passively receiving funds that could plausibly be construed as valid repayments for loans made or obligations owed. Instead, with Defendants Girardi's and GK's financial woes in full view, these people and entities—including Defendants Lira, California

Attorney Lending, and Stillwell Madison—have, on information and belief, with the agreement of Defendants Girardi and GK, structured an inter-creditor agreement amongst themselves that redirects to them any monies received into the bank accounts of Defendant GK. Pursuant to that agreement, on information and belief, Defendants Lira, California Attorney Lending, and Does 1-10 have knowingly demanded and received embezzled funds belonging to the Lion Air clients and Plaintiff Edelson, despite all the while knowing that those funds belong to the Lion Air clients represented by Defendant GK and Plaintiff Edelson PC (itself counsel of record in the Lion Air litigation).

**ANSWER:** Defendant admits that pursuant to a valid lien held by California Attorney Lending, and in accordance with the releases signed by the clients and provided to the court, a portion of the attorneys' fees due to Girardi Keese from the Lion Air cases was paid by Boeing to California Attorney Lending. Defendant denies that he has demanded or received embezzled funds belonging to certain Lion Air Clients and further denies that he has received any funds whatsoever from the Lion Air settlements. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph six of the Complaint and therefore denies the remaining allegations. Additionally, this paragraph contains Plaintiff's statement of the case and legal arguments to which no response is required.

7.      Girardi's and GK's embezzlement and wrongful transfers to third parties of client funds simply cannot go unchecked. And while the present Complaint is brought in part to enforce Plaintiff's fee agreement with GK, those fees are not the primary focus of this Complaint; rather, this Complaint also seeks to force GK, a firm that pushes the slogan "*We Treat Our Clients Like Family*," to uphold its fiduciary duty to the surviving families of the victims of Lion Air Flight 610 that it agreed to represent.

**ANSWER:** Defendant admits that Thomas Girardi and Girardi Keese should be forced to pay the monies due to the Lion Air Plaintiffs and indeed the Court in the matter of *In Re: Lion Air Flight JT610 Crash,* United District Court for the Northern District of Illinois, Eastern

District Case No.: 1:18-cv-07686, has entered judgment against Thomas Girardi and Girardi Keese for over $2.5 million Thomas Girardi and Girardi Keese failed to pay to certain Lion Air Plaintiffs. The Court's July 19, 2021, Order [Dkt. # 91] states that plaintiff in this action does not have standing to seek the monies due to the Lion Air Plaintiffs since Edelson no longer represents those plaintiffs. To the extent Plaintiff seeks its own fees, Defendant Lira asserts that obligation rests with Thomas Girardi and Girardi Keese. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph seven of the Complaint and therefore denies the remaining allegations.

8.      In October 2018, Lion Air Flight 610 crashed, killing all 189 individuals on board. Litigation against Boeing followed, and nearly a dozen families, including widows and minor children, retained GK to represent them in seeking to recover for the tragic loss of their loved ones. Plaintiff Edelson PC was later brought in as local counsel to assist in the litigation and settlement process. The litigation was individually settled for those clients in early 2020 for a substantial, but confidential, sum. The proceeds of those settlements were allegedly transferred thereafter from Boeing to GK.

**ANSWER:** Defendant admits that Flight 610 crashed and that Girardi Keese and Plaintiff represented a number of the families (because certain families changed counsel at various points in the litigation, the number of families represented varied over the life of the representation).  Settlements were finalized for nine of the families that were represented by Girardi Keese and Plaintiff. Four settlements were reached in November of 2019 with releases signed in February and March of 2020; the funds for those settlements were transferred by Boeing, in accordance with the signed releases, to Girardi Keese and California Attorney Lending.  Five settlements were reached in February 2020 with four releases signed in May 2020 and one signed in October 2020; the funds for those settlements were transferred by Boeing, in accordance with the signed releases, to Law Offices of Anthony Koushan or Girardi Keese and California Attorney Lending. Defendant lacks sufficient information to admit or deny the

remaining allegations contained in paragraph eight of the Complaint and therefore denies the remaining allegations.

9.        Yet, on information and belief, Girardi, with cover for his actions provided by his former partner David Lira ("Lira") and current partner Keith Griffin ("Griffin"), prevented a significant portion of that money, and potentially all of it, from ever reaching the victims of this horrific crash. Girardi has instead kept it for his own purposes and doled it out to his friends and family, all the while evading attempts by the clients to gain access to it.[1] On information and belief, the Lion Air settlement proceeds are not the only client funds Girardi has withheld and misappropriated for personal use.

ANSWER: Defendant denies that this responding defendant or Mr. Griffin were partners in Girardi Keese. Defendant is informed and believes, based upon the admissions made by Girardi's criminal counsel that Girardi did not pay certain Lion Air Plaintiffs monies that were due to them, that Girardi is not able to pay those monies to them and that Girardi allegedly does not to know where the monies have gone. Defendant specifically denies that he has received any monies from any Lion Air settlement and denies that he "provided cover for Girardi's actions." Defendant further denies that as of December 2, 2020, Edelson "only recently learned of the true nature of this situation." Defendant alleges on information and belief that by at least June 30, 2020, Edelson had been informed by this responding defendant that the first group of plaintiffs that settled had not received all of the settlement funds from Girardi Keese.  Edelson was told that four of the plaintiffs in the second group of settlements had been promptly paid all of the monies due to them. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph nine of the Complaint and therefore denies the remaining allegations. Additionally, this paragraph contains Plaintiff's statement of the case and legal arguments to which no response is required.

---

[1] As described herein, Edelson only recently learned of the true nature of this situation, and concurrent with the filing of this Complaint, is also filing a Motion for Rule to Show Cause with the Court in *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.).

10.     In addition to embezzling his clients' funds, Girardi has also taken massive litigation loans for the stated purposes of funding the successful operation of his law firm (utilizing ongoing cases and his own personal guarantee as collateral). Contrary to that purpose, on information and belief, these loans appear to have been utilized to fund Girardi's and Jayne's personal spending habits. Indeed, the timing of new litigation loans have allegedly corresponded with new "loans" from GK to his wife's company, Defendant EJ Global. As a result of this misuse, millions of dollars in loans have fallen into default, resulting in litigation against Tom, his wife, and his firm.

      **ANSWER:** Defendant is informed and believes, based upon the admissions made by Girardi's criminal counsel that Girardi did not pay certain Lion Air Plaintiffs monies that were due to them, that Girardi is not able to pay those monies to them and that Girardi allegedly does not to know where the monies have gone. Defendant is informed and believes that Thomas Girardi and Girardi Keese have taken out large loans from Litigation Funders including California Attorney Lending, and that there are loans that are in default resulting in litigation against Thomas Girardi and Girardi Keese. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph ten of the Complaint and therefore denies the remaining allegations.


11.     In a Madoff-inspired attempt to protect his own wealth and appease his aggressive and well-heeled lenders, on information and belief, Girardi has in fact used client settlement funds, including money owed to the families of the victims of Lion Air Flight 610, to pay down loans, leaving the clients with little, if anything.

      **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph eleven of the Complaint and therefore denies the allegations.

12.     Defendant California Attorney Lending is one such lender. On information and belief, it has knowingly received embezzled client money from the Lion Air settlements. Similarly, Defendant Stillwell Madison, a lender that recently had a writ of attachment for $5,847,411 placed against GK for a defaulted loan, and that is presently seeking to recover those funds (and potentially has recovered some already), may also be receiving the proceeds of the embezzled client money.[2]

**ANSWER:** Defendant admits on information and belief that California Attorney Lending loaned money to Thomas Girardi and Girardi Keese and that in accordance with the releases signed by the clients California Attorney Lending was paid a portion of the attorneys' fees due to Girardi Keese from the Lion Air Settlements. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph twelve of the Complaint and therefore denies the remaining allegations.

13.     But these two lenders are hardly alone. Numerous other lenders and creditors have collected or are seeking to collect from Girardi. Yet, on information and belief, Girardi continues to embezzle funds owed to clients into his own personal and firm bank accounts. In turn, he continues to use that money to fund his and Erika's lavish lifestyle, release personal guarantees, pay down loans, route the money to friends and family, and satisfy other outstanding debts.

**ANSWER:** Defendant admits that both Thomas Girardi and Girardi Keese are in bankruptcy proceedings in the Central District of California and that various court filings confirm that Thomas Girardi and Girardi Keese have significant debts. Defendant specifically denies that this responding defendant has received any monies from any Lion Air Settlement. Defendant lacks sufficient information to admit or deny the remaining allegations contained in

---

[2] Importantly, the Defendants named here are only those that are publicly known. On information and belief, others, included here as Does 1-10, have also improperly received Lion Air client settlement funds and will be identified through discovery and the accounting process. This includes other lenders, co-counsel, referring counsel, and vendors, among others.

paragraph thirteen of the Complaint and therefore denies the remaining allegations. Additionally, this paragraph contains Plaintiff's statement of the case and legal arguments to which no response is required.

14.     By receiving Tom's money, creditors are accepting ill-gotten gains, which they know or should know was money collected by Girardi through criminal embezzlement of client funds.

    **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph fourteen of the Complaint and therefore denies the allegations.

15.     Secondary to the concerns regarding client funds, Defendants GK, Girardi, Griffin, and Lira have breached enforceable co-counsel agreements with Plaintiff Edelson for the litigation of cases centralized in *In Re: Lion Air Flight JT 610 Crash*. On information and belief, the money Plaintiff Edelson is owed is also being misappropriated by Defendants, including by Defendant California Attorney Lending. California Attorney Lending has accepted illegally gotten gains it knew or should have known were not the property of GK, but instead belonged to Edelson PC, such that California Attorney Lending tortiously interfered with the fee contract between Edelson and GK.[3]

    **ANSWER:** Defendant denies that he has breached a co-counsel agreement with Plaintiff Edelson. A "full, court supervised accounting" confirming that each and every relevant client has been paid cannot be completed until after the Girardi Keese bankruptcy is completed. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph fifteen of the Complaint and therefore denies the remaining allegations.

16.     As such, this lawsuit requests that the Court order (1) an accounting of all funds

---

[3] For the sake of clarity, Plaintiff Edelson *will not* accept any attorneys' fees for its work in *In Re: Lion Air Flight JT 610 Crash* until a full, court-supervised accounting has been performed that confirms each and every relevant client has first been paid in full.

transferred from Boeing that were intended for any GK client (inclusive of any transfers to third parties associated with, or transfers made for the benefit of, GK) related to settlements in *In Re: Lion Air Flight JT 610 Crash*, and a full accounting of what subsequently became of those funds; (2) the disgorgement of all such funds from any Defendant (or any non-party) who is improperly in receipt of those funds; (3) the transfer of those funds to the appropriate client recipients; and, *only after those steps have been accomplished* (and any other remedial steps the Court deems warranted), (4) the payment of the contractually required attorneys' fees to Edelson PC.

> **ANSWER:** This responding Defendant would join in the requests for relief set forth in this paragraph, except for any request that this responding Defendant pay any sums that are due from Thomas Girardi or Girardi Keese; however this responding Defendant is informed and believes that neither plaintiff nor this responding Defendant can seek the requested relief since doing so would violate the stay orders entered in the Thomas Girardi and Girardi Keese bankruptcy proceedings (United States Bankruptcy Court for the Central District of California Case Nos. 2:20-bk-21020-SK and 2:20-bk-21022-SK). Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph sixteen of the Complaint and therefore denies the remaining allegations.

## **PARTIES**

17.     Plaintiff Edelson PC is an Illinois professional corporation operating as a law firm, with its principal place of business located at 350 North LaSalle, 14th Floor, Chicago, Illinois 60654. Edelson PC also has offices located at 123 Townsend Street, Suite 100, San Francisco, California 94107.

> **ANSWER:** On information and belief, Defendant admits the allegations contained in paragraph seventeen of the Complaint.

18.     Defendant Thomas Girardi is a natural person and resident of the State of California. Thomas Girardi is the sole equity partner of Defendant GK.

> **ANSWER:** On information and belief, Defendant admits the allegations contained in

11

paragraph eighteen of the Complaint.

19.     Defendant GK is a general partnership formed under the laws of the State of California, with its principal place of business located at 1126 Wilshire Boulevard, Los Angeles, California 90017. GK does business in the State of Illinois and in this District

> **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph nineteen of the Complaint and therefore denies the allegations.

20.     Defendant Erika Girardi, also known as Erika Jayne, is a natural person and resident of the State of California. Jayne is the wife of Defendant Girardi. On information and belief, Jayne has a legal and financial interest in a community property interest in GK and the actions of her husband, Girardi, taken for the benefit of their marital community property. Jayne is also a principal owner of Defendants EJ Global and Girardi Financial.

> **ANSWER:** Defendant admits that Erika Jane is a person, a resident of California and married Thomas Girardi. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph twenty of the Complaint and therefore denies the remaining allegations.

21.     Defendant EJ Global LLC is a limited liability company existing under the laws of the State of California, with its principal place of business located at 1126 Wilshire Boulevard, Los Angeles, California 90017. EJ Global LLC does business in the State of Illinois and in this District.

> **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph twenty-one of the Complaint and therefore denies the allegations.

22.     Defendant Girardi Financial, Inc. is a corporation existing under the laws of the State of Nevada, with its principal place of business located at 1126 Wilshire Boulevard, Los Angeles,

California 90017. The President of Girardi Financial is Defendant Girardi, the Secretary is Defendant Jayne, and the Treasurer and Director is Defendant Lira. Girardi Financial does business in the State of Illinois and in this District. Plaintiff is including Girardi Financial purely as a defendant to Count II, which seeks an accounting.

**ANSWER**: Defendant denies that he has served or does serve as the treasurer or director of an entity named Girardi Financial, Inc. although he has now been informed and believes that corporate filings were made listing him as a treasurer and/or director. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph twenty-two of the Complaint and therefore denies the remaining allegations.

23.     Defendant Lira is a natural person and resident of the State of California. Lira is formerly a partner at Defendant GK (as of May 2020) and a current partner at Defendant Johnston Hutchinson & Lira LLP. Lira is also Defendant Girardi's son-in-law.

**ANSWER:** Defendant admits that he is a natural person and resident of California; Defendant denies that he has ever been a partner at Girardi Keese and states that he worked at Girardi Keese as a salaried employee; Defendant is not now a partner at Johnston Hutchinson & Lira. Defendant admits that he is the estranged son-in-law of Thomas Girardi.

24.     Defendant Griffin is a natural person and a resident of the State of California. Griffin is currently a partner at Defendant GK.

**ANSWER:** Defendant admits that Griffin is a person who is resident of State of California. On information and belief, defendant denies that Griffin has been a partner at Girardi Keese; defendant is informed and believes that Griffin was a salaried employee at Girardi Keese.

25.     Defendant Johnston Hutchinson & Lira LLP is a California limited liability partnership with its principal place of business located at Two California Plaza, 350 South Grand Avenue, Suite 2220, Los Angeles, California 90071. Johnston Hutchinson & Lira LLP does

business in the State of Illinois and in this District.

      **ANSWER:** On information and belief, Defendant denies the allegations contained in paragraph twenty-five that Johnston Hutchinson & Lira has done business in the State of Illinois. Defendant admits the other allegations in paragraph twenty-five.

26.    Robert Finnerty ("Finnerty") is a natural person and resident of the State of California. Finnerty is formerly a partner at Defendant GK (as of May 2020) and currently a partner at Defendant Abir Cohen Treyzon Salo. Plaintiff is including Finnerty purely as a defendant to Count II, which seeks an accounting.

      **ANSWER:** Defendant admits that Finnerty is a person and resident of California. On information and belief, defendant denies that Finnerty has been a partner at Girardi Keese; defendant is informed and believes that Finnerty was a salaried employee at Girardi Keese. On information and belief, defendant admits that Finnerty is a partner at Abir Cohen Treyzon & Salo, LLP.

27.    Defendant Abir Cohen Treyzon Salo, LLP, is a California limited liability partnership with its principal place of business located at 16001 Ventura Boulevard, Suite 200, Encino, California 91436. Abir Cohen Treyzon Salo does business in the State of Illinois and in this District. Plaintiff is including Abir Cohen Treyzon Salo purely as a defendant to Count II, which seeks an accounting.

      **ANSWER:** Defendant admits on information and belief that Abir Cohen Treyzon & Salo, LLP is a law firm doing business at this address. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph twenty-seven of the Complaint and therefore denies the remaining allegations.

28.    Defendant California Attorney Lending II, Inc. is a corporation existing under the laws of the State of New York with its principal place of business located at 6400 Main Street, Suite

120, Williamsville, New York 14221. California Attorney Lending II does business in the State of Illinois and in this District.

ANSWER: Defendant admits on information and belief that California Attorney Lending II, Inc. is a business at this address. Defendant lacks sufficient information to admit or deny whether it conducts business in the state of Illinois and therefore denies the remaining allegations.

29.     Defendant Stillwell Madison, LLC is a limited liability company existing under the laws of the State of Delaware with its principal place of business located at 36600 North Pima Road, Suite 202B, Carefree, Arizona 85377. Stillwell Madison does business in the State of Illinois and in this District. Plaintiff is including Stillwell Madison purely as a defendant to Count II, which seeks an accounting.

ANSWER: Defendant admits on information and belief that Stillwell Madison, LLC is a business at this address. Defendant lacks sufficient information to admit or deny whether it conducts business in the state of Illinois and therefore denies the remaining allegations.

30.     Defendants John Doe 1-10 ("John Doe 1-10" or "Doe Defendants") are yet to be identified entities and individuals who have improperly received and retained *Lion Air* client settlement funds. The Doe Defendants will be identified by and through discovery and the accounting process, and likely include lenders, co-counsel, referring counsel, and vendors, among others.

ANSWER: Defendant lacks sufficient information to admit or deny the allegations contained in paragraph thirty of the Complaint and therefore denies the allegations.

## JURISDICTION AND VENUE

31.     This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1332 in that the jurisdictional amount exceeds $75,000 and the Plaintiff does not share a state of citizenship with

15

any Defendant.

**ANSWER:** Defendant admits the allegations contained in paragraph thirty-one of the Complaint.

32. The Court has personal jurisdiction over Defendants because they conduct business in this District and because they have committed tortious acts purposefully directed at Illinois, and such conduct was designed to create an injury in Illinois and this District.

**ANSWER:** Defendant admits that this Court has personal jurisdiction but defendant denies that he committed tortious acts, denies that he committed tortious acts directed at Illinois, and denies that any act of this responding defendant was designed to create an injury in Illinois.

33. Venue is proper pursuant to 28 U.S.C. § 1391(b) because Defendants have committed tortious acts purposefully in this District and the underlying litigation giving rise to this Action (*In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.)) is ongoing in this District before the Honorable Thomas M. Durkin.

**ANSWER:** This responding defendant does not contest venue in this district but defendant denies that he committed tortious acts and denies that he committed tortious acts purposely in this district. Defendant admits that the underlying litigation remains pending before the Honorable Thomas M. Durkin.

## FACTUAL ALLEGATIONS

34. On the morning of October 29, 2018, Lion Air Flight 610, flying on a Boeing 737 Max 8 model aircraft, departed Jakarta, Indonesia. Shortly after takeoff, the flight crew contacted air traffic control and requested to return to Jakarta, but the flight never made it.

**ANSWER:** Defendant admits on information and belief the allegations contained in paragraph thirty-four of the Complaint.

16

35.     After a series of chaotic maneuvers resulting from a fundamental system failure, Flight 610 plummeted into the ocean. All 189 souls on board, who would have experienced unthinkable terror in their final moments, were killed on impact.

      **ANSWER:** Defendant admits on information and belief the allegations contained in paragraph thirty-five of the Complaint.

36.     Following this tragic accident, government investigations determined that the aircraft's anti-stall system—the maneuvering characteristics augmentation system—caused the aircraft's nose to suddenly, and without warning, drop and dive steeply.

      **ANSWER:** Defendant admits on information and belief that the anti-stall system caused the nose of the plane to drop and drive; however, at least some of the government investigations identified additional causes of the crash.

37.     Following the revelations regarding Boeing's design defects and other failures, litigation ensued on behalf of those that had lost loved ones—in some cases entire families and minors who lost both parents. More than a dozen of those families directly or indirectly retained GK and expected that Girardi and other lawyers at his firm would represent their best interests and deliver the proceeds of any successful outcome to them.

      **ANSWER:** Defendant admits the allegations in paragraph thirty seven of the Complaint, except defendant states that Girardi Keese and Plaintiff represented a number of the families (because certain families changed counsel at various points in the litigation, the number of families represented varied over the life of the representation); certain of the cases in which Girardi Keese was counsel of record had been referred to this responding defendant; four of the cases referred to this responding defendant were settled and funded by Boeing in accordance with the releases signed by these clients.  Those four clients have been paid in full and a portion of the attorneys' fees on those cases was tendered to plaintiff. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph thirty-seven of the

Complaint and therefore denies the remaining allegations.

38.     In the months that followed, litigation took place in this District, with the assistance of Plaintiff Edelson, before the Honorable Thomas M. Durkin, eventually leading to a series of mediations. In the end, Boeing reached individual settlements with each of the clients and families represented by GK and Edelson. The principle terms of the settlements were reached in early 2020 and finalized thereafter.

          **ANSWER:** Defendant admits that litigation took place in this district before the Honorable Thomas Durkin and admits that Edelson was counsel of record for certain of the plaintiffs who were represented by Girardi Keese; defendant further admits there were mediations, but defendant denies that settlements were reached with each of the plaintiffs that had been represented by Girardi Keese. There were nine settlements finalized with Girardi Keese clients, including the settlements with four clients who had been referred to this responding defendant and who were paid in full. Settlements were reached with four Girardi Keese clients at a mediation in November of 2019 and finalized in February and March of 2020. The settlements with the four clients who had been referred to this responding defendant and one client who was not referred to this responding defendant were reached in February of 2020; four of those were finalized in May of 2020 and the fifth, due to issues with the certification of the heirs entitled to the funds, was finalized in October 2020. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph thirty-seven of the Complaint and therefore denies the remaining allegations.

39.     Throughout the pendency of the Lion Air litigation and the post-settlement process, GK attorneys maintained total and exclusive control over communications with the clients.

          **ANSWER:** On information and belief, Defendant admits the allegations contained in paragraph thirty-nine of the Complaint.

40.     In February 2020, Edelson attorney Ari Scharg was notified by GK attorney Griffin

18

that he was beginning to receive executed settlement agreements from the clients. As was the plan, Edelson, in turn, began preparing motions seeking court approval for each settlement providing for an allocation of settlement proceeds to minor heirs of the decedents, the first of which, was filed on February 21, 2020. (Dkt. 379.)[4] That motion was granted by the Court on February 24, 2020 and the case was dismissed. (Dkt. 384.)

 **ANSWER:** Defendant admits that Edelson obtained an order (*In Re: Lion Air Flight JT610 Crash,* Case No.: 1:18-cv-07686, Dkt. 384) approving one of the settlements that had been reached in November and finalized in February of 2020. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph forty of the Complaint and therefore denies the remaining allegations.

41. Soon after the order dismissing the case was entered on February 24, 2020, Mr. Scharg inquired with Defendant Griffin as to when he expected Boeing to fund the settlements. Griffin stated that Boeing was waiting to receive all of the executed settlement agreements from each of GK's and Edelson's collective clients. Griffin further stated that he was still waiting on several releases to be executed and returned but expected to receive them shortly.

 **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph forty-one of the Complaint and therefore denies the allegations.

42. The following week, Edelson secured approval of three more settlement agreements involving allocations to minors that were returned executed, and those cases were also dismissed. (Dkts. 419, 424, 427.) Meanwhile, Defendant Griffin and his then partner at GK, Defendant Lira, continued to represent that they expected the remaining settlement agreements to be executed by the clients shortly, at which time Boeing would fund the settlements. As it turned out, though, it would take several more months for the remaining settlement agreements to be executed by the

---

 [4] All "Dkt." cites are to *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.).

clients.

        **ANSWER:** Defendant admits that Edelson obtained orders approving three additional settlements that had been reached in November and finalized in March of 2020. (*In Re: Lion Air Flight JT610 Crash,* Case No.: 1:18-cv-07686, Dkts. 419,424,427). This responding defendant admits that at the end of March 2020 he told Edelson that he was working on the releases on the cases that had been referred to the responding defendant and admits that he told Edelson that Boeing would only fund a settlement with a client after a release was signed by the client. This responding defendant denies that he told Edelson that Boeing would not fund any of the settlements until all of the releases were signed. The releases required payment by Boeing within 30 days. Since the releases for the First Set of Settlements were all signed within days of each other, Defendant believes, on information and belief that Boeing funded those settlements around the same time and within the 30-day period specified in the release.  Three of the cases in the set of cases that were referred to responding Defendant had releases signed within days of each other and Boeing funded those settlements at the same time and within the 30-day period. The release in the final case referred to Defendant was signed approximately five months later and the settlement was funded within 30 days from the date the release was signed. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph forty-two of the Complaint and therefore denies the remaining allegations.


        43.      Beginning in April 2020, Edelson attorneys began reaching out to Defendants Griffin and Lira, almost on a weekly basis, to get an update on the status of getting the settlement agreements executed and the settlements funded—the thought being that the clients who had executed the settlement agreements shouldn't have to continue to wait for the others to do the same. Defendants Griffin and Lira would respond periodically with little more than a statement that they were still waiting on executed settlement agreements from the clients, and that nothing could be done to move Boeing off its position that it needed all of the clients to sign and return the settlement agreements before it would release the settlement proceeds.

**ANSWER:** This responding defendant admits in that in April 2020 he told Edelson that he expected to receive the releases on the cases that had been settled in February 2020 and admits that he told Edelson that Boeing would only fund a settlement with a client after a release, in both English and Indonesian, was signed by the client. This responding defendant denies that he told Edelson that Boeing would not fund any of the settlements until all of the releases were signed. The releases required payment by Boeing within 30 days; since the releases for the first group of settling plaintiffs were all signed in February and March 2020. Boeing funded those settlements at the same time and within the 30-day period specified in the release. Three of the remaining cases had releases signed within days of each other in May 2020. Boeing funded those settlements at the same time and within the 30-day period. The release in the final case was signed approximately five months later in October 2020 and the settlement was funded within 30 days from the date the release was signed. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph forty-three of the Complaint and therefore denies the remaining allegations.

44.     On May 11, 2020, Jay Edelson sent Defendant Lira an email expressing concern about the delay in finalizing the settlements (particularly in light of Boeing's public pronouncements at the time that it was considering whether to file for bankruptcy) and the need to get them funded for the sake of the clients. Defendant Lira responded by email, providing a more detailed explanation of where things stood on specific releases, why it was taking so long for them to be translated and executed by the clients, and repeating that Boeing would release the settlement funds when they received the signed releases. He assured Edelson that the funds were paid by insurance and secure in an escrow account, so there was no risk posed by a potential bankruptcy. Lira's explanation was not completely satisfying, but Lira and the other lawyers at GK were the only ones in contact with the clients and Lira's explanation of why it was taking longer for certain of them to execute and return the settlement agreements seemed plausible.

21

**ANSWER:** Defendant admits that Edelson sent an e mail to responding Defendant on May 12, 2020 [not May 11, 2020, as alleged] expressing concern about the delays and the potential of a Boeing bankruptcy. Responding Defendant responded on May 12, 2020, that he had received final releases for the second group of cases and the releases had been sent to the clients. In that same email string regarding the second group of cases, responding Defendant stated that Boeing would release the money when they had executed releases. Responding Defendant did not state the money would only be released when Boeing had all of the executed releases. Responding Defendant did state that the funds for the second group of cases were in the trust account of Boeing's attorney and the funds had come from insurance. Responding Defendant also advised that one of the clients in the second group of cases had elected to change attorneys. Responding Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph forty-four of the Complaint and therefore denies the remaining allegations.

45.     But several more weeks passed without any further updates regarding the status of the outstanding settlement agreements. Then, on June 11, 2020, Defendant Lira sent an email to Edelson asking to set up a call to discuss the status of the cases. On that call, which occurred on June 16, 2020, Defendant Lira informed Edelson that he had recently resigned from GK and explained that the settlements had finally been funded and that the bulk of the funds were received and held by GK. Though Defendant Lira was intent on discussing which firm he believed should be held responsible for paying Edelson's share of attorneys' fees (GK or his new firm), the attorneys at Edelson were instead focused on the more fundamental question that they had been asking for several months: Have the clients received their proceeds from the settlements?

**ANSWER:** Defendant denies that several more weeks passed without further update. Defendant affirmatively alleges that he advised Plaintiff on May 15, 2020, that the releases were coming in and on May 18, 2020, advised that a release had been received for a

22

plaintiff with minor children asking, "Can you file the motion to approve the settlement? If you have any questions, please contact me." On May 22, 2020, this Defendant advised Plaintiff that the executed and notarized release for another client with minor children had been received. Defendant admits that he participated in a call with plaintiff on June 16, 2020 and advised Plaintiff that he had resigned from Girardi Keese. Defendant denies that he stated, "the settlements had finally been funded and that the bulk of the funds were received and held by Girardi Keese." Defendant denies he ever told Plaintiff that any fees would be paid to plaintiff by this responding defendant's new firm but admits that he said the fees owed to Edelson on the second group of settlements would be paid in part by Anthony Koushan's office when the second group of cases was funded. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph forty-five of the Complaint and therefore denies the remaining allegations.

46.     Defendant Lira, now a partner at Defendant Johnston Hutchinson & Lira, failed to provide a coherent answer to this question, and instead, on July 6, 2020, sent a letter to Edelson that, without detail, claimed that certain Lion Air clients had received their settlement proceeds by Boeing, certain clients had not, and that a check to Edelson for some portion of the attorneys' fees owed to them was included with the letter as "partial payment." Edelson did not then, and has not since, cashed that check.

        **ANSWER:** Defendant denies that he failed to provide a coherent answer to any question posed by plaintiff in the June 16, 2020, call.  Defendant admits that he sent a letter to plaintiff on July 6, 2020, but denies the description of the letter set forth in the Complaint.  The letter clearly divided the 11 cases that Girardi Keese had handled between five referred to Keith Griffin and six referred to Defendant Lira. It stated that Defendant Lira understood that there was a 50% fee to Edelson on the Griffin cases and a 20% fee owed to Edelson on the Lira cases.  The letter further stated, "All of the Releases in Keith's cases have been delivered to Boeing and have been funded." The letter explained that three of the six Lira cases had funded, and the other three

23

families had not signed releases. These clients are identified by name in the letter. The letter enclosed a partial payment of the Edelson fees. Defendant admits on information and belief that Plaintiff has not cashed the check that was sent to them. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph forty-six of the Complaint and therefore denies the remaining allegations.

47. A few days later, Edelson responded with a letter to Defendants Girardi and Lira, which stated, among other things, that "in response to David's cover letter that encloses a check to our firm for some portion of the fees owed on three of the Lion Air cases, we decline to accept any monies until we are given adequate assurances that each and every one of our collective clients who are entitled to settlement monies have, in fact, received the entirety of the monies owed." The letter also requested, again, information about the status of the settlement proceeds owed to the clients.

**ANSWER:** Defendant admits that on July 10, 2020, Plaintiff wrote Girardi and Defendant but denies that the description of the letter in the Complaint is accurate. Defendant further denies that the letter contains an accurate statement of facts. The letter confirms that by June 30, 2020, Plaintiff had been informed by Mr. Griffin that he believed Girardi Keese had only paid the plaintiffs one half of the amount due to them on the first group of settlements. Defendant admits that plaintiff declined to take fees until it was assured clients had been paid in full and plaintiff requested additional information regarding amounts owed to the clients. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph forty-seven of the Complaint and therefore denies the remaining allegations.

48. Several days later, Defendant Lira responded, but again did not say with any clarity which of the clients had received full settlement payments and whether any were still owed money. Lira also took the position that because he left GK, he no longer had any ongoing involvement in the cases and any further questions regarding the status of the settlement proceeds

owed to the clients and the fees owed to Edelson should be directed to Defendants Girardi and Griffin, since GK was the law firm that had been engaged by and had the relationship with the clients.

        **ANSWER**: Defendant admits that he responded on July 13, 2020, identifying some of the misstatements in the July 10, 2020, letter. Lira wrote, "I have never stated or represented that the entirety of the cases would not fund until Boeing received all eleven (11) executed Releases. As you know. Four (4) of the cases were settled in late 2019." Defendant Lira explained the reason for the later settlements and that three of his cases had fully executed releases, had recently funded and those clients had received their settlement monies. Defendant Lira also wrote, "I never represented or stated that my new firm would be responsible for attorneys' fees due your firm. That would be insanity as I have not, nor will I, receive any compensation on the Lion Air cases." Defendant Lira stated that since he had left Girardi Keese he did not have access to information about the current status of payment to the clients who had finalized their settlements in March 2020. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph forty-eight of the Complaint and therefore denies the remaining allegations.

49.      Edelson attorneys continued to press Defendants Girardi and Griffin as to the status of the settlement proceeds and whether any clients were yet to be paid. Starting in July 2020, Defendant Griffin indicated that despite Boeing fully funding the settlements, he understood from Defendant Girardi that the clients had not received the full amount owed to them and were still owed about half of what was due to them. Griffin could not elaborate on why such an amount was still owed to certain clients or the status of the remaining settlement proceeds because Girardi is the sole equity owner of GK with sole and exclusive control over the firm's bank accounts, including its client trust accounts. As a result, Griffin said those questions could only be answered by Girardi. Griffin also claimed that part of the difficulty in speaking with and delay in getting answers from Girardi was attributable to Girardi being unavailable in recent weeks due

to a serious illness that caused him to be hospitalized and for which he sought treatment.

**ANSWER:** Defendant admits on information and belief that Thomas Girardi is the sole owner of Girardi Keese and has exclusive control over the firm's bank accounts including the client trust accounts. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph forty-nine of the Complaint and therefore denies the remaining allegations.

50.     Balabanian ultimately got an opportunity to speak with Defendant Girardi in late July. Girardi's explanation regarding the status of the settlement proceeds was extremely convoluted and meandering, and he couched everything in terms of him recovering from the illness that he was being treated for, so Balabanian would have to bear with his inability to give a long and detailed explanation of why payment of the settlement proceeds to the clients (and of lesser importance, payment of Edelson's portion of fees) had been delayed. Girardi claimed that his illness, which caused him to be away from his firm for several weeks, is what ultimately caused the—in his words—"mistake" of not getting certain clients paid in full, and that he planned to immediately remedy the issue by getting the remaining amount that was owed wired out[5] within a few days. Girardi said that he or Griffin would follow up once that occurred.

**ANSWER:** This responding defendant denies that he told Edelson that Boeing would not fund any of the settlements until all of the releases were signed.  Defendant lacks sufficient information to admit or deny the other allegations contained in paragraph fifty of the Complaint and therefore denies the remaining allegations.

---

[5] Consistent with what Defendants Griffin and Lira were initially saying, Girardi also attributed the delay in paying out the settlement proceeds to the clients to Boeing's refusal to fund the settlement without all of the executed settlement agreements in hand. Girardi also mentioned something about working on and even retaining lawyers for the benefit of the clients to assist with some sort of tax issue affecting the tax treatment of proceeds recovered on account of wrongful death claims and that getting a determination from the IRS was also holding up finalizing and getting the settlements funded. In all honesty, the conversation with Girardi was strained and he didn't make a whole lot of sense when it came to this point.

51.     Despite his assurances, Girardi did not follow back up with Balabanian. Instead, Balabanian made several more attempts over the course of the following weeks to reach Girardi to confirm that payment had been made to the clients. They finally spoke again in late August 2020, at which point the conversation quickly became contentious after Girardi stated that he didn't need to explain himself to Balabanian when it came to clients of GK and that, as he promised a few weeks ago, arrangements had been made for them to receive the remaining monies owed to them, as well as the attorneys' fees owed to Edelson. Girardi then advised that Griffin would follow up and quickly ended the call.

        **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph fifty-one of the Complaint and therefore denies the allegations.

52.     In what started to feel like a recurring theme, though, Balabanian was the one who would need to follow up to confirm Girardi had made good on his promises. Eventually, though, on or about September 3, 2020, Griffin advised Balabanian that a wire for half of the outstanding amount owed to the clients had been initiated, with the other half set to be initiated the following Monday. While Griffin said he could send proof of the wired funds, he ultimately never did.

        **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph fifty-two of the Complaint and therefore denies the allegations.

53.     With the payments to the clients seemingly out of the way, the conversation shifted to the fees owed to Edelson on account of the settlements. As Edelson had made clear from the outset, the timing of payment of their fees wasn't of particular concern and that since the clients had been paid, payment of the fees could be made at any time before the end of the year. To that end, Balabanian requested, and Griffin agreed to provide, a final statement showing the settlement proceeds disbursed, and the amount of fees owed to Edelson, and when they would likely be paid.

        **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations

contained in paragraph fifty-three of the Complaint and therefore denies the allegations.

54.     Then, in November 2020, Plaintiff Edelson received another letter from Defendant Lira regarding the settlement proceeds paid to certain other Lion Air clients and how said proceeds were being distributed. Among other things, the letter stated that GK's 50% interest (which included Edelson portion) in the gross attorneys' fees generated from the settlements of certain of the clients' cases had been directly transferred to Defendant California Attorney Lending at the direction of Girardi. Lira also included a check to Edelson as another partial payment of the attorneys' fees owed to them. Edelson did not then, and has not since, cashed this check. This letter makes clear Lira had knowledge of and cooperated with Girardi's misappropriation and conversion of settlement proceeds, since at least a portion of said proceeds were being transferred to (and accepted by) lenders of Girardi instead of Edelson who are rightfully entitled to them.

**ANSWER**: Defendant admits that he wrote a letter on November 2, 2020, but denies the remaining allegations in this paragraph.  The letter advised that one of the cases had recently funded, that in accordance with the language of the release half of the attorneys' fees were paid to California Attorney Lending with the remainder of the monies paid to Mr. Koushan who had referred the cases to Lira. Plaintiff was advised that all of the "Koushan cases" had fully funded and the clients had been paid their money.  The letter enclosed a check for 20% of the attorneys' fees on the recently funded settlement payable to Plaintiff and provided a copy of the closing statement which set forth the breakdown of the settlement amount. Defendant admits on information and believe that Plaintiff has not cashed the check that was tendered. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph fifty-four of the Complaint and therefore denies the remaining allegations.

55.     Though Edelson was under the impression that the settlement proceeds owed to the clients had finally been paid, Lira's letter once again raised concerns, particularly with regard to

the part referencing Girardi directing the attorneys' fee portion of the settlement proceeds that, in part, belonged to Edelson, to a litigation funder. As a result, Balabanian reached back out to Griffin to inquire about whether he could provide any more insight into when Edelson could expect payment of its fees.

ANSWER: All releases provided to the Edelson firm in order for them to obtain Court approval of the Minor's settlements and dismissals in the Girardi Keese cases contained language that provided for a portion of the attorney's fees to be paid directly to California Lending. Defendant lacks sufficient information to admit or deny the allegations contained in paragraph fifty of the Complaint and therefore denies the remaining allegations.

56.     Defendant Griffin responded that there had been some "positive developments," but that Girardi was undergoing another medical procedure, so Griffin needed a couple more days to speak with him and report back. After several more days passed, Balabanian again followed up with Griffin and inquired about what Griffin characterized as "positive developments." Griffin advised that the positive developments were that certain of the Lion Air clients had demanded a call with Girardi to gain an understanding of when they would be paid the balance of the settlement proceeds owed to them. Balabanian responded that his understanding from Girardi and Griffin was that the clients had been paid, and that the only outstanding obligation on the Lion Air Litigation was Edelson's attorneys' fees. But Griffin advised that that understanding was mistaken, and that Girardi hadn't actually paid the clients as previously represented. Griffin further stated that he was skeptical that Girardi or GK had the financial means to satisfy GK's obligations to those certain Lion Air clients that are still owed settlement proceeds and Edelson.

ANSWER: Defendant lacks sufficient information to admit or deny the allegations contained in paragraph fifty-five of the Complaint and therefore denies the allegations.

57.     In the week following this letter, and after attempts by Edelson to elicit additional information from Defendant Griffin, Girardi called Balabanian numerous times (including over

29

Thanksgiving weekend) to plead his case and presumably ward off this Complaint. Two voicemails from Girardi can be found here[6] and here[7].

      **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph fifty-six of the Complaint and therefore denies the allegations.

58.      The first voicemail states, in part:

> We're doing good on this thing, getting things squared away and shit. Don't be mean to me, be nice to me. I'm doing good. It was because of me that we got this by the way. … I'll be in touch, don't worry about everything, we're friends, things are going to work out good.

The second voicemail states, in part:

> We screwed up here a little bit. … We had three different air crashes and they got a little screwed up. I'll get everything worked out by Thursday. I'm so sorry, this never happened before, anyway, everything will be smoothed over on Thursday.

      **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph fifty-seven of the Complaint and therefore denies the allegations.

59.      Just before the filing of this Complaint, Jay Edelson and Rafey Balabanian reached out to and spoke with Defendant Griffin. During that call, Defendant Griffin informed them that they should get in touch with Defendant Robert Finnerty, who would be serving as a receiver charged with overseeing the wind up of Defendant GK.

      **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph fifty-eight of the Complaint and therefore denies the allegations.

60.      Shortly thereafter, Edelson and Balabanian reached out to Defendant Finnerty. Defendant Finnerty explained that he and his (apparently new) firm, Defendant Abir Cohen Treyzon Salo, represent a creditor of Girardi and GK and that they, along with Girardi's lenders and certain other creditors, have more or less agreed that he and his firm would act as receiver,

---

[6] https://edelson.com/wp-content/uploads/voicemail-2101.mp3
[7] https://edelson.com/wp-content/uploads/voicemail-2099.mp3

which meant his firm would essentially be taking over GK for the purpose of liquidating its assets, including litigating to settlement or judgment, as necessary, any ongoing cases, and winding up its affairs, including payment of debts owed to creditors, which would presumably include the Lion Air clients and Plaintiff Edelson.

**ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph fifty-nine of the Complaint and therefore denies the allegations.

61.    Following the call, Plaintiff Edelson came learn that Defendant Finnerty had been a decades-long partner at GK, who only recently left GK in May 2020, and who has on numerous occasions represented Girardi and the firm against actions by clients claiming their money had been mishandled. At no time during this call, or the call with Defendant Griffin, was any of this disclosed to Edelson or Balabanian.

**ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph sixty of the Complaint and therefore denies the allegations.

62.    Despite the initial representations of Defendant Griffin (and later ones by Defendants Lira and Girardi), on information and belief, upon the dismissal of each case, Boeing transferred the settlement proceeds to GK in accordance with the terms of the settlement agreements, for the purpose of GK distributing said proceeds to GK's Lion Air clients.

**ANSWER:** Defendant admits that settlement funds were transferred by Boeing in accordance with the provisions of the releases. Defendant denies that he ever made a representation to the contrary. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph sixty-two of the Complaint and therefore denies the remaining allegations.

63.     On further information and belief, Girardi, who exercises *exclusive and total control* of all bank accounts for GK, embezzled the settlement proceeds transferred by Boeing for his own personal use, with the knowledge and cooperation of Defendants Lira and Griffin.

**ANSWER:** On information and belief, Defendant admits based on the statements by counsel for Girardi Keese Thomas Girardi that Girardi has failed to pay approximately $3 million to certain Lion Air clients who are owed the settlement funds. Defendant lacks sufficient information to admit or deny regarding the use of the funds by Girardi. Defendant denies that Girardi Keese embezzled the settlement proceeds with the knowledge and cooperation of this Defendant.

64.     By all accounts, Girardi keeps engaging in fraud and deception in order to support a never-ending spending spree by himself and Jayne.

**ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph sixty-four of the Complaint and therefore denies the allegations.

65.     Girardi and Jayne lead notoriously lavish lifestyles.

**ANSWER:** Defendant admits that Girardi and Jayne led notoriously lavish lifestyles. Defendant has no knowledge regarding their current lifestyles and therefore denies the allegations in 65.

66.     Erika reportedly spends *$40,000 per month* on her "look."[8] Erika even performs a song called "Exxpen$ive," featuring the hook "it's expensive to be me."[9]

---

[8] Lindsey Cronin, *RHOBH Star Erika Jayne Reveals She Spends $40,000 A Month On Her Appearance! Says Being Rich AF Gets 'Boring'*, REALITY BLURB, https://realityblurb.com/2018/03/21/rhobh-erika-jayne-spends-40000-a-month-on-her-appearance-says-being-rich-af-gets-boring/.
[9] *Erika Jayne - XXpen$ive – Expensive*, YOUTUBE, https://www.youtube.com/watch?v=D26WFPl2ROQ.

**ANSWER:** Defendant admits that the references cited in the Complaint exist but does not have sufficient information and belief to admit or deny whether the statements in the references are true and therefore denies they are true.

67.     Tom, for his part, has a daily standing reservation and exclusive table at Morton's Steak House in Los Angeles, routinely flies on private jets, and owns multiple homes across the country. In other words, he too maintains a significant monthly tab.

**ANSWER:** Defendant admits that Girardi regularly dined at Morton's Steakhouse, flew on private jets and owned various properties. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph sixty-seven of the Complaint and therefore denies the remaining allegations.

68.     When asked why she and Tom required two private planes, Erika responded "Because one is small and one is big!"[10] Erika also bragged that the most expensive thing she owns is a singular piece of jewelry but would not say how much it was worth (which would presumably mean it's more expensive than her $250,000 Lamborghini).[11] And she bought Tom a $5,000 toilet as a gift.[12]

**ANSWER:** Defendant admits that the references cited in the Complaint exist but does not have sufficient information and belief to admit or deny whether the statements in the references are true and therefore denies the remaining allegations in paragraph sixty-eight of the

---

[10] Marenah Dobin, *The Craziest Thing Erika Girardi Owns*, BUSTLE, https://www.bustle.com/articles/149204-the-craziest-thing-erika-girardi-owns-truly-sets-the-real-housewives-of-beverly-hills-star-apart.

[11] Jocelyn Vena, *What Is the Most Expensive Thing Erika Girardi Owns?* THE DAILY DISH, https://www.bravotv.com/the-daily-dish/the-most-expensive-thing-erika-girardi-owns.

[12] Marenah Dobin, *Erika Girardi Gave Her Husband Tom Girardi A $5,000 Toilet As A Gift*, REALITY TEA, https://www.realitytea.com/2017/12/29/erika-girardi-gave-husband-tom-girardi-5000-toilet-gift/.

Complaint.

69.     Funding this lifestyle requires large sums of cash.

        **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph sixty-nine of the Complaint and therefore denies the allegations.


70.     On information and belief, Girardi and Jayne siphoned significant sums of money from lenders and clients and moved it out of GK's bank accounts for personal use. This exact scheme was described in a sworn declaration by Alan Zimmerman, CEO of Law Finance, in its litigation against Girardi:

> [Girardi's] claim [that Law Finance Group] included an unwarranted attack in their complaint by claiming that Mr. Girardi was using LFG's money to support his lavish lifestyle, but even if that were somehow relevant here, LFG's allegations are true. As explained above, LFG has obtained financial records that demonstrate that Girardi has been using Girardi Keese funds to "loan" over $20 million dollars to his wife's company, EJ Global. LFG even tried previously to redact the name of the recipient of these funds from the prior filings, in order to save Mr. Girardi the embarrassment.[13]

        **ANSWER:** Defendant admits that the reference cited exists but does not have sufficient information or belief to admit or deny that the statements in the reference are true and therefore denies the allegations.


71.     Now that Tom and Erika are facing increasing pressure to actually pay down their debts, as well as Tom living up to his fiduciary duty by transferring settlement funds to clients who are otherwise prepared to sue him, they are searching for new methods to protect their money.

        **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph seventy-one of the Complaint and therefore denies the allegations.

---

[13] *Law Finance Group, LLC v. Girardi Keese, et al*., No. 19STCV01455 (Cal. Sup. Ct.) (#Bl-63).

72.     On information and belief, Tom's and Erika's divorce is a sham proceeding, designed to further the scheme described by Mr. Zimmerman above: place assets outside of Tom's and his law firm's name to shield it from the collection efforts of his creditors.

**ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph seventy-two of the Complaint and therefore denies the allegations.

73.     A 2017 article noted that "Girardi Keese has been sued for malpractice, fraud or breach of contract at least 22 times since 1995…"[14] And numerous lawsuits have been filed since.

**ANSWER:** Defendant admits that the references cited exist but does not have sufficient information or belief to admit or deny that the statements in the reference are true and therefore denies the allegations.

74.     Based only upon publicly available information, these prior lawsuits were brought by clients, consultants, vendors, and lenders, among others, and amount to tens of millions of dollars improperly withheld and embezzled by Girardi and his firm.

**ANSWER:** Defendant admits there were prior suits. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph seventy-four of the Complaint and therefore denies the allegations.

75.     Most recently, GK has been sued by multiple financial firms that loaned the firm over twenty million dollars collectively.

**ANSWER:** Defendant admits that Girardi Keese was sued by financial firms. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph seventy-five of the Complaint and therefore denies the remaining allegations.

---

[14] Sandy Mazza, *Famed attorney Thomas Girardi accused of hoarding settlement funds for Carson's Carousel residents*, DAILY BREEZE, https://www.dailybreeze.com/2017/07/01/famed-attorney-thomas-girardi-accused-of-hoarding-settlement-funds-for-carsons-carousel-residents/.

76.     Law Finance Group sued GK and Girardi personally in January 2019 after they defaulted on a $16 million note.[15] Defendant Stillwell Madison likewise filed suit a month later to recover on a $5 million defaulted loan.[16]

        **ANSWER:** On Information and belief, Defendant admits the allegations contained in paragraph seventy-six of the Complaint.


77.     As alleged in those complaints, Girardi failed to make payments and quickly defaulted on these loans; however, he managed to negotiate forbearance agreements with both lenders within weeks of each other (without either lender having knowledge of the other), that obligated his firm to make millions of dollars in payments just in the following few months. As it turns out, the forbearance agreements were simply stalling tactics, as Girardi and his firm then failed to make any of those payments as well.

        **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph seventy-seven of the Complaint and therefore denies the allegations.


78.     Eventually, under court order in 2019, GK paid Law Finance Group $16 million dollars to clear the loan. The source of this money is unknown. By contrast, Stillwell Madison sought and received a writ of attachment for nearly $6 million in October 2020, and on information and belief, is proceeding with collection efforts.

        **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph seventy-eight of the Complaint and therefore denies the allegations.


79.     On information and belief, to stave off collection efforts, Girardi and his lenders and other creditors have entered into a series of inter-creditor agreements, which provide that any

---

[15] *Law Finance Group, LLC, v. Girardi Keese*, No. 19STCV01455 (Cal. Sup. Ct.).
[16] *Stillwell Madison, LLC, v. Girardi Keese*, No. 20STCV07853 (Cal. Sup. Ct.).

monies received into Defendant GK's bank accounts be directed to those lenders and creditors. But because of Girardi's now widely-known financial troubles, these lenders and other creditors knew or should have known that monies being redirected by Defendant Girardi are likely embezzled client funds and co-counsel fees and thus, were illegally obtained by Defendant Girardi in the first instance. As a result, by knowingly accepting these embezzled funds, the lenders, including Defendants California Attorney Lending, and Defendant Girardi's other creditors are furthering his illegality.

**ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph seventy-nine of the Complaint and therefore denies the allegations.

80. Indeed, on information and belief, Girardi and GK have directed Lion Air client funds, and money otherwise owed to third parties like Edelson, to lenders including Defendant California Attorney Lending in order to stave off these creditors.

**ANSWER:** Defendant admits that the releases signed by certain Lion Air Plaintiffs required that a portion of the attorneys' fees be sent to California Lending. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph eighty of the Complaint and therefore denies the remaining allegations.

81. For its part, on information and belief, Defendant California Attorney Lending, through its due diligence process, would be aware (1) if client settlement funds had been received in the Lion Air cases and if and when they were paid out to the client; (2) of the amount of fees held back from those funds under the client contract; (3) of any obligations imposed on those fees by a third party, such as Edelson; and (4) that Edelson had appearances on file in the Lion Air cases and was a primary participant in the litigation. By entering into an agreement with GK that requires 50% of gross attorneys' fees to be directed to itself, California Attorney Lending cannot avoid the knowledge that it is accepting embezzled funds

that are contractually owed to the victims' families and of lesser importance, to Edelson. This is both unethical and an unlawful interference with enforceable contracts.

**ANSWER:** On information and belief Defendant admits that California Lending received a portion of the attorneys' fees directly from Boeing. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph eighty-one of the Complaint and therefore denies the remaining allegations.

82. On information and belief, Defendants Girardi, Jayne, EJ Global, GK, Lira, Griffin, and Johnston Hutchinson & Lira LLP, California Attorney Lending, and other Doe Defendants yet to be identified, have wrongfully transferred, misappropriated, and retained settlement funds owed to the victims of Lion Air Flight 610, as well as attorneys' fees owed to Edelson and other third parties.

**ANSWER:** Defendant specifically denies that this responding defendant has wrongfully transferred, misappropriated, or retained settlement funds owed to the victims of Lion Air Flight 610 or attorneys' fees owed to Edelson or other third parties. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph eighty-two of the Complaint and therefore denies the remaining allegations.

<u>**COUNT I**</u>
**UNJUST ENRICHMENT – CONSTRUCTIVE**
**TRUST (As Against Defendants Girardi, GK, Jayne,**
**EJ Global,**
**Lira, Griffin, Johnston Hutchinson & Lira, California Attorney Lending II)**

83. Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

**ANSWER:** Defendant incorporates his responses to the foregoing paragraphs as if fully set forth herein.

84. Unjust enrichment, or restitution, may be alleged where a defendant unjustly obtains and retains a benefit to the plaintiff's detriment, and where such retention violates fundamental

38

principles of equity, justice, and good conscience.

**ANSWER:** This paragraph sets forth legal conclusions and questions of law to which no response is required. This cause of action is stayed pursuant to this Court's July 19, 2021, Order [Dkt. # 91].

85.    On information and belief, Defendants Girardi, GK, Jayne, EJ Global, Lira, Griffin, Johnston Hutchinson & Lira, and California Attorney Lending II are each holding funds that properly belong to the victims of Lion Air Flight 610 and to Plaintiff Edelson.

**ANSWER:** Defendant denies as to this responding defendant. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph eighty-five of the Complaint and therefore denies the remaining allegations.

86.    A large, but confidential sum of money, was transferred from Boeing to Defendant GK in mid-2020. This money was for the benefit of Lion Air clients represented by GK, minus agreed upon attorneys' fees.

**ANSWER**: Defendant admits on information and belief that sums were transferred to Girardi Keese by Boeing in or around March of 2020 for the benefit of Lion Air clients and for agreed upon attorneys' fees.

87.    Plaintiff Edelson has contractually created property rights to specific percentages of the attorneys' fees generated by those settlement funds.

**ANSWER:** Defendant admits that Plaintiff and Girardi Keese had an agreement regarding attorneys' fees. Defendant lacks sufficient information and belief to admit or deny whether the agreement was enforceable and therefore denies the remaining allegations.

88.    However, on information and belief, the funds owed to Plaintiff Edelson are now commingled with the funds owed to the Lion Air clients and have been distributed among the

Defendants and other unknown entities. Nevertheless, the funds are identifiable, and there is a direct chain from the Boeing payments to the current persons in possession of the money.

**ANSWER:** Defendant denies as to this responding defendant who has received no funds from any Lion Air settlement. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph eighty-eight of the Complaint and therefore denies the remaining allegations.

89.     On information and belief, Defendants Jayne and EJ Global have received and retained a portion of the funds transferred by Boeing to GK. Specifically, a portion of those funds have, on information and belief, been unlawfully transferred to Defendants Jayne and EJ Global for their personal use as well as to shield the money, for the benefit of Defendant Girardi, from their creditors, including Plaintiff.

**ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph eighty-nine of the Complaint and therefore denies the allegations.

90.     On information and belief, funds transferred by Boeing to GK that properly belong to the Lion Air clients and Plaintiff Edelson or are due and owing to the Lion Air clients and Plaintiff Edelson, have unlawfully been transferred to and are being retained by Defendant California Attorney Lending.

**ANSWER:** Defendant admits that 50% of the attorneys' fees payable to Girardi Keese were paid to California Attorney Lending in accordance with the releases signed by the clients. Defendant denies the remainder of allegations paragraph ninety.

91.     On information and belief, funds transferred by Boeing to GK that properly belong to the Lion Air clients and Plaintiff Edelson or are due and owing to the Lion Air clients and

Plaintiff Edelson, have unlawfully been transferred to and are being retained by Defendant Johnston Hutchinson & Lira.

**ANSWER:** Defendant denies that any funds from Lion Air settlements have been paid to Johnston Hutchinson & Lira. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph ninety-one of the Complaint and therefore denies the remaining allegations.

92.     Defendants Girardi, Griffin, and Lira represent or represented the Lion Air clients and owe them a fiduciary duty as counsel. On information and belief, Defendants Girardi, Griffin, and Lira breached their fiduciary duties to the Lion Air clients by causing, permitting, facilitating, or otherwise allowing the Lion Air clients' money to be commingled with funds belonging to Plaintiff Edelson and distributed to the other Defendants and/or retained for their own personal benefit.

**ANSWER:** Defendant admits that this responding defendant represented certain specific Lion Air Clients and owed those clients fiduciary duties. Defendant denies that this responding defendant breached those duties as alleged or otherwise.  Defendant denies that he ever received any funds from the settlement of any Lion Air case.  Defendant admits that Girardi and Griffin also represented Lion Air clients and had fiduciary duties to them. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph ninety-two of the Complaint and therefore denies the remaining allegations.

93.     Under principles of equity and good conscience, Defendants should not be permitted to retain any of the funds transferred from Boeing to GK.

**ANSWER:** This responding defendant denies that he has ever received any of the funds transferred from Boeing to Girardi Keese. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph ninety-three of the Complaint and

41

therefore denies the remaining allegations.

94.     However, principles of equity and good conscience, as well as the Rules of Professional Conduct, prevent Plaintiff Edelson from taking possession of any of these commingled funds unless and until the Lion Air clients receive their share of the settlement money paid by Boeing.

   **ANSWER:** Defendant lacks sufficient information to admit or deny the allegations contained in paragraph ninety-four of the Complaint and therefore denies the allegations.

95.     Plaintiff seeks the imposition of a constructive trust on all money transferred from Boeing to GK in connection with the Lion Air settlements, for the benefit of the Lion Air clients first, then for the benefit of Plaintiff, if sufficient funds remain in trust. In the alternative, Plaintiff requests that all such sums should be disgorged.

   **ANSWER:** This responding defendant denies that he has ever received any of the funds transferred from Boeing to Girardi Keese. Defendant lacks sufficient information to admit or deny the remaining allegations contained in paragraph ninety-five of the Complaint and therefore denies the remaining allegations.

## <u>COUNT II</u>
### ACCOUNTING
**(As Against Defendants Girardi, GK, Jayne, EJ Global, Girardi Financial, Lira, Griffin, Johnston Hutchinson & Lira, Finnerty, Abir Cohen Treyzon Salo, California Attorney Lending II, Stillwell Madison, and John Doe 1-10)**

96.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein.

   **ANSWER:** Defendant incorporates his responses to the foregoing paragraphs as if fully set forth herein.

97.     A large, but confidential sum of money, was transferred from Boeing to Defendant GK in mid-2020. This money was for the benefit of the Lion Air clients represented by GK, minus agreed upon attorneys' fees.

ANSWER: Defendant admits on information and belief that sums were transferred to Girardi Keese by Boeing in or around March of 2020 and May or June 2020 for the benefit of Lion Air clients and for agreed upon attorneys' fees, costs, and advances.

98.     Presently, the whereabouts, distribution, allocation, or transfer of those funds is not known to Plaintiff.

ANSWER: On information and belief defendant admits the allegations contained in paragraph ninety-eight.

99.     Any information on the current status and location of that money is within the exclusive knowledge of Defendants. As such, Plaintiff has an inadequate legal remedy in that it cannot determine what party is responsible, in what amount, for its damages.

ANSWER: Defendant admits that any information regarding the current status and location of the money is within the exclusive knowledge of Thomas Girardi and possibly certain former employees of Girardi Keese.  This responding defendant has no knowledge of the current status and location of the money and has no access to that information.

100.    Plaintiff therefore seeks an order requiring all Defendants to provide a full and complete accounting of all transactions or records relating to the Lion Air settlement money.

ANSWER: Defendant denies he has any ability to provide an accounting of the funds in question since he has no access to the information required to do so. None of the funds have ever been in the possession or control of this responding defendant.

43

## COUNT III
### BREACH OF CONTRACT
**(As Against Defendants GK, Girardi, Griffin, and Lira) (*In the Alternative to Counts I and II*)**

101.    Plaintiff incorporates the foregoing paragraphs as if fully set forth herein, excluding paragraphs 83-100.

**ANSWER:** Defendant incorporates his responses to the foregoing paragraphs as if fully set forth herein.

102.    Plaintiff entered into two enforceable contracts with GK. The first contract, presented and executed by Defendant Griffin, provided that Edelson would receive 50% of total attorneys' fees recovered for a specific set of Lion Air clients in the matter of *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.). By the terms of the contract, Edelson was expected to act as local counsel, as well as participate directly in the litigation and settlement process.

**ANSWER:** Defendant admits that the specified contracts were entered between Edelson and Girardi Keese. Defendant denies the remaining allegations in paragraph one hundred two of the Complaint.

103.    The second contract, presented and executed by Defendant Lira, provided that Edelson would receive 20% of total attorneys' fees recovered for a separate set of specific Lion Air clients in the matter of *In Re: Lion Air Flight JT 610 Crash*, No. 18-cv-07686 (N.D. Ill.). By the terms of the contract, Edelson was expected to act as local counsel, as well as participate directly in the litigation and settlement process.

**ANSWER:** Defendant admits that the specified contract was entered with Girardi Keese. Defendant denies the remaining allegations in paragraph one hundred three of the Complaint.

44

104.     These contract terms were negotiated and agreed to both verbally and in writing.

**ANSWER:** On information and belief, Defendant admits the allegations contained in paragraph one hundred and four of the Complaint.

105.     Edelson fully performed its obligations under the contracts by acting as local counsel and assisting in the litigation and settlement of the Lion Air cases.

**ANSWER:** On information and belief defendant admits the allegations in paragraph one hundred and five.

106.     Defendants GK, Girardi, Griffin, and Lira breached their contractual obligations by not paying Edelson its share of attorneys' fees.

**ANSWER:** Defendant denies the allegations in paragraph one hundred and six as to this responding defendant.

107.     As a direct, foreseeable, and proximate result of Defendants' breaches, Plaintiff has been damaged in amount to be proven at trial.

**ANSWER:** Defendant denies the allegations in paragraph one hundred and seven as to this responding defendant.

## COUNT IV

## TORTIOUS INTERFERENCE WITH CONTRACT

### (As Against Defendant California Attorney Lending)

108.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein, excluding paragraphs 83-100.

**ANSWER**: Count Four is not alleged as against this Defendant and thus this Defendant is not responding to paragraphs 108 to 113 of the Complaint.

## COUNT V
### CONVERSION
### (As Against Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira) (*In the Alternative to Counts I and II*)

114.     Plaintiff incorporates the foregoing paragraphs as if fully set forth herein, excluding paragraphs 83-100.

**ANSWER:** Defendant incorporates his responses to the foregoing paragraphs as if fully set forth herein.


115.     A large, but confidential sum of money, was transferred from Boeing to Defendant GK in mid-2020. This money was for the benefit of Lion Air clients represented by GK, minus agreed upon attorneys' fees.

**ANSWER**: Defendant admits on information and belief that sums were transferred to Girardi Keese by Boeing in or around March of 2020 for the benefit of Lion Air clients and for agreed upon attorneys' fees, costs, and advances.


116.     Plaintiff Edelson has contractually created property right to specific percentages of the attorneys' fees generated by those settlement funds.

**ANSWER:** Defendant admits that Edelson had agreements regarding attorneys' fees with Girardi Keese. Defendant denies the remaining allegations in paragraph one hundred sixteen of the Complaint.


117.     Under those contracts, Plaintiff Edelson has an absolute and unconditional right to the immediate possession of the attorneys' fees, once the appropriate settlement funds have been transferred to the Lion Air clients.

**ANSWER:** Defendant lacks sufficient information and belief to admit or deny the allegations of this paragraph and therefore denies the remaining allegations in paragraph one hundred and seventeen.

118.     Plaintiff has made numerous demands on Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira for an accounting and payment of attorneys' fees, to no avail.

**ANSWER:** Defendant denies the allegations in paragraph one hundred and eighteen.

119.     Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira have wrongfully and without authorization assumed control and ownership over the attorneys' fees and refused to provide them to Plaintiff.

**ANSWER:** Defendant denies that this responding defendant has wrongfully and without authorization assumed control and ownership over the attorneys' fees and refused to provide them to plaintiff.

120.     As a direct, foreseeable, and proximate result of the conversion of Plaintiff's share of attorneys' fees by Defendants GK, Girardi, Griffin, Lira, and Johnston Hutchinson & Lira, Plaintiff has been damaged in amount to be proven at trial.

**ANSWER:** Defendant denies the allegations in paragraph one hundred and twenty as to this responding defendant.

As to each and every allegation which has not been expressly admitted or denied, Defendant lacks sufficient information upon which to admit or deny, and on that basis denies those allegations.

47

## AFFIRMATIVE DEFENSES

### FIRST DEFENSE

Defendant reserves the right to amend this Answer to assert any other matter that constitutes an avoidance or affirmative defense under Fed. R. Civ. P. 8(c).

### SECOND DEFENSE

Plaintiff cannot recover the damages in its complaint because it has unclean hands.

### THIRD DEFENSE

The contracts at issue are invalid or enforceable because they are unconscionable.

### FOURTH DEFENSE

The contracts at issue are invalid or unenforceable because they are unlawful pursuant to California and/or Illinois law.

### FIFTH DEFENSE

The contracts at issue are invalid or unenforceable because there was insufficient consideration.

### SIXTH DEFENSE

The contracts at issue are not enforceable as to responding defendant because responding defendant is not a party to the contracts at issue.

### SEVENTH DEFENSE

The contracts at issue are invalid or unenforceable because their terms are uncertain.

### EIGHTH DEFENSE

It was impossible for responding defendant to perform pursuant to the terms of the contracts.

### NINTH DEFENSE

Plaintiff may not recover because Plaintiff is equally responsible for the harmful conduct under a theory of In Pari Delicto.

### TENTH DEFENSE

Defendant is entitled to indemnification from Girardi Keese and Thomas Girardi pursuant

to California Labor Code §2802.

## **PRAYER FOR RELIEF**

WHEREFORE, Defendant prays that Plaintiff take nothing by or through its Complaint, that Defendants be dismissed and discharged here from with their costs and fees herein expended and incurred and for such other and further relief as may be deemed just, proper and equitable.

## **REQUEST FOR JURY TRIAL**

Defendant demands a trial by jury for all issues so triable.

Respectfully submitted,
DAVID LIRA

/s/ Edith R. Matthai
By:      _____
His Attorney

Christopher T. Sheean
Swanson, Martin & Bell LLP
330 N. Wabash Ave., Suite 3300
Chicago, Illinois 60611
(312) 222-8559
csheean@smbtrials.com

Edith R. Matthai, Esq.
Leigh P. Robie, Esq.
350 S. Grand Avenue, Suite 3950
Los Angeles, California 90071
(213) 706-8000
ematthai@romalaw.com
lrobie@romalaw.com