IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| EDELSON PC, an Illinois professional corporation, | Case No.: 1:20-cv-07115 |
| | Hon. Matthew F. Kennelly |
| *Plaintiff,* | |
| v. | |
| THOMAS GIRARDI, an individual, GIRARDI KEESE, a California general partnership, ERIKA GIRARDI a/k/a ERIKA JAYNE, an individual, EJ GLOBAL LLC, a California limited liability company, GIRARDI FINANCIAL, INC., a Nevada corporation, DAVID LIRA, an individual, KEITH GRIFFIN, an individual, JOHNSTON HUTCHINSON & LIRA LLP, a California limited liability partnership, ROBERT FINNERTY, an individual, ABIR COHEN TREYZON SALO, LLP, a California limited liability partnership, CALIFORNIA ATTORNEY LENDING II, INC., a New York corporation, STILLWELL MADISON, LLC, a Delaware limited liability company, and JOHN DOE 1-10, | |
| *Defendants.* | |

**DEFENDANT KEITH GRIFFIN'S MOTION
FOR JUDGMENT ON THE PLEADINGS**

**TO THIS HONORABLE COURT:**

Defendant Keith Griffin moves this Court for a judgment on the pleadings pursuant to Federal Rules of Civil Procedure, Rule 12(c) to dismiss Count I for unjust enrichment, Count II for accounting, Count III for breach of contract, and Count V for conversion. This is an action by Plaintiff Edelson, PC to collect its unpaid legal fees from former Girardi Keese employee Keith Griffin, even though Mr. Griffin did not receive any of the settlement money or any attorney's fees. Edelson has filed a claim in the Girardi Keese bankruptcy to collect the same fees against Girardi Keese (who is the entity that actually received the money).

## I.    INTRODUCTION

1. Defendant Keith Griffin requests judgment on the pleadings regarding Plaintiff's Count I, Count II, Count III, and Count V.

2. Count I for unjust enrichment should be dismissed because unjust enrichment is not a stand-alone claim under Illinois law. Where a plaintiff pleads that the parties' relationship was governed by an express contract, Illinois courts have prevented plaintiffs from pursuing an unjust enrichment claim, even in the alternative.

3. Count III for breach of contract should be dismissed because the fee-sharing agreements between Plaintiff and Girardi Keese were not signed by any of the clients and therefore the agreements are unenforceable under Illinois law. The same is also true under California law. Although Plaintiff omitted to attach the written agreements to its Complaint, the agreements can be considered by this Court in ruling on

a motion for judgment on the pleadings because they were referenced throughout the Complaint.

4. Counts II and V should be dismissed for the same reasons. Count II for accounting fails because the fee-sharing agreements are unenforceable, and therefore there is no reason to do an accounting of monies owed to Plaintiff. Regarding Count V, there was no conversion of monies owed to Plaintiff because the fee-sharing agreements are unenforceable.

## II. STATEMENT OF FACTS

5. More than a dozen families of victims of the Lion Air Flight 610 crash retained Girardi Keese to prosecute their civil matters against Boeing in the matter of *In Re: Lion Air Flight JT610 Crash*, No. 18-cv-07686 (N.D. Ill.) ("Lion Air clients"). [Complaint ¶¶ 34, 37]. The litigation took place in this District before the Honorable Thomas M. Durkin. The victims' claims were resolved via settlement in 2020. [Complaint ¶ 38].

6. The Lion Air clients were jointly represented by Edelson and Girardi Keese. Edelson is an Illinois professional corporation operating as a law firm, with its principal place of business in Chicago, Illinois. [Complaint ¶ 17]. Mr. Griffin is a resident of the State of California who was employed by Girardi Keese. [Complaint ¶ 24].

7. Edelson alleges that it entered into a written agreement with Girardi Keese which provided that if Edelson would act as local counsel, then Plaintiff would receive 50% of total attorneys' fees recovered for a specific set of Lion Air clients. [Complaint ¶¶

102, 104]. This agreement was purported memorialized by a letter from Mr. Griffin to Edelson's Ari Scharg, dated April 3, 2019 and regarding the "Boeing Cases." The actual letter states (which is delivered by Keith Griffin on behalf of Girardi Keese):

> This will confirm our agreement that our fee split will be 50/50 on the Boeing cases that you have filed with us in Chicago concerning the Lion Air crash. If it turns out that one of our two firms performs significantly more work than expected, or less if the case settles fairly quickly, we will adjust the fee split as would be reasonable to both firms. Thanks again for your work so far and looking forward to our future work together. [Affidavit of Ryan D. Saba, Esq. ("Saba Affidavit"), Exh. 1].

8. The writing dated April 3, 2019 was not signed by any of the clients, and none of the clients were copied with the letter. [Saba Affidavit, Exh. 1].

9. Edelson alleges it entered into a second written agreement with Girardi Keese which provided that if Edelson would act as local counsel, it would receive 20% of total attorneys' fees recovered for a separate set of Lion Air clients. [Complaint ¶¶ 103-104]. This agreement was memorialized by a letter from Defendant David Lira on behalf of Girardi Keese to Edelson's Ari Scharg, dated June 17, 2019 and regarding the "Lion Air Cases." The actual letter states:

> This will confirm our telephone conversation of this afternoon. As I indicated, I am prepared to file approximately ten wrongful death lawsuits arising from the Lion Air disaster. Your firm is currently co-counsel on a number of cases previously filed by my firm with Keith Griffin taking the lead on behalf of Girardi Keese. It was discussed and agreed in our conversation that the referral fee paid to your firm in assisting in this matter will be twenty (20%) percent of the total attorneys' fees recovered. It is my intent to take the laboring oar in discovery and other tasks. As you can imagine, I will need your assistance in the actual filing of the lawsuits and appearances before the Court when I am not able to attend. Is there a *pro hac vice* form to complete? Keith will also be assisting. If this does not comport with your understanding of our agreement, please advise. I look forward to working with you. [Saba Affidavit, Exh. 2].

4

10. The writing dated June 17, 2019 was not signed by any of the clients, and none of the clients were copied with the letter. [Saba Affidavit, Exh. 2].

11. Plaintiff performed its obligations by acting as local counsel and assisting in the litigation and settlement of the Lion Air cases. [Complaint ¶ 105].

12. Money was transferred from Boeing to Girardi Keese in 2020 to settle the clients' cases. This money was for the benefit of the Lion Air clients, minus agreed upon attorneys' fees. [Complaint ¶ 86]. Mr. Griffin did not receive the money. The money was received by Girardi Keese. However, Girardi Keese allegedly did not pay Edelson some or all of its share of the attorneys' fees. [Complaint ¶ 106].

### III. CONTRACTS REFERENCED IN A COMPLAINT SHOULD BE CONSIDERED BY THE COURT IN RULING ON A MOTION FOR JUDGMENT ON THE PLEADINGS

13. Federal Rule of Civil Procedure 12(c) permits a party to move for judgment on the pleadings, which consist of the complaint, the answer, and any written instruments attached as exhibits. *Northern Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 452 (7th Cir. 1998). However, if a written agreement is technically outside the pleadings, it nevertheless falls in the "narrow exception" permitting consideration of such documents "aimed at cases interpreting, for example, a contract." *188 LLC v. Trinity Indust., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002); see also, *Hayes v. City of Chicago*, 670 F.3d 810, 813 (7th Cir. 2012) (motion for judgment on the pleadings under Rule 12(c) is governed by the same standards as a motion to dismiss for failure to state a claim

pursuant to Federal Rule of Civil Procedure 12(b)(6)). It is well-settled in this Circuit that documents attached to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. *Yassan v. J.P. Morgan Chase & Co.*, 708 F.3d 963, 975 (7th Cir. 2013) (considering a release agreement in ruling on a motion to dismiss because the plaintiff's "complaint repeatedly referenced the release" agreement).

14. The Complaint references two, written fee-sharing agreements that were not attached as exhibits to the Complaint. [Complaint ¶¶ 102-104]. Count III of the Complaint is a breach of contract claim based on Defendants Girardi Keese, Mr. Griffin, and Mr. Lira's alleged breach of these two, written fee-sharing agreements. [Complaint ¶¶ 102-107]. The agreements are attached as Exhibits 1 and 2 to the concurrently filed Affidavit of Ryan Saba, Esq. and can be considered by the Court in ruling on this motion for judgment on the pleadings. *Yassan*, 708 F.3d at 975.

IV. **UNJUST ENRICHMENT IS NOT A VIABLE CLAIM UNDER ILLINOIS LAW**

15. Plaintiff's Count I is a claim for Unjust Enrichment. [Complaint, pp. 23-25]. None of the counts in Plaintiff's Complaint allege fraudulent conduct. [Complaint, pp. 23-29].

16. In Illinois, "a claim of unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010); *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017)

("Unjust enrichment does not constitute an independent cause of action. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, or, alternatively, it may be based on contracts which are implied in law."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011).

17. "Because it is an equitable remedy, unjust enrichment is only available when there is no adequate remedy at law." *Miller v. Lewis Univ.,* No. 20 C 5473, 2021 WL 1379488, at *6 (N.D. Ill. Apr. 11, 2021) (citing, *Guinn v. Hoskins Chevrolet*, 361 Ill.App.3d 575, 604, 836 N.E.2d 681 (2005). "Where plaintiffs have acknowledged that there is an express contract, courts have prevented plaintiffs from pursuing an unjust enrichment claim, even in the alternative." *Miszczyszyn v. JPMorgan Chase Bank, N.A.,* No. 18-CV-3633, 2019 WL 1254912, at *4; *Toulon*, 877 F.3d at 742 ("A claim for unjust enrichment is based upon an implied contract." However, "where there is a specific contract that governs the relationship of the parties, [unjust enrichment] has no application.").

18. In *Allergase, Inc. v. Walgreen Co.,* No. 15 C 4873, 2017 WL 66819 at *4 (N.D. Ill. Jan. 6, 2017), a plaintiff claimed to have pled an unjust enrichment claim in the alternative, if the court determined that a contract had not been formed. However, because the complaint also contained allegations of an express contract, the Northern District Court dismissed the plaintiff's unjust enrichment theory. *Id.* In *Miszczyszyn,* 2019 WL 1254912, at *4-5, the Northern District Court stated that "the relevant question is whether the parties' relationship is governed by a contract." Because the plaintiff

acknowledged the existence of an express contract, including in her unjust enrichment claim, the parties' relationship was clearly governed by an express contract and the unjust enrichment claim was dismissed.

19. Here, Plaintiff fails to plead a proper count of unjust enrichment for two reasons. First, Plaintiff pled the existence of a written contract, including in its Count I for unjust enrichment. [Complaint ¶¶ 87, 102-104]. Plaintiff's unjust enrichment claim is premised on a failure to fulfill contractual terms, and therefore dismissal of the unjust enrichment claim is appropriate. *Miller v. Lewis Univ.,* No. 20 C 5473, 2021 WL 1379488, at *6 (N.D. Ill. Apr. 11, 2021). Second, Plaintiff has not alleged fraud. *See Toulon*, 877 F.3d at 742.

## V. THE FEE-SHARING AGREEMENTS BETWEEN GIRARDI KEESE AND EDELSON ARE VOID AND CANNOT BE ENFORCED UNDER ILLINOIS LAW

20. Because the fee-sharing "agreements" between Plaintiff and Girardi Keese were not signed by any of the clients, the agreements are void and unenforceable under Illinois law. [Saba Affidavit, Exhs. 1, 2].

21. Illinois Rule of Professional Conduct, Rule 1.5(e) states: "A division of a fee between lawyers who are not in the same firm may be made only if: (1) the division is in proportion to the services performed by each lawyer, or if the primary service performed by one lawyer is the referral of the client to another lawyer and each lawyer assumes joint financial responsibility for the representation; **(2) the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is**

**confirmed in writing;** and (3) the total fee is reasonable." Ill. R. Prof'l Conduct R. 1.5(e) (eff. Jan. 1, 2010) (emphasis added).

22. In the context of fee-sharing arrangements, Illinois law requires the clients' consent no matter what type of fee sharing is envisioned. *Woods v. Sw. Airlines, Co.*, 523 F.Supp.2d 812, 822 (N.D. Ill. 2007). Fee arrangements that violate Rule 1.5 cannot be enforced. *Id*. at 824 (citing, *Richards v. SSM Health Care, Inc.,* 311 Ill.App.3d 560, 564, 724 N.E.2d 975 (2000).

23. The Supreme Court of Illinois held that "each of Rule 1.5's three subsections constitute a separate condition that must be satisfied in order for a fee-sharing agreement to be enforceable. They are in the nature of a checklist in which each of the enumerated items must be crossed off before moving to the next, and all must be checked off before the fees may be divided." *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 35, 90 N.E.3d 400.

24. *In re Storment*, 203 Ill.2d 378, 398, 786 N.E.2d 963 (2002) was a case involving disciplinary action against an attorney for violating the predecessor of Rule 1.5(e) [previously, Rule 1.5(f)] by not disclosing in writing to a client that he would split fees with his co-counsel. Though the client understood that each attorney would be compensated, the Supreme Court of Illinois underscored the importance of reducing to writing the division of fees between co-counsel: "[The client's] general understanding that both [lawyers] were to be compensated for their services does not fulfill the rule's mandatory writing requirement. For this reason, we cannot agree with the Boards' assessment of respondents' violation of Rule 1.5(f) as a mere technicality." *Id*. Although

*In re Storment* was a disciplinary case and not one involving the validity of a fee-sharing agreement, Illinois courts have relied on *Storment* to adjudicate fee-sharing disputes, holding that compliance with Rule 1.5(e) is mandatory and requires strict compliance. *See e.g.*, *Donald W. Fohrman & Assocs., Ltd. v. Mark D. Alberts, P.C.*, 2014 IL App (1st) 123351, ¶¶ 39-41, 7 N.E.3d 807, 809 (Illinois Rule of Professional Conduct "have the force of law" and compliance with Rule 1.5(e) is mandatory and requires strict compliance); *Paul B. Episcope, Ltd. v. L. Offs. of Campbell & Di Vincenzo*, 373 Ill.App.3d 384, 392, N.E.2d 784, 786 (2007), <u>as modified on denial of reh'g</u> (May 29, 2007)

25. In the recent case of *Bennett v. GlaxoSmithKline LLC*, 2020 IL App (5th) 180281, 151 N.E.3d 1184, 1186, <u>appeal denied,</u> 154 N.E.3d 814 (Ill. 2020), multiple plaintiffs were represented by the original attorney, who brought three "bundled" actions against a medication manufacturer, separate from multidistrict litigation in federal court on same medication. *Id.* at ¶¶ 1, 5-6. Before trial on the four bellwether claims, the original attorney brought on co-counsel. The original attorney and the co-counsel exchanged a series of e-mail messages with subject line "fee split" in which they discussed their fee arrangement. *Id*. at ¶¶ 9-10. Then the cases settled and a dispute over enforcement and allocation of fees ensued. *Id*. at ¶¶ 11, 39-40. It was held that the attorneys' email exchange in which they agreed upon a fee-sharing arrangement was "unenforceable as against public policy" because "none of the plaintiffs, other than perhaps bellwether plaintiffs Troupe and Valerius, were informed of and consented in writing to the representation by Baum and to the fee-sharing arrangement between Baum

and Johnson." *Id*. at ¶ 55. In so holding, the Appellate Court of Illinois stated: "Rule 1.5(e) sets out specific conditions that must be satisfied for a fee-sharing agreement to be enforced. Our Supreme Court has described these conditions as being in the nature of a checklist in which each item must be crossed off before moving to the next and all must be checked off before the fees may be divided…the client must agree, in writing, to the referral of the case and the fee-sharing arrangement between the referring lawyer and the receiving lawyer, including how much each lawyer will receive." *Id*. at ¶ 55. Additionally, the *Bennett* court declined to uphold the fee-sharing arrangement based on substantial compliance with the fee-sharing rule because the record demonstrated there was no attempt to comply with the requirements of Rule 1.5, stating that "the failure to comply with Rule 1.5(e) precludes enforcement of the fee-sharing arrangement." *Id*. at ¶ 59. The order awarding attorney fees to the co-counsel was vacated and the fees reverted to the original attorney. *Id*. at ¶¶ 60, 77.

26. Here, as in *Bennett,* the letter from Mr. Griffin dated April 3, 2019 regarding the "Boeing Cases" and the letter from Mr. Lira dated June 17, 2019 regarding the "Lion Air Cases" were not signed by any of the clients. [Saba Affidavit, Exhs. 1, 2]. Therefore, the fee-sharing "agreements" violate Rule 1.5(e)(2) and cannot be enforced. Edelson is not entitled to any attorneys' fees from the Lion Air cases, and Plaintiff's third count for breach of contract should be dismissed.

## VI. THE FEE-SHARING AGREEMENTS BETWEEN GIRARDI KEESE AND EDELSON ALSO CANNOT BE ENFORCED UNDER CALIFORNIA LAW

27. Because the fee-sharing "agreements" between Plaintiff and Girardi Keese were not signed by any of the clients, the agreements are also unenforceable under California law. [Saba Affidavit, Exhs. 1, 2].

28. California Rules of Professional Conduct, Rule 1.5.1(a) regarding fee divisions among lawyers states: Lawyers who are not in the same law firm shall not divide a fee for legal services unless: (1) the lawyers enter into a written agreement to divide the fee; **(2) the client has consented in writing, either at the time the lawyers enter into the agreement to divide the fee or as soon thereafter as reasonably practicable, after a full written disclosure to the client of: (i) the fact that a division of fees will be made; (ii) the identity of the lawyers or law firms that are parties to the division; and (iii) the terms of the division**; and (3) the total fee charged by all lawyers is not increased solely by reason of the agreement to divide fees. Cal. R. Prof'l Conduct R. 1.5.1(a) (eff. Nov. 1, 2018) (emphasis added).

29. Rule 1.5.1 requires that there be written client consent to fee-sharing and absent such written consent, any proposed fee-splitting is void and unenforceable as a matter of law. *See Chambers v. Kay,* 29 Cal.4th 142, 157 (2002) ("Requiring the client's written consent to fee sharing impresses upon the client the importance of his or her consent, and of the right to reject the fee sharing'"); *Strong v. Beydoun* 166 Cal.App.4th 1398, 1402 (2008); *Scolinos v. Kolts,* 37 Cal.App.4th 635, 640 (1995); *Margolin v. Shemaria* 85 Cal.App.4th 891, 903 (2000); *Huskinson & Brown, LLP v. Wolf* 32 Cal. 4th

453, 459 (2004). The fee sharing restrictions of Rule 1.5.1 apply not only where a lawyer receives a fee for referring the client to another lawyer, but also where work for the client is divided. *Chambers v. Kay*, 29 Cal.4th 142, 149-150, 152 (2002). *Chambers* involved a fee dispute between two attorneys who served as co-counsel on a contingency fee case. Only one of the two attorneys had been retained by the client. *Id.* at 146. One of the attorneys sent correspondence to the other attorney setting forth the fee-sharing agreement, "but never sought or obtained her written or oral consent to the proposed fee division with [the client]." *Id*. at 146. The California Supreme Court denied recovery under a breach of contract theory to an attorney seeking to enforce a fee-sharing agreement because there was no compliance with the written disclosure and consent requirements of former rule 2-200, the predecessor to Rule 1.5.1 (superseding former rule 2-200 as of November 1, 2018).[1] *Id*. at pp. 147-161. In so holding, the *Chambers* court stated: "because the rule binds all members of the State Bar, it would be absurd for this or any other court to aid Chambers in accomplishing a fee division that would violate the rule's explicit requirement of written client consent and would subject Chambers to professional discipline." *Id*. at 161. Indeed, California cases uniformly recognize that an

---

[1] Former rule 2-200 was recast as Rule 1.5.1 with modifications not germane to the issues raised herein. Former rule 2-200 stated: (A) A member shall not divide a fee for legal services with a lawyer who is not a partner of, associate of, or shareholder with the member unless: (1) The client has consented in writing thereto after a full disclosure has been made in writing that a division of fees will be made and the terms of such division; and (2) The total fee charged by all lawyers is not increased solely by reason of the provision for division of fees and is not unconscionable as that term is defined in rule 4-200. Rule 2-200 Financial Arrangements Among Lawyers, State Bar of California website, available at: http://www.calbar.ca.gov/Attorneys/Conduct-Discipline/Rules/Rules-of-Professional-Conduct/Previous-Rules/Rule-2-200.

13

attorney cannot enforce a fee-sharing agreement if that attorney could have obtained written client consent as required by Rule 1.5.1 (former rule 2-200), but failed to do so. *See id*. at 156-159 (discussing relevant precedent); *Barnes, Crosby, Fitzgerald & Zeman, LLP v. Ringler,* 212 Cal.App.4th 172, 180-183 (2012) (same). Oral consent by the client to the fee-sharing agreement is not sufficient to satisfy the requirement. *Margolin v. Shemaria,* 85 Cal.App.4th 891, 896 (2000).

30. Here, the fee-sharing "agreement" between Plaintiff and Girardi Keese is unenforceable under California law. As in *Chambers,* the letter from Mr. Griffin dated April 3, 2019 regarding the "Boeing Cases" and the letter from Mr. Lira dated June 17, 2019 regarding the "Lion Air Cases" were not signed by any of the clients. [Saba Affidavit, Exhs. 1, 2]. Therefore, the fee-sharing "agreements" violate Rule 1.5.1 and cannot be enforced. Edelson is not entitled to any attorneys' fees from the Lion Air cases, and Plaintiff's third count for breach of contract should be dismissed.

## VII. THERE IS NO NEED FOR AN ACCOUNTING

31. "Under Illinois law, to state a claim for an equitable accounting, a plaintiff must show the absence of an adequate remedy at law and one of the following: (1) a breach of fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *Rosenstock v. Sollars*, No. 18 C 4554, 2018 WL 5808471, at *2 (N.D. Ill. Nov. 6, 2018).

32. Plaintiff alleges an accounting is appropriate because "any information on the current status and location of that money is within the exclusive knowledge of Defendants." [Complaint ¶ 99]. In other words, Plaintiff alleges a need for discovery. However, no discovery is necessary because the fee-sharing agreements between Plaintiff and Girardi Keese were not signed by any of the clients and therefore the agreements are unenforceable under Illinois law. Plaintiff is not entitled to a share of the fees and there is no need for an accounting.

## VIII. DEFENDANT DID NOT POSSESS ANY OF PLAINTIFF'S PROPERTY

33. "To prove conversion in Illinois, a plaintiff must show that: (1) he has a right to the property at issue; (2) he has an absolute and unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Finite Res., Ltd. v. DTE Methane Res., LLC*, No. 19-CV-802-SMY, 2021 WL 1150252, at *2 (S.D. Ill. Feb. 22, 2021).

34. Plaintiff alleges that it has a contractually created property right to specific percentages of the attorneys' fees generated by those settlement funds" and "an absolute and unconditional right to the immediate possession of the attorneys' fees…" [Complaint ¶¶ 116-117]. Plaintiff is incorrect because the fee-sharing agreements between Plaintiff and Girardi Keese were not signed by any of the clients and therefore the agreements are unenforceable under Illinois law. Plaintiff is not entitled to a share of the fees and therefore the defendants did not wrongfully possess any of Plaintiff's property.

## IX. CONCLUSION

For the foregoing reasons, Defendant Keith Griffin respectfully requests that the Court dismiss Plaintiff's Count I for unjust enrichment, Count II for accounting, Count III for breach of contract, and Count V for conversion.

Respectfully submitted,

*/s/ Ryan Saba*
Ryan Saba – Pro Hac Vice
Rosen Saba LLP
9350 Wilshire Boulevard, Suite 250
Beverly Hills, CA 90212
Telephone: (310) 285-1727
Fax: (310) 285-1728
rsaba@rosensaba.com
**One of the Attorneys for Defendant, Keith Griffin, an individual**

John. A. O'Donnell, Sr.
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – fax
jodonnellsr@cassiday.com
*Attorney for Defendant, Keith Griffin*