# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | |
|---|---|
| EDELSON PC, | Case No.: 20-cv-07115 |
| *Plaintiff,* | |
| | Hon. Matthew F. Kennelly |
| v. | |
| THOMAS GIRARDI, et al. | |
| *Defendants.* | |

### PLAINTIFF'S MOTION TO COMPEL DEFENDANT LIRA
### TO PRODUCE ADDITIONAL DOCUMENTS AND
### TO PROVIDE ADDITIONAL INFORMATION REGARDING HIS PRIVILEGE LOG

This case concerns the theft of settlement money that was to be held in trust by the Girardi Keese firm—funds which included both client money and Plaintiff Edelson's attorneys' fees. Plaintiff Edelson is trying to determine where that settlement money went and who is culpable for that misappropriation. Defendant David Lira has refused to produce basic discovery relevant to Edelson's claims: (1) documents related to the wire transfers from Boeing to Girardi Keese, and (2) communications with the clients, Thomas Girardi, and others within the firm concerning the settlement money. He has also refused to produce documents from prior state bar investigations into Girardi Keese for misappropriation of client money—evidence relevant to both Plaintiff's pending claims and to claims that might be brought against Mr. Lira.

Mr. Lira primarily interposes relevance objections, which considerably misread the serious issues in this case. Additionally, Mr. Lira is withholding certain communications with the clients and third parties based on privilege, which has been waived to the extent it would apply. These documents should be compelled, and Mr. Lira should provide additional information regarding a number of the documents on the privilege log. The Court should grant the motion.

## BACKGROUND

Plaintiff served its First Set of Requests for Production on Mr. Lira on October 18, 2021. (Declaration of J. Eli Wade-Scott ("Wade-Scott Decl.") ¶ 2, Ex. A.[1]) Mr. Lira served initial objections and responses on November 22, 2021, (*id.* ¶ 3, Ex. B), served supplemental objections and responses on March 4, 2022 (*id.*, Ex. C), and served a privilege log on March 9, 2022 (*id.* ¶ 4, Ex. D). To date, Mr. Lira has produced only two documents in response to Plaintiff's Requests. (*Id.* ¶ 5.) Mr. Griffin—the other remaining defendant not subject to a stay—has produced zero responsive documents and is the subject of a parallel motion to compel. (*Id.* ¶ 6.)

In light of the Defendants' assertions that they have essentially no responsive documents, Plaintiff has sought necessary discovery from third parties, and issued eight subpoenas prior to the last status before the Court. (*See* dkt. 110.) Meanwhile, the Parties engaged in a three-day evidentiary hearing in December 2021 before Judge Durkin in *In re Lion Air*, No. 18-cv-7686 (N.D. Ill.). There, Plaintiff received limited, informal discovery from the Girardi Keese Trustee, along with documents produced by other third parties as a result of informal requests—much of which came in just before the hearing began. (*See* Wade-Scott Decl. ¶ 7; *see also* Ex. E (Edelson PC's Mot. to Suppl. Record on Contempt, dkt. 1337, *In re Lion Air*, No. 18-cv-7686 (N.D. Ill.)).) In late January, in response to a subpoena issued in this case, the Girardi Keese Trustee produced an additional 4,400 documents of internal firm emails from the relevant period, which further demonstrate Defendants' culpability and have identified additional potentially-culpable individuals. (Wade-Scott Decl. ¶ 9.) Plaintiff has now issued ten additional subpoenas, with a response date of March 24, 2022. (*Id.* ¶ 10.)

---

[1] All exhibits cited in this motion refer to the exhibits described in and attached to the Declaration of J. Eli Wade-Scott.

Plaintiff made good faith efforts to meet and confer with Mr. Lira regarding the outstanding discovery requests and sought to ensure that Mr. Lira had in fact produced all responsive documents. In response, Plaintiff has received a privilege log and objections that make clear that Mr. Lira is withholding responsive, non-privileged documents. Specifically, Plaintiff's counsel wrote to Mr. Lira's counsel on February 18, 2022, regarding numerous deficiencies in Mr. Lira's discovery responses, including the Requests discussed here. (Wade-Scott Decl., Ex. F.) Mr. Lira responded to Plaintiff's letter on March 4 and issued supplemental responses to more than half of Plaintiff's document requests. (*Id.*, Ex. G; Ex. C.) Then on March 9, Mr. Lira produced for the first time a privilege log detailing dozens of responsive documents withheld on the basis of purported attorney-client privilege, work-product protection, "Boeing privilege/confidentiality issues," and/or overbreadth. (Ex. D.) After reviewing these additional materials, Plaintiff's counsel met and conferred telephonically with Mr. Lira's counsel on March 11, 2022. (Wade-Scott Decl. ¶ 13.) The Parties were unable to reach an agreement regarding the Requests outlined below or regarding the privilege log. (*Id.*)

In light of the Court's order that any motions to compel relating to written discovery shall be filed by March 14, 2022 (*see* dkt. 112), Plaintiff moves to compel these limited sets of documents that Mr. Lira is withholding.

**ARGUMENT**

In general, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The term "relevant" has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Janopoulos v. Harvey L. Walner & Assocs., Ltd.*, No. 93 C 5176, 1994 WL 61801, at

3

*2 (N.D. Ill. Feb. 17, 1994) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). "[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is designed to help define and clarify the issues." *Id.* And "[i]f discovery appears relevant, the burden is on the party objecting to a discovery request to establish the request is improper." *Doe v. Loyola Univ. Chicago*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020).

Each Request identified below seeks information that is relevant to Plaintiff's claims. Mr. Lira has failed to show that any of the discovery should not be allowed and has failed to justify withholding many of the documents listed on his privilege log. The Court should compel the production of responsive documents and additional information regarding the privilege log.

**I.      Documents Related to Wire Transfers from Boeing to Girardi Keese (RFP No. 9)**

Plaintiffs' RFP No. 9 seeks "All Documents Related to wire transfers from Boeing to Girardi Keese (Including transfers to third parties associated with Girardi Keese and transfers made for the benefit of Girardi Keese), Including relevant bank statements, receipts, and/or confirmations." (Ex. A at 11.) These documents are relevant to the central issue in this case: Plaintiff's allegation that Girardi Keese, through at least Thomas Girardi, David Lira, Keith Griffin, and Chris Kamon, misappropriated the money it received from Boeing—money that included both client settlement funds and Plaintiff's attorneys' fees. (*See, e.g.*, Compl. ¶ 63.) Plaintiff also alleges that funds transferred by Boeing to Girardi Keese "have unlawfully been transferred to and are being retained by" other third parties, such as California Attorney Lending, Erika Girardi, EJ Global, and Johnston Hutchinson & Lira. (*Id.* ¶¶ 89-91). Documents related to wire transfers from Boeing to either Girardi Keese or to third parties are squarely relevant to tracing the path of the money owed to Plaintiff.

4

Mr. Lira has refused to produce any documents in response to this Request, but none of his objections justify limiting this relevant discovery. First, Mr. Lira's objection that the phrase "transfers to third parties associated with Girardi Keese and transfers made for the benefit of Girardi Keese" is vague and ambiguous should be overruled, since the ordinary meaning of the language is clear and since "not understand[ing] what documents are being sought" is not a valid reason to withhold documents. (Ex. C at 8.)

Mr. Lira also objects that the Request "seeks private financial information protected by statute, case law and the California Constitution." (*Id.*) This objection, to the extent it makes sense at all, is obviated by the Confidentiality Order entered in this case, which mandates that "no party may withhold information from discovery on the ground that it requires protection greater than that afforded by this Order unless the party moves for an order providing such special protection." (Dkt. 106 ¶ 8.) Mr. Lira may designate responsive documents "Confidential," but he may not withhold responsive documents in his possession or control on the basis of these objections.

Finally, Mr. Lira's objection that the Request seeks information that is "confidential and protected by a protective order in the Lion Air Litigation" (Ex. C at 8) misunderstands the nature of the confidentiality order entered in the *In re Lion Air* case (or any confidentiality order that would be entered in this District, for that matter). (*See* Wade-Scott Decl., Ex. H (Confidentiality Order, dkt. 1199, *In re Lion Air*, No. 18-cv-7686).) The *Lion Air* confidentiality order is not a bar to the discovery of material that is subject to it, and it explicitly provides for the possibility that material that is subject to the order might have to be produced in other litigation. (*Id.* ¶ 11.) While Mr. Lira may have an obligation to notify a designating party (*id.*), there is no barrier to production here, particularly since Mr. Lira has the option to designate documents "Confidential"

5

under the terms of the Confidentiality Order in this action. (Dkt. 106.) Moreover, the *Lion Air* confidentiality order applies only to materials "produced or adduced in the course of the contempt proceedings" (Ex. H at 1), so it has no bearing on documents that Mr. Lira already had in his possession or control, independent of those contempt proceedings. Mr. Lira's objections related to the "protective order in the Lion Air Litigation" should therefore be overruled.

To be clear, Plaintiff knows—from third-party subpoenas—when the Boeing money was wired and its initial recipients (Girardi Keese's IOLTA accounts, California Attorney Lending II, and Anthony Koushan's IOLTA account). But Mr. Lira's objections to this Request make clear that he is in possession of responsive documents related to these wires and is refusing to produce them—which is a considerable red flag given how central the Boeing wires are to the case. The Court should compel Mr. Lira to produce responsive documents, including any documents responsive to this Request that were improperly listed on the privilege log, as discussed further below.

**II.     Communications with Lion Air Clients, Thomas Girardi, or Any Other Girardi Keese Employees Related to the Boeing Settlement (RFP Nos. 11-13)**

Request No. 11 seeks "All Communications between You and any of the Lion Air Clients Related To settlement with Boeing Company and/or settlement money, Including all letters, emails, text messages (SMS), WhatsApp messages, or any other form of electronic Communication." (Ex. A at 12.) And similarly, Requests Nos. 12-13 ask for "All Communications" between Mr. Lira on the one hand and Thomas Girardi (RFP No. 12) or "any other Girardi Keese partners, attorneys, and employees" (RFP No. 13) on the other hand, that are "Related To settlement money in the Lion Air Cases, Including all letters, memoranda, records of phone calls, or any form of electronic Communication." (*Id.* at 12.) Mr. Lira has refused to produce any responsive documents for these three Requests. (Ex. C at 9-13.)

6

Each of these requests is limited to communications that are related to the Boeing settlement. Mr. Lira's objection, then, that these Requests "seek[] production of documents unrelated to the facts of this case" is more than a little surprising. (*Id.*) The Requests seek evidence that Girardi Keese (and its attorneys) misappropriated the settlement money paid by Boeing—money that included both the funds due to the *Lion Air* clients and the funds due to Plaintiff. There is no question that the attorneys' fees owed to Plaintiff were commingled with the settlement funds owed to the *Lion Air* clients, so Mr. Lira's communications—with the clients, Thomas Girardi, or other Girardi Keese employees—about this money is plainly relevant in this case. (*See also* dkt. 91 at 22-23 ("An accounting of all *Lion Air* transactions makes sense and seems prudent, as the fee-sharing agreements between Edelson and Girardi Keese are dependent on the settlement amount for the *Lion Air* clients.").) Mr. Lira's repeated objections about Edelson's standing to seek remedies on behalf of the *Lion Air* clients are a red herring (Ex. C at 9-13); the Requests seek information relevant to the misappropriation of the attorneys' fees owed to Plaintiff.

Mr. Lira's other objections fare no better. First, the repeated, conclusory objection that the Requests are "[o]verbroad as to all communications and 'any of the Lion Air Clients'" do not describe any burden associated with producing responsive documents, so should be ignored.[2] (*Id.*) Nor does the objection fairly state what the task is, which is only to produce communications "Related To settlement money." (Ex. A at 12.) Second, Mr. Lira's repeated objection that "the settlements in the Lion Air action are confidential and protected by a protective order in the Lion Air litigation" does not justify withholding responsive documents,

---

[2] To the extent Mr. Lira's Supplemental Response can be read to assert that the Request seeks privileged communications between Mr. Lira and *Lion Air* clients who were fully paid, Mr. Lira may withhold those communications and describe them in his privilege log—which he appears to have done.

7

for the reasons discussed above. (Ex. C at 9-13.) To the extent that anyone has a confidentiality interest in these documents, Mr. Lira should notify them, and the documents can be designated confidential under the Order here.

The Court should order Mr. Lira to produce documents responsive to all three of these Requests, including any responsive documents that were improperly listed on the privilege log, as discussed further below.

### III. Documents Related to Any State Bar Investigation of Fund Misappropriation by Mr. Lira or Any Girardi Keese Attorneys (RFP No. 18)

In Request No. 18, Plaintiff seeks "All Documents Related To any inquiry or investigation by any state bar or other disciplinary authority involving the misappropriation or alleged misappropriation of funds by You or any Girardi Keese attorney." (Ex. A at 13.) Mr. Lira refuses to produce any documents based on a single objection that the "request seeks confidential and privileged information." (Ex. C at 17.) In his response to Plaintiff's deficiency letter, Mr. Lira further adds that "there is absolutely no relevance of these documents to this litigation," though he did not make that objection in either his initial or supplemental responses. (Ex. G at 6.)

The relevance of the Request is plain: Plaintiff requested documents from Mr. Lira to identify prior occasions in which the exact conduct that occurred here—the misappropriation of client funds—happened before. Mr. Lira's knowledge of, or participation in, prior misappropriation of client money affects his level of culpability in this theft. Mr. Lira has consistently maintained that he has no prior knowledge of Mr. Girardi or Girardi Keese misappropriating money. (*See, e.g.*, Wade-Scott Decl., Ex. I at 9 (Mr. Lira's Response to Interrogatory No. 9, stating: "[D]uring the period of time he worked at Girardi Keese, Lira was not aware that Thomas Girardi and/or Girardi Keese misappropriated money from client trust accounts.").) Whether or not that is true is relevant both to Plaintiff's pending claims, *cf. In re*

8

*Hill*, 156 B.R. 998, 1008 (Bankr. N.D. Ill. 1993) (knowledge of transferee relevant to turnover claim), and to intentional or fraud-based claims that Plaintiff might allege, *see, e.g.*, *Wendorf v. Landers*, 755 F. Supp. 2d 972, 981 (N.D. Ill. 2010) ("Under Illinois law, punitive damages may be awarded for conversion and for violations of the ICFA based on unfair conduct in cases where the defendant acts maliciously or with deliberate indifference."). Mr. Lira appears to recognize the relevance of his knowledge that Girardi Keese had previously stolen client money—having answered other discovery requests about it—but is aggressively resisting this one.

Mr. Lira also objects that the request "seeks confidential and privileged information protected from disclosure by California Business & Professions Code Section 6086.1(b)." (Ex. C at 17.) That rule does not shield information related to a state bar investigation from discovery. *Janopoulos*, 1994 WL 61801, at *3 (considering analogous Illinois rule, and finding that "Supreme Court Rule 766 simply closes certain portions of the disciplinary process off from the public; the rule does not act as a shield to prevent Walner from having to produce documents requested by Janopoulos. Evidence of professional ethics violations is not only discoverable but may be admissible under Fed. R. Evid. 608(b)."); *see also Webster Bank, N.A. v. Pierce & Assocs., P.C.*, No. 16 C 2522, 2018 WL 704693, at *5 (N.D. Ill. Feb. 5, 2018). In any event, the California rule prohibits the state bar from disclosing investigations that have not resulted in disciplinary proceedings "pursuant to any state law." Cal. Bus. & Prof. Code § 6086.1(b). Federal Rule of Civil Procedure 34 is not a state law. The Court should order Mr. Lira to produce these materials.

**IV.     Mr. Lira's March 9, 2022 Privilege Log**

After Plaintiff's February 18, 2022 letter, Mr. Lira produced a privilege log on March 9, 2022—five days before the deadline for motions to compel. (Wade-Scott Decl. ¶ 4.) The limited

9

information provided in Mr. Lira's privilege log suggests that numerous documents have been improperly withheld, so the Court should order Mr. Lira to produce any documents withheld on the basis of inapplicable objections and to provide additional information to support his assertions of privilege and/or work-product protection.

First, the log improperly asserts privilege over Mr. Lira's communications involving or relating to the five at-issue *Lion Air* plaintiffs. (*See, e.g.*, Ex. D at 2 (4/13/20 email from *Lion Air* plaintiff Anice Kasim ("anice iryani"), copying Keith Griffin, David Lira, and the other at-issue clients: Bias Ramadhan ("biascst@yahoo.co.id"), Dian Daniaty ("diandaniaty24@gmail.com"), and Septiana Damayanti ("safety.ana13@gmail.com")).) Mr. Lira's counsel is well aware that the five *Lion Air* plaintiffs have each waived privilege with respect to their communications with Girardi Keese, given the parallel contempt proceedings in which most of the evidence against Mr. Lira included otherwise-privileged communications. In any event, the clients have provided a written waiver, through counsel. (Wade-Scott Decl., Ex. J; *see also* Ex. F at 7 (Plaintiff's February 18 letter stating "Edelson has affirmed that each of these clients has waived attorney-client privilege and encouraged Mr. Lira to confirm this with each client's counsel.")). There is no basis to withhold these documents, and the Court should order them to be produced.

Second, Mr. Lira asserts "Boeing privilege/confidentiality issues" as a justification for withholding over 60 emails listed in the privilege log. (Ex. D.) But it is not Mr. Lira's responsibility to assert Boeing's confidentiality interests, and this is not a cognizable basis to withhold documents. Mr. Lira should instead alert Boeing that he must produce these documents, pursuant to his discovery obligations, and Boeing may (or Mr. Lira may) designate them confidential. The Court should disregard Mr. Lira's objections on the basis of "Boeing

10

privilege/confidentiality issues" and order him to produce documents that are otherwise discoverable.

Third, for many of the entries, Mr. Lira objects that the email "relates to a Lion Air Plaintiff not at issue in this litigation" or that "Edelson is not seeking funds related to the clients at issue in these communications" (*See generally* Ex. D.) As an initial issue, objections of relevance or overbreadth are not valid reasons to withhold responsive documents, so any emails withheld solely on that basis must be produced. (*See, e.g.*, *id.* at 3 (4/24/2020 entry where only objection is that "this letter also relates to clients who Edelson has stated that it is not seeking funds related to their matters").) Moreover, while Plaintiff agrees that some of the *Lion Air* clients have not waived privilege and that emails *solely* reflecting those clients' confidential communications with their attorneys may be privileged, it is not clear from the information provided in the privilege log whether the withheld emails relate *solely* to clients not at issue, or whether some emails may also relate to the five at-issue clients, or to the *Lion Air* settlement money more generally. (*See, e.g.*, *id.*) The Court should order Mr. Lira to clarify whether documents withheld on the basis of attorney-client privilege relate *only* to clients not at issue. If there are emails involving both at-issue and not-at-issue clients, then Mr. Lira must produce a partially redacted version of the email.

Fourth, Mr. Lira asserts attorney-client privilege over many emails that were not sent to or from any clients. For example, the 10/28/2019 entry is described as an "Email from Rachel Manning, Ken Behzadi, Anthony Koushan, Keith Griffin, Maria Carlos and Shawna Mills." (Ex. D at 1.) None of those participants are clients in the *Lion Air* case, but Mr. Lira's objection is "Attorney client privilege." It is not possible for Plaintiff to determine, based on the information provided in the privilege log, whether emails like this one actually contain or reflect confidential

11

communications between a client and his/her lawyer. The Court should order Mr. Lira to provide further information as to the basis for his assertion of privilege over emails that do not include any clients.

Fifth, Mr. Lira asserts that many of the emails in the privilege log are "work product" (*e.g.*, Ex. D at 1, 6-14, 16-19), but this assertion does not suffice to withhold all the emails in the log. For one thing, the five at-issue *Lion Air* clients have provided a written waiver stating that "[t]o the extent [they] hold work-product privilege with respect to materials created by Girardi Keese, Thomas Girardi, Keith Griffin, and David Lira on or after [they] signed their settlement agreements with Boeing, they waive such privilege." (Ex. J.) In addition, the work-product privilege is "not absolute." *Fields v. City of Chicago*, No. 10 C 1168, 2012 WL 6705419, at *3 (N.D. Ill. Dec. 26, 2012). Under Fed. R. Civ. P. 26(b)(3), "work product is discoverable if it is relevant and the party seeking discovery 'shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means.'" *Id.* Here, it appears that some of the withheld communications are highly relevant, since communications between Mr. Lira and other attorneys or staff regarding the *Lion Air* settlement money go to the heart of Plaintiff's claims that Girardi Keese and its attorneys misappropriated both Plaintiff's fees and client money. Such communications about settlement money likely do not involve attorneys' "mental impressions" or "legal theories," but rather are factual communications subject only to qualified protection. *Id.* Plaintiff has a "substantial need" to discover such communications to support its claims, and there is no "substantial equivalent" to the contemporaneous communications among Girardi Keese employees. Because the qualified protection for fact work-product likely does not apply to some of these withheld emails, the Court should order Mr. Lira to provide further information as to the basis for his assertion of

12

work product over emails relating to the *Lion Air* settlement money. If the Court views Mr. Lira's assertion of work product as potentially plausible, Plaintiff asks that the Court review these materials *in camera* to determine if the emails merit work-product protection.

## CONCLUSION

For all the foregoing reasons, the Court should grant this Motion and enter an order compelling Mr. Lira (i) to produce documents responsive to the five Requests detailed above, including any documents improperly included on the privilege log, (ii) to produce any other documents improperly included on the privilege log, and (iii) as appropriate, to substantiate the assertions of privilege and work-product protection in his privilege log.

Respectfully submitted,

**EDELSON PC**

Dated: March 14, 2022

By: */s/* J. Eli Wade-Scott
One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Alexander G. Tievsky
atievsky@edelson.com
J. Eli Wade-Scott
ewadescott@edelson.com
Angela Reilly
areilly@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378