## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

|  |  |
|---|---|
| EDELSON PC, | Case No.: 20-cv-07115 |
| *Plaintiff,* | |
| *v.* | Hon. Matthew F. Kennelly |
| THOMAS GIRARDI, et al. | |
| *Defendants.* | |

## PLAINTIFF'S MOTION TO COMPEL DEFENDANT GRIFFIN TO PRODUCE DOCUMENTS AND TO RESPOND TO INTERROGATORIES AND REQUESTS FOR ADMISSION

This case concerns the theft of settlement money that was to be held in trust by the Girardi Keese firm—funds which included both client money and Plaintiff Edelson's attorneys' fees. Plaintiff Edelson is trying to determine where that settlement money went and who is culpable for that misappropriation. Defendant Keith Griffin has refused to produce basic discovery relevant to those claims: (1) discovery regarding compensation he received from Girardi Keese after the misappropriated settlement money arrived in Girardi Keese's accounts; and (2) communications with the clients, Thomas Girardi, others within the firm, and Bob Finnerty concerning the settlement money. He has also refused to produce discovery related to prior instances of misappropriation or state bar investigations into Girardi Keese regarding the same—evidence relevant to both Plaintiff's pending claims and claims that might be brought against Mr. Griffin. Finally, Mr. Griffin has failed to respond fully to basic Requests for Admission regarding memoranda he sent related to the settlement money, claiming that his counsel's November 2021 office relocation prevent him from accessing computer files.

Mr. Griffin primarily interposes relevance objections, which considerably misread the serious issues in this case. He also asserts privilege, which has been waived to the extent it would apply. Because none of his objections have merit, the Court should grant the motion and compel the discovery.

## BACKGROUND

Plaintiff served its first set of discovery requests (Requests for Production, Interrogatories, and Requests for Admission) on Mr. Griffin on October 18, 2021. (Declaration of J. Eli Wade-Scott ("Wade-Scott Decl.") ¶ 2, Exs. A-C.[1]) Mr. Griffin served objections and responses on November 24, 2021. (*Id.* ¶ 3, Exs. D-F). To date, Mr. Griffin has not produced *a single document* in response to Plaintiff's Requests. (*Id.* ¶ 4.) Mr. Lira—the other remaining defendant not subject to a stay—has produced only two documents and is the subject of a parallel motion to compel. (*Id.* ¶ 5.)

In light of the Defendants' assertions that they have essentially no responsive documents, Plaintiff has sought necessary discovery from third parties, and issued eight subpoenas prior to the last status before the Court. (*See* dkt. 110.) Meanwhile, the Parties engaged in a three-day evidentiary hearing in December 2021 before Judge Durkin in *In re Lion Air*, No. 18-cv-7686 (N.D. Ill.). There, Plaintiff received limited, informal discovery from the Girardi Keese Trustee, along with documents produced by other third parties as a result of informal requests—much of which came in just before the hearing began. (*See* Wade-Scott Decl. ¶ 6; *see also* Ex. G (Edelson PC's Mot. to Suppl. Record on Contempt, dkt. 1337, *In re Lion Air*, No. 18-cv-7686 (N.D. Ill.)).) In late January, in response to a subpoena issued in this case, the Girardi Keese Trustee produced an additional 4,400 documents of internal firm emails from the relevant period, which further

---

[1]    All exhibits cited in this motion refer to the exhibits described in and attached to the Declaration of J. Eli Wade-Scott.

demonstrate Defendants' culpability and have identified additional potentially-culpable individuals. (Wade-Scott Decl. ¶ 8.) Plaintiff has now issued ten additional subpoenas, with a response date of March 24, 2022. (*Id.* ¶ 9.)

Plaintiff made good faith efforts to meet and confer with Mr. Griffin regarding the outstanding discovery requests and sought to ensure that Mr. Griffin had actually searched for responsive documents. In response, Plaintiff received a letter from Mr. Griffin suggesting that he is withholding responsive, non-privileged documents. Specifically, Plaintiff's counsel wrote to Mr. Griffin's counsel on February 18, 2022, regarding numerous deficiencies in Mr. Griffin's discovery responses, including the Requests and Interrogatories discussed here. (Wade-Scott Decl., Ex. H.) Mr. Griffin responded to Plaintiff's letter on March 2, 2022, but did not issue any amended or supplemental responses. (*Id.*, Ex. I.) In addition, Plaintiff's counsel met and conferred telephonically with Mr. Griffin's counsel on March 11, 2022. (*Id.* ¶ 12.) The Parties were unable to reach an agreement regarding the Requests and Interrogatories outlined below. (*Id.*)

In light of the Court's order that any motions to compel relating to written discovery shall be filed by March 14, 2022 (*see* dkt. 112), Plaintiff moves to compel these limited sets of documents and responses that Mr. Griffin is withholding.

## ARGUMENT

In general, "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The term "relevant" has been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Janopoulos v. Harvey L. Walner & Assocs., Ltd.*, No. 93 C 5176, 1994 WL 61801, at

*2 (N.D. Ill. Feb. 17, 1994) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351

(1978)). "[D]iscovery is not limited to issues raised by the pleadings, for discovery itself is

designed to help define and clarify the issues." *Id.* And "[i]f discovery appears relevant, the

burden is on the party objecting to a discovery request to establish the request is improper." *Doe*

*v. Loyola Univ. Chicago*, No. 18 CV 7335, 2020 WL 406771, at *2 (N.D. Ill. Jan. 24, 2020).

Each Request and Interrogatory identified below seeks information that is relevant to

Plaintiff's claims, and Mr. Griffin has failed to show that any of the discovery should not be

allowed. The Court should compel responses.

## I. Evidence Concerning Mr. Griffin's Compensation After the *Lion Air* Settlement (RFP No. 5, Interrogatories Nos. 3-4)

Mr. Griffin has refused to answer a number of discovery requests concerning his

compensation after Girardi Keese received the *Lion Air* settlement money from Boeing. The

relevant Requests are:

> RFP No. 5: Documents sufficient to Identify all money, compensation, or other payments You received from Girardi Keese in 2020, Including all paystubs, Your 2020 Form W-2 from Girardi Keese, and any bonus payments.
>
> Interrogatory No. 3: Describe the total compensation You received on or after February 1, 2020 Related To Your employment at Girardi Keese, Including the amount of any base salary each year; the amount of any bonus(es) each year; the amount of any dividend, distribution, or ownership-based income each year; and any other forms of monetary or non-monetary compensation.
>
> Interrogatory No. 4: Describe how the compensation Described in response to Interrogatory No. 3 was calculated.

(Ex. A at 10; Ex. B at 7.) Mr. Griffin has objected to each of these Requests on relevance

grounds and has refused to answer or search for responsive documents. (Ex. D at 8; Ex. E at 5-6.)

Plaintiff issued these discovery requests to Mr. Griffin to determine his compensation by

the Girardi Keese firm after February 1, 2020—the date the *Lion Air* settlement money began

coming into Girardi Keese's accounts from Boeing. That money, including Edelson's fees, was stolen by the Girardi Keese firm. If Mr. Griffin received any of that money, he may have done so through compensation. (*See* Wade-Scott Decl., Ex. J (March 5, 2020 emails between David Lira and Chris Kamon; motion for leave to file under seal pending).) Mr. Griffin has already testified, in the parallel contempt proceedings, that he kept receiving his salary long after he was aware that the money from the clients had been misappropriated. (*Id.*, Ex. K (excerpt of *In re Lion Air* contempt hearing, 165:22-166:5: "THE COURT: Okay. And you were still getting paid throughout this whole period even though – well, it was obvious some people weren't getting paid, the Boeing people. . . . You were still getting paid up until December of 2020; is that correct? [GRIFFIN]: Up until the end of November.").) Mr. Griffin's salary and any other payments he received from Girardi Keese during this time period are accordingly discoverable, as they could contain the *Lion Air* settlement funds.

Mr. Griffin's position is that this information is private and undiscoverable pursuant to California state discovery rules, arguing that those rules apply in this diversity action.[2] That is—at the Civil Procedure 1 level—wrong. *Fid. Nat. Title Ins. Co. of New York v. Intercounty Nat'l Title Ins. Co.*, 412 F.3d 745, 750 (7th Cir. 2005) ("The Federal Rules of Civil Procedure, not state procedural rules, govern in diversity, as they do in federal-question, cases in federal district courts."). And even if the California rules somehow applied, they say no such thing. The code section cited by Mr. Griffin allows a defendant, for good cause, to obtain a protective order to avoid discovery into financial condition prior to a *prima facie* damages showing by the plaintiff.

---

[2]     Specifically, Mr. Griffin's response to Edelson's deficiency letter says "Mr. Griffin enjoys a right to financial privacy. Since this is a diversity action, then state law supplies the rule of decision. Privacy claims are determined under applicable state law. Mr. Griffin is a California resident. California law recognizes a protection of financial information from discovery. Please review California *Civil Code* §3295." (*See* Ex. I at 1-2 (italics in original).)

Cal. Civ. Code § 3295(a). That is, the cited provision in no way justifies refusing to produce responsive documents or refusing to answer interrogatories. Mr. Griffin must be compelled to respond to these requests.

## II. Communications With Lion Air Clients, Girardi Keese Employees, and Bob Finnerty Related to the Boeing Settlement (RFP Nos. 10, 12, 13)

Plaintiff also requested "All Communications" Mr. Griffin had with the *Lion Air* clients (RFP No. 10) or with any Girardi Keese employees (RFP No. 12) related to the Boeing settlement, and "All Communications" Mr. Griffin had with Bob Finnerty regarding "the Lion Air cases, the Lion Air Clients, this lawsuit, or any other potential litigation stemming from Girardi Keese's involvement in the Lion Air Cases" (RFP No. 13). (Ex. A at 11-12.) Mr. Griffin objected to all three requests on the basis of relevance, refused to produce documents in response to RFP Nos. 10 or 13, and claimed that he has no documents responsive to RFP No. 12. (Ex. D at 13-16.)

Mr. Griffin's relevance objections fall far short. Mr. Griffin's communications with the *Lion Air* clients and with other Girardi Keese employees regarding the Boeing settlement money go to the heart of Plaintiff's claim that Girardi Keese misappropriated that money—which included funds owed both to Plaintiff and to the clients—and that Mr. Griffin helped facilitate and cover-up that misappropriation. There is no question that the attorneys' fees owed to Plaintiff were commingled in Girardi Keese bank accounts with the settlement funds owed to the *Lion Air* clients, so Mr. Griffin's communications about this common set of funds are certainly relevant.

Mr. Griffin's communications with Bob Finnerty regarding the *Lion Air* case are also relevant to Mr. Griffin's awareness of the misappropriation of settlement money, since Bob Finnerty was a former Girardi Keese attorney and since Mr. Griffin recommended, just before

this case was filed, that Plaintiff should work with Finnerty to try to recover attorneys' fees from Girardi Keese. (*See* Compl. ¶¶ 59-61.) And Mr. Griffin's knowledge and intent are relevant to Plaintiff's pending claims in the event that Plaintiff seeks turnover of money held by Mr. Griffin. *Cf. In re Hill*, 156 B.R. 998, 1008 (Bankr. N.D. Ill. 1993) (knowledge of transferee relevant to turnover claim). His knowledge is also relevant, of course, to intentional or fraud-based claims that Plaintiff might allege against Mr. Griffin. *See, e.g.*, *Wendorf v. Landers*, 755 F. Supp. 2d 972, 981 (N.D. Ill. 2010) ("Under Illinois law, punitive damages may be awarded for conversion and for violations of the ICFA based on unfair conduct in cases where the defendant acts maliciously or with deliberate indifference."); *see also Janopoulos*, 1994 WL 61801, at *2 (N.D. Ill. Feb. 17, 1994) (discovery rules have been "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, *any issue that is or may be in the case.*") (emphasis in original).

Mr. Griffin's privilege objection in response to RFP No. 10 should also be disregarded. (Ex. D at 11.) Mr. Griffin's counsel is well aware that the five *Lion Air* plaintiffs have each waived privilege with respect to their communications with Girardi Keese, given the parallel contempt proceedings in which most of the evidence against Mr. Griffin included otherwise-privileged communications. In any event, the clients have provided a written waiver, through counsel. (Wade-Scott Decl., Ex. L; *see also* Ex. H at 5 (Plaintiff's February 18 letter stating "Edelson has affirmed that each of these clients has waived attorney-client privilege and encouraged Mr. Griffin to confirm this with each client's counsel.").)

Since none of his objections to these Requests have merit, Mr. Griffin must produce responsive documents. As to RFP No. 12—seeking communications with other Girardi Keese attorneys related to the *Lion Air* settlement money—Mr. Griffin claims that he "has no

documents responsive to this request in his possession, custody, or control." (Ex. D at 15.) But Plaintiff is aware of at least one responsive communication from Mr. Griffin's personal email account in December 2020. (Wade-Scott Decl., Ex. M (December 2020 email from Mr. Griffin to Chris Kamon and John Girardi; motion for leave to file under seal pending).) The Court should order Mr. Griffin to conduct a reasonable search for documents responsive to these Requests and to produce them.

## III. Mr. Griffin's Knowledge of Prior Occasions in which Girardi Keese Attorneys Misappropriated Client Funds (RFP No. 15, Interrogatories Nos. 8-10)

Mr. Griffin has also entirely refused to answer discovery requests aimed at surfacing other occasions in which Girardi Keese attorneys have stolen client money. Those requests are:

RFP No. 15: All Documents Related To any inquiry or investigation by any state bar or other attorney disciplinary authority involving the misappropriation or alleged misappropriation of funds by You or any Girardi Keese attorney (current or former). . . .

Interrogatory No. 8: Identify all occasions, during the period of time You worked at Girardi Keese, on which Thomas Girardi and/or Girardi Keese misappropriated money from client trust accounts.

Interrogatory No. 9: Identify all occasions, during the period of time You worked at Girardi Keese, on which Girardi Keese compromised or otherwise settled a claim by a client or former client who alleged that Girardi Keese or Thomas Girardi misappropriated funds belonging to that client or former Client.

Interrogatory No. 10: Without disclosing privileged information, state the approximate number of occasions, starting from the time you began working at Girardi Keese until the date of filing of this lawsuit, that a Girardi Keese client contacted you to inquire about the status of settlement funds that You knew had already been paid to Girardi Keese's trust account more than 60 days prior.

(Ex. A at 12; Ex. B at 8.) Mr. Griffin objected to each request on the basis of relevance and refused to answer or to search for responsive documents. (Ex. D at 17; Ex. E at 10-12.)

These requests seek documents and information demonstrating Mr. Griffin's knowledge of prior instances where Girardi Keese or Thomas Girardi had misappropriated client funds. On

RFP No. 15, Mr. Griffin claims in his correspondence—echoing Mr. Lira verbatim—that "[t]here is absolutely no relevance of these documents in this litigation." (Ex. I at 2.) Likewise, he objects that Interrogatories Nos. 9-10 are "manifestly irrelevant" to the case. (Ex. E at 11-12.) But these relevance objections should be disregarded. The evidence sought is relevant to Mr. Griffin's knowledge that the settlement funds in this case would be stolen or were stolen. That knowledge, as explained above, is relevant in the event that Plaintiff seeks a turnover of money held by Mr. Griffin, alleges intentional or fraud-based claims, and/or seeks punitive damages.

Mr. Griffin's sole remaining objection to these requests is that Interrogatory No. 10 "calls for the potential disclosure of an attorney-client communication which is protected from disclosure." (Ex. E at 12.) This objection is wrong on its face, since Interrogatory No. 10 explicitly instructs Mr. Griffin not to reveal privileged information and does not ask Mr. Griffin to reveal the identity of any client nor the substance of any communication.

Because RFP No. 15 and Interrogatories Nos. 9-10 seek relevant information, and because Mr. Griffin's objections lack merit, the Court should compel responses to these requests.

## IV. Requests for Admission Nos. 2-5

Finally, Plaintiffs seek an order compelling Mr. Griffin to respond fully to RFA Nos. 2-5, which ask Mr. Griffin to admit that exhibits filed by Mr. Griffin in the *Lion Air* case—and filed under seal in this action at dkt. 57-5—are true and accurate copies of memoranda Mr. Griffin sent to the individuals listed (including David Lira, Thomas Girardi, and Christopher Kamon) on or about the date appearing on each memorandum. (Ex. C at 6-7.) Mr. Griffin objects to each of these Requests as irrelevant and claims that he is "unable to comply with this request" because "Defendant and Defense counsel do not have a copy of this document because Defense counsel's computer system is still not fully operational as of the date of this response due to the relocation

of the office." (Ex. F at 5-9.) Plaintiff agreed to give Mr. Griffin additional time to respond to these Requests in light of his counsel's office relocation in November 2021, but then explicitly requested a response by February 25, 2022. (Ex. H at 5.) Mr. Griffin has yet to supplement his responses to these RFAs. (Wade-Scott Decl. ¶ 3.)

The memoranda referenced in these Requests are relevant to Plaintiff's claims because they relate to the *Lion Air* settlements, the wiring of that money from Boeing to Girardi Keese, and the expected distribution of those funds (among the client, Plaintiff, Girardi Keese, and others). Mr. Griffin should therefore be compelled to respond to these relevant and simple Requests; his counsel's November 2021 office relocation can no longer be an excuse. In the alternative, Plaintiff asks that the Court deem RFA Nos. 2-5 admitted pursuant to Fed. R. Civ. P. 36(a)(3).

## CONCLUSION

For all the foregoing reasons, the Court should grant this Motion and enter an order (i) compelling Mr. Griffin to produce documents responsive to the Requests for Production detailed above, (ii) compelling him to respond to the Interrogatories detailed above, and (iii) either compelling him to respond to RFA Nos. 2-5 or deeming those matters admitted.

Respectfully submitted,

**EDELSON PC**

Dated: March 14, 2022      By: */s/* J. Eli Wade-Scott
One of Plaintiff's Attorneys

Jay Edelson
jedelson@edelson.com
Alexander G. Tievsky
atievsky@edelson.com
J. Eli Wade-Scott

ewadescott@edelson.com
Angela Reilly
areilly@edelson.com
EDELSON PC
350 North LaSalle Street, 14th Floor
Chicago, Illinois 60654
Tel: 312.589.6370
Fax: 312.589.6378