# IN THE UNITED STATES DISTRICT COURT

# FOR THE NORTHERN DISTRICT OF ILLINOIS

# EASTERN DIVISION

| | |
|---|---|
| EDELSON PC, an Illinois Professional corporation, | Case No.: |
| Plaintiff, | 20-cv-07115 |
| THOMAS GIRARDI, an individual, et al., | Honorable Matthew F. Kennelly |
| Defendants. | |

**DEFENDANT DAVID LIRA'S MOTION TO QUASH SUBPOENAS AND FOR PROTECTIVE ORDER**

## I. INTRODUCTION

Mr. Lira seeks an order quashing three requests in Edelson's subpoena to his former firm Johnston & Hutchinson, LLP[1] as they seek documents that are protected by the attorney client privilege and work product protections. Additionally, Mr. Lira seeks a protective order from this court from the broad and unfettered discovery being conducted by Edelson in these proceedings. Edelson has recently served ten (10) subpoenas seeking discovery that is extremely overbroad and seeks information irrelevant to the matters to be adjudicated in this case.

"The subpoena power is a substantial delegation of authority to private parties, and those who invoke it have a grave responsibility to ensure it is not abused. Informing the person served of his right to object is a good start…but it is no substitute for the exercise of independent judgment about the subpoena's reasonableness." *Theofel v. Farey -Jones* (9th Cir. 2004) 459 F3d 1066, 1074. Good cause exists for this court to issue a protective order and motion to quash the instant discovery subpoenas. If a protective order is not issued by this court, Mr. Lira will suffer specific harm and prejudice.

## II. STATEMENT OF FACTS

### A. The Case

Edelson no longer represents the Lion Air Plaintiffs. This Court has ruled that Edelson cannot seek recovery on behalf of the Lion Air Plaintiffs: "[T]o the extent Edelson seeks any remedy on behalf of the *Lion Air* plaintiffs, it lacks standing to do so. Edelson admits it no longer has an attorney-client relationship with the *Lion Air* plaintiffs, and without some other basis for standing Edelson is permitted to vindicate only its own interests and rights." [Dkt. #91, p. 28.]

Edelson's claims in this matter are solely for the referral fees it alleges that it was owed by Girardi Keese for certain Lion Air matters (Anice Kasim, Septiana Damayanti, Dian Daniaty Binti Udin Zaenudin, Bias Ramadhan A.S. Bin Misyadi, and Multi Rizki). Edelson alleges that

---

[1] Johnston & Hutchinson, LLP was originally named in this action. At that time the firm was named Johnston, Hutchinson & Lira. For ease of reference the firm will be referred to as Johnston & Hutchinson.

Griffin and Lira owe Edelson those fees on a theory of aiding and abetting. However, in order for Edelson to be entitled to any monies, there must be a valid and enforceable agreement that entitles them to those fees.

Erika Jayne/Girardi and EJ Global LLC have been dismissed. [Dkt. # 108 and 109.] Mr. Lira's former firm Johnston & Hutchinson has been dismissed. [Dkt. #31 and 34.] The originally named lenders have been dismissed. [Dkt. # 13 and 14; Dkt. # 29 and 30.] Former Girardi Keese Attorney Finnerty and his firm have been dismissed. [Dkt. # 28 and 30.] Thomas Girardi and Girardi Keese are in bankruptcy and cannot be pursued pursuant to 11 U.S.C.A. §362. Default was entered against Girardi Financial, Inc. [Dkt. # 38.] The only remaining defendants are Griffin and Lira.

It is Mr. Lira's understanding that Mr. Griffin is filing a dispositive motion in this matter this week. Mr. Lira anticipates filing a similar dispositive motion shortly. Both motions will ask this court to determine whether there are valid contracts between Edelson, Girardi Keese and the Lion Air Plaintiffs. If there are not valid referral fee contracts, Edelson cannot recover in this action.

### B. The Discovery

Despite the Court's order that Edelson may only collect the fees that it alleges are owed to it, Edelson has used this action for broad and unfettered discovery. Edelson has served at least 17 subpoenas on various entities including but not limited to Girardi Keese's banks, Girardi Keese's lenders, the production companies for the Real Housewives of Beverly Hills, former Girardi Keese attorneys, individuals who worked with clients in the Lion Air matters, co-counsel in the Lion Air matters, and a firm Mr. Lira worked with after Girardi Keese.

Most recently, on March 3, 2022, Edelson notified counsel for Lira it was serving ten (10) subpoenas.[2] [Exs. 1-10; Robie Affidavit ¶¶ 2-12.] It appears that these subpoenas were

---

[2] (1) Johnston & Hutchinson, LLP; (2) Counsel Financial II, LLC; (3) California Attorney Lending II, Inc.; (4) Helping Hands Capital LLC; (5) Wrongful Death Consultants, Inc.; (6) Joseph Dinardo, (7) F. Anthony Koushan; (8) Robert Finnerty; (9) George Hatcher; and (10) Mohamed Eltaher.

3

served the same day that Edelson provided counsel for Lira and Griffin notice of its intent to serve the same subpoenas.[3] [Robie Affidavit ¶ 12.]

The subpoena to Johnston & Hutchinson (Ex.1) seeks information that includes Mr. Lira's attorney client privileged conversations with his counsel in this litigation and the Lion Air contempt proceedings as well as Mr. Lira's work product protected communications with counsel for Thomas Girardi, Girardi Keese, and Johnston & Hutchinson. The requests seek:

- All Communications between You and David Lira Related to the Lion Air Clients. [Ex. 1, Request 1]

- All Communications between You and David Lira Related to the Lion Air Settlement Funds. [Ex. 1, Request 2]

- All Communications between You and any other Person associated with Girardi Keese Related To the Lion Air Clients. [Ex. 1, Request 3]

"You" is defined as "Johnston & Hutchinson LLP, Including any of its predecessors and successors, present and former agents, present and former attorneys, present and former officers, present and former related entities, present and former subsidiaries, and all Persons acting, purporting to act, or that have purported to act on behalf of any of them." [Ex. 1, p. 3.]

Mr. Lira worked at Johnston & Hutchinson from June 2020, when he left Girardi Keese to approximately December 23, 2020. Edelson filed the instant complaint on December 2, 2020. The complaint named both Lira and Johnston & Hutchinson. There were numerous communications between Lira, Johnston & Hutchinson, and Johnston & Hutchinson's counsel regarding the defense of this case. Mr. Lira also believes that there are communications between himself and counsel and other representatives for Girardi Keese and Tom Girardi regarding the defense of this action and the defense of the Lion Air Contempt matter.

---

[3] Notice of any commanded document production must be served on each party before the subpoena is served allowing a party time to object to production. (FRCP 45(a)(1)(D), (4).) All parties must be given reasonable notice of the subpoena so they can object. To afford adequate time for objection, notice must be given well in advance of the production date Rule 45(b)(1).

The other nine (9) subpoenas Edelson served contain numerous requests that on their face are overbroad, burdensome, and clearly not drafted for the purpose of seeking relevant information in this case. The requests seek information designed for Edelson to either attempt to expand the scope of this action, or to file other lawsuits against other entities who are not currently parties to this litigation. For example, Edelson has requested:

- Documents sufficient to Identify every case You have worked on for Girardi Keese, David Lira, Keith Griffin, and/or Thomas Girardi, and the total amount paid to you for such case. [Ex. 5, Request 13; Ex. 9, Request 13.]

- Documents sufficient to Identify amounts owed to You or that You have contended are owed to You by Girardi Keese. [Ex. 5, Request 12; Ex. 9, Request 12; Ex. 10, Request 12.]

- All Communications between You and Erika Girardi. [Ex. 9, Request 5; Ex. 10, Request 5.]

- All Documents related to occasions in which Girardi Keese over committed the percentage of attorneys' fees properly due in a case to multiple attorneys and/or entities; *i.e.*, promised percentages of fees due in a particular case in an amount that ultimately exceeded 100%. [Ex. 9, Request 16; Ex. 7, Request 5; Ex. 8, Request 10; Ex. 10, Request 13; Ex. 6, Request 7; Ex. 2, Request 8; Ex. 3, Request 8; Ex. 4, Request 8.]

- All non-privileged Communications concerning delay of settlement payments to any client of Girardi Keese not the result of express authorization from the client. [Ex. 7, Request 6; Ex. 9, Request 15; Ex. 10, Request 15.]

- Documents sufficient to Identify each domestic or foreign jurisdiction in which You are or ever have been authorized to practice law. [Ex. 9, Request 14; Ex. 10, Request 14.]

- All Documents Related To any analysis of Girardi Keese's financial security and/or earning potential. [Ex. 6, Request 4; Ex. 2, Request 5; Ex. 3, Request 5; Ex. 4, Request 5.]

- All Documents Related To any due diligence research undertaken on or after January 1, 2018, with respect to Girardi Keese, Thomas Girardi, and/or Erika Girardi. [Ex. 6, Request 5; Ex. 2, Request 6; Ex. 3, Request 6; Ex. 4, Request 6.]

- All Documents dating from before December 2, 2020, that state, imply, hypothesize, inquire about, or in any way suggest or refer to mishandling of client funds held by Girardi Keese. For

5

avoidance of doubt, "mishandling of client funds" includes, but is not limited to, unexplained installment payments to clients, unexplained withdrawals of client funds beyond what Girardi Keese was owed in attorneys; fees or costs, unexplained delays in paying clients funds owed to them, and theft of client money. [Ex. 6, Request 6; Ex. 2, Request 7; Ex. 3, Request 7; Ex. 4, Request 7.]

- Documents sufficient to Identify all shareholders of California Attorney Lending II, Inc. [Ex. 6, Request 9.]
- Documents sufficient to Identify and determine the citizenship of all members of Counsel Financial II, LLC. [Ex. 6, Request 10.]
- Documents sufficient to Identify and determine the citizenship of all members of Helping Hands Capital, LLC. [Ex. 6, Request 11.]
- Documents sufficient to Identify any agreement (formal or informal) to pay $50,000 payments for you or any business with which you were previously associated to George Hatcher, Wrongful Death Consultants, Inc., or any related Person. [Ex. 6, Request 12.]
- All Communications between You and George Hatcher Related To the Lion Air Clients. [Ex. 2, Request 9; Ex. 3, Request 9; Ex. 4, Request 9.]
- Documents sufficient to Identify and determine the citizenship of all of Your members. [Ex. 2, Request 10.]
- Documents sufficient to Identify all of Your shareholders. [Ex. 3, Request 10.]
- Documents sufficient to Identify and determine the citizenship of all members of Counsel Financial II LLC. [Ex. 4, Request 10.]

On October 4, 2021, three months after this Court's Order Partially Granting Lira's Motion to Dismiss (Dkt. #91), Edelson filed a Motion to Clarify Scope of Automatic Stay in the Thomas Girardi Bankruptcy. [U.S. Bankruptcy Court for the Central District of California, Los Angeles Division, Case No. 2:20-bk-21020-BR Dkt. # 258; RJN Ex. 13.] The motion stated that Edelson had filed this action "seeking to recover client settlement funds." That, "the clients need to be paid first. The firm's interests accordingly are aligned with the Trustee here: if client funds are located in the firm's pursuit of Erika in the Edelson Action, they will go to the clients… If there are other assets located in Erika's possession that should properly be apportioned by this

6

Court that we discover while pursuing the Edelson Action, Edelson will work with the Trustee to make sure that occurs, at which point those assets will become subject to the jurisdiction of [the bankruptcy court]." (*Id.* at p. 3 lines 16-22.) In Reply, Edelson went even further stating: "Edelson's work in the *Edelson v. Girardi* action will benefit everyone, and Edelson has committed to undertaking the work *pro bono*. Edelson feels an obligation to work for the benefit of the victims, and do whatever is necessary to wash away the stain embossed on the legal profession by Tom's and Girardi Keese's decades of wrongdoing. The Court should allow us this critical work to proceed." [2:20-bk-21020-BR Dkt. #284 p. 14 lines 8-13; RJN Ex. 14.]

### III. STATEMENT OF COMPLIANCE WITH LOCAL RULE 37.2 AND FEDERAL RULE OF PROCEDURE 26(C)(1)

Pursuant to Local Rule 37.2 and Fed. R. Civ. Proc. 26(c)(1), counsel for Mr. Lira attempted to resolve these issues via communication with Edelson's counsel prior to filing the instant motion. On March 11, 2022, counsel for Mr. Lira sent a letter to counsel for Edelson. [Robie Affidavit, ¶ 13, Exhibit 12.] That same day, at three o'clock in the afternoon, Edith Matthai and Leigh Robie—counsel for Mr. Lira—engaged in a meet and confer via telephone with Amy Hausman and J. Eli Wade Scott—counsel for Edelson—in the spirit of cooperation and with the hope that speaking would provide more progress and understanding between the parties than the prior attempts via letter had achieved. Counsel acknowledged that the meet and confer letter had just been sent but stated that they would be available until the instant motion was filed to further discuss the issues. Counsel for Edelson agreed that the communications between Lira and his counsel were protected and they were not seeking the production of those documents. However, they were unable to agree that the other documents sought from Johnston & Hutchinson were protected from disclosure. [Robie Affidavit, ¶ 13.]

Mr. Lira's counsel remains open to discussions, but at some point, the time for meeting and conferring must come to an end. With regard to the items requested in this Motion, that time has come. Despite counsel for Mr. Lira's good faith efforts to resolve the discovery issues in this

7

motion, no progress has been made which makes it clear that the Court's involvement may be useful.

## IV. LEGAL ARGUMENT

Regardless of whether the Court considers Plaintiff's Motion under Rule 45 of Rule 26, the Court must review the subpoenas under the relevancy standards contained in Rule 26(b). Rule 26(b) limits the scope of discovery to those materials that are "relevant to any party's claim or defense." Fed.R.Civ.P. 26(b)(1). The Court "must limit the frequency or extent of discovery" if "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." Fed.R.Civ.P. 26(b)(2)(C).

### A. The Court Should Quash the Subpoena to Johnston Hutchinson

A subpoena may command production only of documents that are nonprivileged and relevant to any party's claim or defense and proportional to the needs of the case. FRCP26(b)(1). A subpoena must be modified or quashed if it requires disclosure of privileged or otherwise protected matter and no exception or waiver applies. FRCP 45 (d)(3)(A)(iii).

Federal Rule of Civil Procedure 45(c)(3) requires the Court to quash a subpoena that requires disclosure of privileged or other protected matter, if no exception or waiver applies, or that subjects a person to undue burden. Fed. R. Civ. P. 45(c)(3)(A).

Ordinarily, a party does not have standing to challenge a subpoena issued to a non-party unless a party claims some personal right or privilege in the information sought by the subpoena. Lira contends that he holds such a "personal right" with respect to the communications between him and his counsel regarding this litigation. Clearly communications between him and his counsel are protected by attorney client privilege. That privilege has not been waived. The communications at issue occurred using Mr. Lira's email address at Johnston & Hutchinson when the firm was Johnston, Hutchinson & Lira. Neither Mr. Lira nor his counsel had or have

8

any expectation that those communications would or will be viewed by third parties. *Lorenz v. Valley Forge Ins. Co.*, 815 F.2d 1095, 1097 (7th Cir. 1987). It is Mr. Lira's understanding based on his counsel's meet and confer with Edelson's counsel that Edelson agrees it is not entitled to communications between Mr. Lira and his counsel and is not seeking such communications. [Robie Affidavit ¶ 13.]

However, Lira believes there may be communications between himself and Johnston & Hutchinson and counsel for Johnston & Hutchins regarding the instant litigation and communications between himself and counsel and representatives for Girardi Keese and Thomas Girardi regarding this litigation and the Lion Air Contempt litigation. Federal Rule of Civil Procedure 26(b)(3), attorney work product doctrine, protects documents and tangible things prepared by a party or his representative in anticipation of litigation from discover*y. United States v. Smith*, 502 F.3d 680, 689 (7th Cir. 2007). Unlike attorney-client privilege, attorney work-product protection is not automatically waived upon disclosure to third parties. Disclosure to a person with interest common to that of the attorney or client is not inconsistent with the intent to invoke the work product doctrine's protection and does not amount to waiver. *Pampered Chef v. Alexanian*, 737 F. Supp. 2d 958, 966 (N.D. Ill. 2010)

Lira, Johnston & Hutchinson, Girardi Keese, and Thomas Girardi were, or currently are, defendants in this action. Johnston & Hutchinson, Girardi Keese and Thomas Girardi relied on Mr. Lira for information and advice in this litigation, those communications are by definition work product, as they were all for the combined purpose of defending this litigation and/or the Lion Air Contempt proceedings. Any such communications held by Johnston & Hutchinson should not be produced to Edelson. If such communications are produced to Edelson, Mr. Lira would suffer extreme prejudice as his and his counsels' thoughts, analysis, and strategy regarding this proceeding and the Lion Air Contempt proceeding would be provided to opposing counsel in the same actions.

For these reasons these requests in this subpoena should be quashed.

## B. The Court Should Issue a Protective Order Limiting the Discovery in this Action

Despite this Court's ruling specifically limiting Edelson's recovery in this action to fees that they are allegedly owed and explicitly stating that Edelson cannot pursue claims on behalf of these plaintiffs Edelson continues to attempt to do so. Edelson is using subpoenas in this case to collect documents that are irrelevant to the determinations to be made in this matter in an attempt to determine whether there are additional actions Edelson can bring against third parties and to help them in other proceedings they are already pursuing.[4] Ordinarily, discovery obtained in one case may be used in another for a legitimate purpose, but a party may not obtain discovery in one action for the sole purpose of obtaining an advantage in another proceeding. *Perryman v. Litton loan servicing, LP* (ND CA 2015) 81 F. Supp. 3d 893, 901.

Defendant has standing to challenge subpoenas duces tecum as irrelevant and overboard under Rule 26, regardless of whether they have standing to bring a motion to quash under Rule 45. See, e.g. *Buonavolanto v. LG Chem, Ltd.*, No. 18 C 2802, 2019 WL 8301068, at *2 (N.D. Ill. Mar. 8, 2019); *Spiral v. Wang*, No. WDQ-12-0365, 2012 WL 2880565, at *4 n. 12 (D. Md. July 12, 2012) (construing plaintiffs motion to quash as one for a protective order under Rule 26 and using relevance and overbreadth to quash the subpoena at issue; *Auto-Owners Ins. Co v. Southeast Floating Docks, Inc.*,, 231 F.R.D. 426, 229 (M.D. Fla. 2005) (finding that a party had standing to challenge the relevancy of documents sought by subpoena and deeming the motion to quash as a motion for protective order under Rule 26.)

The Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by forbidding the disclosure or discovery of the material at issue. Fed.R.Civ.P. 26(c)(1). Pursuant to FRCP 26(c)(1) the court may issue an order limiting the scope of discovery or certain matters, specifying the terms for discovery, or forbidding the discovery to protect a party or person from

---

[4] Edelson is currently seeking to have the Court hold Mr. Lira in contempt in the Lion Air proceedings.

"undue burden;" the court's ability to issue such an order is not limited to circumstances in which the burdened party is the party from whom discovery is sought. *Blotzer v. L-3 Commc'ns Corp.*, 287 F.R.D. 507, 510 (D. Ariz. 2012).

Protective orders may stay discovery altogether or limit discovery to particular issues. Limiting discovery to particular issues is appropriate where discovery on one issue (e.g., personal jurisdiction) would obviate the need for discovery on other issues, or if a pending motion may resolve the case. *Landstrom v. Ill. Dep't of Children & Family Servs.*, 892 F.2d 670, 674 (7th Cir. 1990) (affirming district court's decision to stay discovery while the Court addressed a threshold and dispositive legal issue on a motion to dismiss.) Courts may issue a protective order staying discovery pending resolution of potentially dispositive motions. *Wenger v. Monroe*, 282 F3d 1068, 1077 (9th Cir. 2002); *Little v. City of Seattle* 863 F2d 681, 685 (9th Cir. 1988) (staying discovery pending adjudication of a summary judgment motion.)

The subpoenas at issue are both overbroad and not tailored to a particular purpose. Such subpoenas could and would lead to the production of protected information. Compliance with these subpoenas would result in the production of a plethora of documents, the vast majority of which would be completely unrelated to the issues in this case. The broad and unfettered discovery is greatly increasing the cost of this litigation as counsel cannot simply ignore documents produced by these parties. Additionally, these subpoenas are harassing and embarrassing as they suggest this lawsuit relates to issues not at issue in these proceedings. For these reasons the court should issue a protective order limiting the discovery in this matter, and order that the third parties who received these subpoenas do not have to respond to these overbroad requests.

Alternatively, if this court determines that it will not issue an order limiting the discovery requests, Mr. Lira asks that the Court stay discovery pending the outcome of the dispositive motions. A stay of discovery pending resolution of a pending dispositive motion may be appropriate were the motion raises significant issues and their resolution is likely to define the scope of discovery. *Sai v. Department of Homeland Security,* 99 F. Supp.3d 50, 58 (D.D.C.

2015). Mr. Lira and Mr. Griffin are filing dispositive motions in this matter. The motions will assert that there is no enforceable attorneys fee contract between Edelson and the clients or Girardi Keese. If the motions are granted, then Edelson has no damages in this action and the action will not proceed. This court should not require third parties to participate in this fishing expedition pending the outcome of those motions.

## V. CONCLUSION

For the foregoing reasons, the Court should grant this motion to quash and for protective order.

DAVID LIRA

By: /s/ Leigh P. Robie
_____
His Attorney

Edith R. Matthai, Esq.
Leigh P. Robie, Esq.
350 S. Grand Avenue, Suite 3950
Los Angeles, California 90071
(213) 706-8000
ematthai@romalaw.com
lrobie@romalaw.com

## **CERTIFICATE OF SERVICE**

    I hereby certify that on March 14, 2022, I electronically filed the foregoing document with the Clerk of Court, using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

<u>/s/ Leigh P. Robie</u>