# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| EDELSON PC, an Illinois professional corporation, | Case No.: 1:20-cv-07115 |
| | Hon. Matthew F. Kennelly |
| *Plaintiff,* | |
| v. | |
| THOMAS GIRARDI, an individual, GIRARDI KEESE, a California general partnership, ERIKA GIRARDI a/k/a ERIKA JAYNE, an individual, EJ GLOBAL LLC, a California limited liability company, GIRARDI FINANCIAL, INC., a Nevada corporation, DAVID LIRA, an individual, KEITH GRIFFIN, an individual, JOHNSTON HUTCHINSON & LIRA LLP, a California limited liability partnership, ROBERT FINNERTY, an individual, ABIR COHEN TREYZON SALO, LLP, a California limited liability partnership, CALIFORNIA ATTORNEY LENDING II, INC., a New York corporation, STILLWELL MADISON, LLC, a Delaware limited liability company, and JOHN DOE 1-10, | **MEMORANUM OF LAW IN SUPPORT OF SUMMARY JUDGMENT OR IN THE ALTERNATIVE, FOR PARTIAL SUMMARY JUDGMENT FILED BY DEFENDANT KEITH GRIFFIN** |
| *Defendants.* | |

# TABLE OF CONTENTS

I. INTRODUCTION .................................................................................................................. 1

II. STATEMENT OF FACTS .................................................................................................... 1

    A. The Underlying Boeing Action. ................................................................................... 1

    B. Procedural Status. ......................................................................................................... 4

III. LEGAL STANDARD ............................................................................................................ 4

IV. THE FEE-SHARING AGREEMENT IS VOID UNDER CALIFORNIA LAW ................. 4

    A. California Law Applies to this Dispute ........................................................................ 4

    B. California Rules of Professional Conduct .................................................................... 5

V. THE FEE-SHARING AGREEMENT IS VOID UNDER ILLINOIS LAW ......................... 7

VI. THE DECEMBER 2, 2021 CONSENT IS VOID UNDER THE AMERICAN BAR ASSOCIATION RULES OF PROFESSIONAL CONDUCT, RULE 1.5 .......................... 10

VII. UNJUST ENRICHMENT IS NOT A VIABLE CLAIM UNDER ILLINOIS LAW ......... 13

VIII. THE ACCOUNTING CLAIM FAILS AS TO DEFENDANT GRIFFIN ......................... 14

IX. CONCLUSION .................................................................................................................... 15

# **TABLE OF AUTHORITIES**

**FEDERAL CASES**

*Allergase, Inc. v. Walgreen Co.*
   2017 WL 66819 (N.D. Ill. 2017) ................................................................................ 13

*Buschauer v. Columbia College Chicago*
   2022 WL 103695 (N.D. Ill. 2022) .............................................................................. 14

*Gunn v. Cont'l Cas. Co.*
   968 F.3d 802 (7th Cir. 2020) ....................................................................................... 5

*McCoy v. Iberdrola Renewables, Inc.*
   760 F.3d 674, (7th Cir. 2014) ...................................................................................... 4

*Miller v. Lewis Univ.*
   No. 20 C 5473, 2021 WL 1379488 (N.D. Ill. Apr. 11, 2021)................................... 14

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*
   631 F.3d 436 (7th Cir. 2011) ..................................................................................... 13

*Rosenstock v. Sollars*
   2018 WL 5808471 (N.D. Ill. Nov. 6, 2018) ............................................................. 14

*Siegel v. Shell Oil Co.*
   612 F.3d 932 (7th Cir. 2010) ..................................................................................... 13

*Tarzy v. Dwyer*
   No. 18 CIV. 1456 (JFK), 2019 WL 132280 (S.D.N.Y. Jan. 8, 2019) ................ 11, 12

*Toulon v. Cont'l Cas. Co.*
   877 F.3d 725 (7th Cir. 2017) ............................................................................... 13, 14

*Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*
   596 F.3d 84 (2d Cir. 2010)................................................................................... 12, 13

*Woods v. Southwest Airlines, Co.*
   523 F.Supp.2d 812 (N.D. Ill.2007) ............................................................................. 8

**STATE CASES**

Bank of Orlando v. Harlan
   188 Cal. 413 (1922) .................................................................................................... 6

*Barbara's Sales, Inc. v. Intel Corp.*
   879 N.E.2d 910 (Ill. 2007) .................................................................................................. 5

*Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*
   10 N.E.3d 902 (Ill. 2014) .................................................................................................... 4

*Bright v. Dicke*
   166 Ill. 2d 204, Ill.Dec. 735, 652 N.E.2d 275 (1995) ......................................................... 9

*Bennett v. GlaxoSmithKline LLC*
   2020 IL App (5th) 180281, 151 N.E.3d 1184 (Ill. 2020) .................................................... 8

Chambers v. Kay
   29 Cal.4th 142 (2002) ......................................................................................................... 6

*Ferris, Thompson & Zweig, Ltd. v. Esposito*
   2017 IL 121297, Ill.Dec. 242, 90 N.E.3d 400 .................................................................... 9

*Huskinson & Brown v. Wolf*
   32 Cal.4th 453 (2004) ......................................................................................................... 6

*In re Vrdolyak*
   137 Ill. 2d 407 Ill.Dec. 243, 560 N.E.2d 840 (1990) .......................................................... 9

*Mark v. Spencer*
   166 Cal.App.4th 219 (2008) ............................................................................................... 6

*Martis v. Grinnell Mut. Reinsurance Co*
   905 N.E.2d 920 (2009) ............................................................................................... 13, 14

*Naughton v. Pfaff*
   IL App (2d) 150360, N.E.3d 503 (2016) .......................................................................... 10

*Romanek v. Connelly*
   324 Ill. App. 3d 393 Ill.Dec. 436, 753 N.E.2d 1062 (2001) ............................................... 9

*Schniederjon v. Krupa*
   162 Ill. App. 3d 192  Ill.Dec. 189, 514 N.E.2d 1200 (1987) .............................................. 9

*Thompson v. Hiter*
   356 Ill. App. 3d 574 Ill.Dec. 362, 826 N.E.2d 503 (2005) ................................................. 9

**MEMORANDUM OF LAW**

**I.     INTRODUCTION**

This entire action should be dismissed because the fee-sharing agreements between Edelson and Girardi Keese were not contemporaneously signed by the underlying clients and are therefore unenforceable as a matter of law.[1] It is well settled that any consent agreement for a division of fees between two law firms must made *at the time the lawyers enter into the agreement* to divide the fee or as soon thereafter as reasonably practicable. Here, Edelson's belated attempt to obtain consent from the clients 32 months later is void as a matter of law.

**II.    STATEMENT OF FACTS**

*A. The Underlying Boeing Action.*

On October 29, 2018, a Boeing plane operating the route of Lion Air Flight 610 crashed into the Java Sea killing all 189 passengers and crew. More than a dozen families of victims of the crash retained Girardi Keese to prosecute their civil matters against Boeing in the matter of *In Re: Lion Air Flight JT610 Crash*, No. 18-cv-07686 (N.D. Ill.) ("Boeing Action"). [Docket #1; Complaint ¶¶ 34, 37]. The litigation took place in this District before the Honorable Thomas M. Durkin. The victims' claims were resolved via settlement in early 2020. [Complaint ¶ 38].

The Lion Air clients were jointly represented by Edelson and Girardi Keese. Edelson is an Illinois professional corporation operating as a law firm, with its principal place of business in Chicago, Illinois.[2] [Complaint ¶ 17]. Girardi Keese maintained its principal place of business in Los Angeles, California. [Complaint ¶ 17]. Mr. Griffin is a resident of the State of California. Mr. Griffin is licensed to practice law

---

[1] Mr. Griffin contends that California law applies to this dispute, however, out of an abundance of caution, this dispute is analyzed under both California and Illinois law and the ABA Model Rules of Professional Conduct.

[2] Edelson also operates a second office in San Francisco, California and employs numerous California barred attorneys, including many attorneys who are involved with this dispute. Edelson does not operate an office in any other city.

1

in the State of California and was previously employed by Girardi Keese as an attorney of the firm. [Statement of Material Fact ("SMF") #1.] Mr. Griffin was not an owner or equity partner of the law firm. [SMF #2.] Mr. Griffin also did not have any access or signing authority on the client trust accounts of Girardi Keese. [SMF #3.][3]

Edelson alleges that it entered a written fee sharing agreement with Girardi Keese which provided that if Edelson would act as local counsel, then Plaintiff would receive 50% of the total attorneys' fees recovered for a specific set of Lion Air clients. [Complaint ¶¶ 102, 104]. This agreement was memorialized by a letter dated April 3, 2019 which was drafted and delivered by Mr. Griffin on behalf of Girardi Keese to Edelson's Ari Scharg regarding the "Boeing Cases" ("April 3, 2019 letter"). The letter substantively states as follows:

> This will confirm our agreement that our fee split will be 50/50 on the Boeing cases that you have filed with us in Chicago concerning the Lion Air crash. If it turns out that one of our two firms performs significantly more work than expected, or less if the case settles fairly quickly, we will adjust the fee split as would be reasonable to both firms. Thanks again for your work so far and looking forward to our future work together. [SMF #4.]

The April 3, 2019 letter was not signed by any of the Lion Air clients and none of the Lion Air clients were copied with the letter. [SMF #5.]

Edelson alleges it entered into a second written agreement with Girardi Keese which provided that if Edelson would act as local counsel, it would receive 20% of total attorneys' fees recovered for a separate set of clients. [Complaint ¶¶ 103-104]. This agreement was memorialized by a letter dated June 17, 2019, from Defendant David Lira on behalf of Girardi Keese to Edelson's Ari Scharg. ("June 17, 2019 letter"). The letter states:

---

[3]/ Edelson and Mr. Griffin entered a stipulation in the Boeing Action which states in full: "Keith Griffin was not an authorized signatory on the Girardi Keese client trust account held at Torrey Pines Bank and ending in 5859. At all relevant times, Mr. Griffin did not have the legal authority to sign any checks from this client trust account and did not have the legal authority to issue any wire transfers from this client trust account. Further, Mr. Griffin did not have the ability to stop payment on any checks or cancel any withdrawals from this client trust account." [Boeing Action Docket #1203.]

2

> This will confirm our telephone conversation of this afternoon. As I indicated, I am prepared to file approximately ten wrongful death lawsuits arising from the Lion Air disaster. Your firm is currently co-counsel on a number of cases previously filed by my firm with Keith Griffin taking the lead on behalf of Girardi Keese. It was discussed and agreed in our conversation that the referral fee paid to your firm in assisting in this matter will be twenty (20%) percent of the total attorneys' fees recovered. It is my intent to take the laboring oar in discovery and other tasks. As you can imagine, I will need your assistance in the actual filing of the lawsuits and appearances before the Court when I am not able to attend. Is there a *pro hac vice* form to complete? Keith will also be assisting. If this does not comport with your understanding of our agreement, please advise. I look forward to working with you. [SMF #6.]

The June 17, 2019 letter was not signed by any clients, and none of the clients were copied with the letter. [SMF #7.]

Edelson acted as counsel and assisted in the litigation and settlement of the Boeing Action. [Complaint, ¶ 105]. In mid-2020, the parties in the underlying Boeing Action reached a settlement and money was transferred from Boeing to Girardi Keese. This money was for the benefit of the Lion Air clients, minus agreed upon attorneys' fees. [Complaint, ¶ 86]. Mr. Griffin did not, at any time, receive any money from the settlement. The money was received by Girardi Keese. Girardi Keese did not pay Edelson its full share of the attorneys' fees. [Complaint, ¶ 106].

At issue in this specific dispute are settlements for five of the underlying plaintiffs in the Boeing Action: (1) Bias Ramadhan A.S. Bin Misyadi ("Mr. Bias") [Ex. "3" at p. 18.]; (2) Dian Daniaty Binti Udin Zaenudian ("Ms. Dian") [Ex. "3" at p. 21]; (3) Anice Kasin ("Ms. Anice") [Ex. "3" at p. 23]; (4) Elzawarti, Multi Rizki ("Mr. Rizki") [Ex. "3" at p. 25]; and (5) Septiana Damayanti ("Ms. Septiana") [Ex. "3" at p. 28].

Their claims were dismissed as follows: (1) Mr. Bias on March 9, 2020 [Boeing Action Docket #427]; (2) Ms. Dian on March 4, 2020 [Boeing Action Docket #424]; (3) Ms. Anice on February 24, 2020 [Boeing Action Docket #384]; (4) Mr. Rizki on June 4, 2020 [Boeing Action Docket #593]; and (5) Ms. Septiana on March 4, 2020 [Boeing Action Docket #419].

3

Edelson was terminated and replaced as counsel in the Boeing Action on December 16 and 21, 2020. [Boeing Action Docket #s 860 and 895.]

### B. Procedural Status.

On December 2, 2020, Edelson filed the instant Complaint. Shortly thereafter, in the Boeing Action, Girardi Keese and Thomas Girardi were held in contempt of court on December 18, 2020. [Boeing Action Docket #879.] Also, in December 2020, Girardi Keese and Thomas Girardi filed for bankruptcy protection. United States Bankruptcy Court, Central District of California, case numbers 20-21022 and 20-21020.

In the instant action, on August 30, 2021, Mr. Griffin filed a Rule 12(c) Motion for Judgment on the Pleadings because the fee sharing agreements between Girardi Keese and Edelson are void as a matter of law. The day after the motion was filed, this Court conducted a status conference call and denied the motion without prejudice stating that this issue should be asserted in the form of a Rule 56 motion instead of a Rule 12 motion. [Docket #97.]

Subsequently, on December 2, 2021, Edelson obtained the clients' written consent to the April 3, 2019 letter regarding the purported division of attorneys' fees. ("December 2, 2021 consent"). [SMF #8.] The December 2, 2021 consent is too late and void as a matter of law.

### III. LEGAL STANDARD

This motion only concerns legal issues and there are no triable issues of fact. Accordingly, summary judgment is the proper procedure to dismiss this action. Rule 56(c).

### IV. THE FEE-SHARING AGREEMENT IS VOID UNDER CALIFORNIA LAW

#### A. California Law Applies to this Dispute.

The April 3, 2019 letter does not contain a choice of law provision. In general, "[f]ederal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 684 (7th Cir. 2014). In Illinois, courts apply forum law unless there is "an actual conflict with another

4

state's law." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020). It is only necessary to perform a choice-of-law determination when a difference between the states' laws would affect the outcome of the dispute. *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 10 N.E.3d 902, 905 (Ill. 2014). Here, the Rules of Professional Conduct are not identical between California and Illinois. So, out of an abundance of caution, there needs to be a determination as to which state's Rules of Professional Conduct apply to this dispute. However, please note, Mr. Griffin contends that regardless of which Rules are applied, the result is the same – the April 3, 2019 letter is void. When conducting a substantive choice-of-law analysis, Illinois courts follow the approach of the Second Restatement of Conflicts of Laws. *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007). Under this approach, "the rights and liabilities as to a particular issue are to be governed by the jurisdiction which retains the 'most significant relationship' to the occurrence and the parties." *Id.* Here, the substantive issue is not the outcome of the Boeing Action, but rather the validity of a fee sharing agreement between Girardi Keese and Edelson. The Northern District of Illinois has resolved the issue of which Rules of Professional Conduct apply in this exact situation. See, Local Rule 83.50.

> Northern District of Illinois, LR83.50 provides that:
>
> "Applicable disciplinary rules are the Model Rules adopted by the American Bar Association. On any matter not addressed by the ABA Model Rules or for which the ABA Model Rules are inconsistent with the Rules of Professional Conduct, a lawyer admitted to practice in Illinois is governed by the Illinois Rules of Professional Conduct, as adopted by the Illinois Supreme Court, *and **a lawyer not admitted to practice in Illinois is bound by the Rules of Professional Conduct for the state in which the lawyer's principal office is located.*** (emphasis added).

### B. California Rules of Professional Conduct

California Rules of Professional Conduct, Rule 1.5.1(a) (Adopted, eff. Nov. 1, 2018) concerns fee divisions among lawyers in different firms. The Rule states that:

> (a) Lawyers who are not in the same law firm shall not divide a fee for legal services unless:
> (1) the lawyers enter into a written agreement to divide the fee;
> **(2) the client has consented in writing, either <u>at the time the lawyers enter into the agreement to divide the fee</u> or as soon thereafter as reasonably practicable**, after a full

5

written disclosure to the client of: (i) the fact that a division of fees will be made; (ii) the identity of the lawyers or law firms that are parties to the division; and (iii) the terms of the division; (emphasis added).

California's Supreme Court noted that the rules requiring written client consent to fee-sharing were specifically and "formally approved in order 'to protect the public[.]'" *Chambers v. Kay,* 29 Cal.4th 142, 158 (2002).

The Rule's disclosure and consent requirements are intended to safeguard clients' right to know how their legal fees will be determined and the extent of, and basis for, their attorneys' sharing of fees. *Huskinson & Brown v. Wolf*, 32 Cal.4th 453, 459 (2004); *Mark v. Spencer*, 166 Cal.App.4th 219, 226 (2008). It is well settled that "a contract which is against public policy, good morals, or the express mandate of law cannot be made the basis of either legal or equitable relief in the courts[.]" *Bank of Orlando v. Harlan,* 188 Cal. 413, 421 (1922).

Rule 1.5.1(a) recognizes that fee division agreements create a potential attorney-client conflict of interest. For example, while a 50/50 fee-splitting agreement might contemplate the attorneys will shoulder equal duties and responsibilities, if one attorney ends up performing less work, he or she may be tempted to pad the bills to create the appearance of a 50/50 workload. Alternatively, if one attorney discovers he or she is spending far more time on the case than co-counsel, that attorney may encourage early settlement to stem the losses. Conversely, an attorney spending less time on the case may wish to "drag out" the litigation, knowing he or she will eventually recover fees disproportionately larger than those actually earned. *Mark v. Spencer*, 166 Cal.App.4th 219, 225 (2008).

Likewise, the December 2, 2021 consent is unenforceable and against public policy as the clients were not informed of, and did not consent to, a 50/50 attorney fee division in 2019. The *Rule requires that the consent be entered into at the time of the April 3, 2019 letter* or as soon thereafter as reasonably practicable. Cal. R. Prof'l Conduct R. 1.5.1(a)(2).

Here, Edelson obtained the December 2, 2021 consent 32 months after the April 3, 2019 letter. This is not in compliance with California Rule 1.5.1(a)(2) which requires the client's consent be obtained "at the time the lawyers enter into the agreement to divide the fee."

Allowing Edelson's belated attempt to obtain consent to a fee division defeats the purpose of the Rule's intent and purpose to protect the client's interest. Edelson's self-serving attempt to collect attorneys' fees in this matter long after the attorneys entered into an alleged fee division agreement, and long after the case was settled and dismissed, is against public policy and is therefore void as a matter of law.

V.   **THE FEE-SHARING AGREEMENT IS VOID UNDER ILLINOIS LAW**

Assuming, *arguendo,* that Edelson tries to argue that California law does not apply, but instead Illinois law applies, the same result occurs: the December 2, 2021 consent is void.

Illinois Rules of Professional Conduct, Rule 1.5(b) (eff. Jan. 1, 2010) regarding attorney-client fee agreements provides that:

> ". . . (b) The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, **before or within a reasonable time after commencing the representation**, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client." (emphasis added).

Illinois Rules of Professional Conduct, rule 1.5(e) regarding the division of fees provides:

> (e) A division of a fee between lawyers who are not in the same firm may be made only if:
> (1) the division is in proportion to the services performed by each lawyer, or if the primary service performed by one lawyer is the referral of the client to another lawyer and each lawyer assumes joint financial responsibility for the representation;
> (2) the client agrees to the arrangement, including the share each lawyer **will receive,** and the agreement is confirmed in writing;[4] and
> (3) the total fee is reasonable. (emphasis added).

---

[4] Please note the future tense of the phrase "the share each lawyer *will receive*". This issue is analyzed below in Section VI and is indicative that the fee sharing agreement must be signed at the outset of the representation, not 32 months after the representation ends.

7

Fee-sharing arrangements are only acceptable under Illinois law only if they serve the client's best interest. *Woods v. Southwest Airlines, Co.* (N.D. Ill.2007) 523 F.Supp.2d 812, 822. In Illinois, a client demonstrates whether a fee arrangement is in his or her best interest by consenting to it, not consenting to it, or changing his or her mind about consenting to it. *Id*.

In *Bennett v. GlaxoSmithKline LLC*, 2020 IL App (5th) 180281, 151 N.E.3d 1184 (Ill. 2020), the Court of Appeal held that the attorneys' violation of the provisions of Rule 1.5 is against public policy and unenforceable. *Id*. at 1195.

In *Bennet*, a "bundled" complaint (Gabel v. GlaxoSmithKline, No. 09-L-621 (Cir. Ct. St. Clair County)) was filed against defendant, GlaxoSmithKline LLC ("GSK"), on behalf of numerous individual plaintiffs who alleged they suffered cardiovascular injuries after taking Avandia, a medication that is made by GSK that is prescribed to individuals with type 2 diabetes. Attorney Steven Johnson was retained to sue GSK on behalf of the plaintiffs. Johnson met with attorney Michael Baum, and Baum agreed to act as trial counsel. In a series of e-mail exchanges, Johnson and Baum agreed to a fee arrangement whereby Baum would receive 75% of the attorney fees collected from a set of clients in the underlying action, and 10% of the attorney fees from a separate set of clients in the underlying action. A dispute arose regarding the attorney's fees and the circuit court ordered payment of Baum's attorney fees be made from the plaintiffs' settlement fund. *Id.* at 1193.

On appeal, Johnson argued that Baum may not receive attorney's fees because none of the plaintiffs gave written approval to representation by Baum or written approval to a fee-sharing arrangement between Baum and Johnson as required under Rule 1.5 of the Illinois Rules of Professional Conduct. *Id.* at 1194-95.

Baum asserted that under these types of circumstances, where there has not been strict compliance with the rules concerning disclosure of fee-sharing, the appropriate remedy is not to give a windfall to Johnson at the expense of less culpable co-counsel, but rather to permit the fee split under joint venture and fiduciary duty principles. *Id*. at 1195.

8

The *Bennet* Court held that the Illinois Rules of Professional Conduct of 2010 provides a comprehensive set of rules governing the professional conduct of Illinois attorneys. *Id.* The Rules of Professional Conduct are part of the Illinois Supreme Court rules, and so they operate with the force and effect of law. *In re Vrdolyak*, 137 Ill. 2d 407, 422, 148 Ill.Dec. 243, 560 N.E.2d 840 (1990). The Supreme Court rules are not aspirational or mere suggestions; they have the force and effect of law. *Bright v. Dicke*, 166 Ill. 2d 204, 210, 209 Ill.Dec. 735, 652 N.E.2d 275 (1995). Additionally, the Rules of Professional Conduct are interpreted in accordance with the principles of statutory construction. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶¶ 21-22, 418 Ill.Dec. 242, 90 N.E.3d 400.

**The provisions of Rule 1.5 embody Illinois's public policy of placing the rights of clients above any remedies of lawyers seeking to enforce fee-sharing arrangements.** *Bennet, supra,* at 1195; *Romanek v. Connelly*, 324 Ill. App. 3d 393, 399, 257 Ill.Dec. 436, 753 N.E.2d 1062 (2001). Accordingly, a fee-sharing agreement that violates the provisions of Rule 1.5 is against public policy and unenforceable. *Thompson v. Hiter*, 356 Ill. App. 3d 574, 589-90, 292 Ill.Dec. 362, 826 N.E.2d 503 (2005). Since the clients were not informed of, and did not consent to the fee division agreement, the *Bennet* Court held that pursuant to Rule 1.5, the fee-sharing agreement between Baum and Johnson was unenforceable as against public policy. *Bennet, supra,* at 1196.

Other Illinois Courts have similarly held that the failure to comply with Rule 1.5(e) precludes enforcement of the fee-sharing arrangement. *Hiter, supra*, 356 Ill. App. 3d at 590; *Schniederjon v. Krupa*, 162 Ill. App. 3d 192, 195, 113 Ill.Dec. 189, 514 N.E.2d 1200 (1987) (courts will not enforce an agreement that is against public policy, no matter "whose ox is gored").

Here, the underlying Boeing Action clients were not informed of the fee arrangement between Edelson and Girardi Keese. When Edelson obtained the Lion Air clients' consent to the April 3, 2019 letter in December 2021, it was too late as a matter of law. Edelson's belated attempt to obtain consent to the division of attorneys' fees well after the clients no longer have an opportunity to make an informed decision,

is against public policy to protect the interest of the clients. The only purpose of obtaining the clients' consent to the fee division so late is for the sole monetary benefit and interest of Edelson.

Indeed, obtaining the clients' consent after the case has already been settled defeats the objective of Rule 1.5 of the Illinois Rules of Professional Conduct. In *Naughton v. Pfaff* (2016) IL App (2d) 150360, ¶¶ 65-66, 57 N.E.3d 503, 520–21, the Court held that "[u]nder Rule 1.5, the obligation to ensure that the client signed such a disclosure could not be delegated to [defendant] alone, and the lack of the signed disclosure precludes [plaintiff] from recovering under the alleged fee-sharing agreement underlying his breach-of-fiduciary-duty claim. Accordingly, the trial court correctly granted summary judgment for defendants." *Naughton*, *supra*, at 521.

Here, the clients could have decided not to consent to any purported fee division between Edelson and Girardi Keese if they were informed of the fee division at the outset of the matter, or within a reasonable time thereafter. Being informed of and consenting to an alleged fee agreement after the clients settled their case, and after the cases were dismissed, and after being informed that Mr. Girardi absconded with the funds, has no purpose or effect other than to serve the best interest of the attorney attempting to enforce an alleged fee division agreement. There is no purpose served by obtaining their consent in December 2021. Edelson is putting its fee collection effort above any remedies for the clients. As such, the December 2, 2021 consent is void.

VI. **THE DECEMBER 2, 2021 CONSENT IS VOID UNDER THE AMERICAN BAR ASSOCIATION OF PROFESSIONAL CONDUCT, RULE 1.5.**

The Illinois Rules of Professional Conduct, Rule 1.5(e) is nearly identical to the American Bar Association ("ABA") Model Rules of Professional Conduct, Rule 1.5(e)[5], which provides as follows:

---

[5]/ The only difference between the Illinois Rules of Professional Conduct, rule 1.5(e), and the American Bar Association Rules, rule 1.5(e), is that the former adds the following in italics: "(1) the division is in proportion to the services performed by each lawyer, or *if the primary service performed by one lawyer is the referral of the client to another lawyer and* each lawyer assumes joint financial responsibility for the representation."

(e) A division of a fee between lawyers who are not in the same firm may be made only if:
(1) the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;
(2) the client agrees to the arrangement, including the share each lawyer *will receive*, and the agreement is confirmed in writing; and
(3) the total fee is reasonable. (emphasis added).

In April 2016, the ABA issued Formal Ethics Opinion No. 16-474, wherein the ethics committee of the ABA wrote, in connection with ABA Rule 1.5(e), that: "[w]hen one lawyer refers a matter to a second lawyer outside of the firm and the first lawyer either performs legal services in connection with or assumes joint responsibility for the matter and accepts a referral fee, **the agreement regarding the division of fees, including client consent confirmed in writing, must be completed before or within a reasonable time after the commencement of the representation.**" ABA Formal Op. 16-474 at 1 (emphasis added). [Exhibit "4."].

The Formal Ethics Opinion goes on to state that: "Rule 1.5(e)(2) uses the future tense in the phrase 'including the share each lawyer *will receive*' to describe what the fee division agreement must include, and Comment [7] to Rule 1.5 explains 'the client must agree to the arrangement, including the share that each lawyer *is to receive* . . . .' **The use of the future tense envisions that the fee division agreement will precede the division of fees. Such an agreement should not be entered into toward the end of such a relationship. Instead, the division of fees must be agreed to either before or within a reasonable time after commencing the representation.**" ABA Formal Op. 16-474 at 6 (emphasis added).

In a case arising out of the United States District Court, Southern District of New York, the *Tarzy* Court held that the client's signing of the confidential settlement agreement, at the end of his case, does not bring the fee sharing agreement into compliance with either New York Rule of Professional Conduct 1.5(g) or New Jersey Rule of Professional Conduct 1.5(e). *Tarzy v. Dwyer*, No. 18 CIV. 1456 (JFK), 2019 WL 132280, at *1–2 (S.D.N.Y. Jan. 8, 2019).

**"This Court has found no case law that holds that a client can ratify a fee sharing agreement after a dispute has been litigated. In fact, the ABA has authored a formal opinion interpreting ABA Model Rule of Professional Conduct 1.5 -- on which both rules are based -- which states that a client's consent to a fee sharing agreement must be obtained either before or within a reasonable time after commencing the representation. *ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 474 (2016), at 6.*"** *Tarzy v. Dwyer*, No. 18 CIV. 1456 (JFK), 2019 WL 132280, at *8 (S.D.N.Y. Jan. 8, 2019) (emphasis added).

The District Court in *Tarzy* continued to hold that the attorneys failed to allege that they obtained client's written consent to the fee sharing arrangement before commencing with the client's case, and plaintiff cannot cure that defect by arguing that the client later ratified his consent during the settlement of his employment discrimination case. *Id.*

The Second Circuit had a similar ruling in in *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C.*, (2d Cir. 2010) 596 F.3d 84. In this matter, the appellants argued that even if there was a violation of the fee division rules, it was a prospective violation of technical requirements and curable, presumably by providing the client with a "joint responsibility" letter before fees have been paid. *Id.* at 92. The Circuit Court disagreed holding that the fee division rule "does not impose an explicit time requirement, it clearly anticipates compliance with its requirements early on in the representation, as it requires that '[t]he client consents to the employment of the other lawyer.'" *Id.* The *Wagner* Court continued: "Moreover, the undertaking of joint responsibility is difficult (to say the least) to accomplish, other than as a charade, after a settlement with the defendant has been reached. Therefore, the district court did not abuse its discretion by not allowing appellants to 'cure' the violation after a settlement and scheduling of an infant compromise hearing." *Id.*

Here, Edelson should not be allowed to "cure" the violation by belatedly obtaining the clients' consent to a purported fee division that was entered into 32 months prior, and after the case had already

12

settled. Edelson's actions have led to precisely what the court in *Wagner & Wagner* attempted to avoid when it stated that the undertaking of joint responsibility is difficult to accomplish, other than as a charade, after a settlement has been reached.

VII. **UNJUST ENRICHMENT IS NOT A VIABLE CLAIM UNDER ILLINOIS LAW**

Plaintiff's Count I is a claim for Unjust Enrichment. [Complaint, pp. 23-25]. None of the Counts in Plaintiff's Complaint allege fraudulent conduct. [Complaint, pp. 23-29]. In Illinois, "a claim of unjust enrichment is not a separate cause of action that, standing alone, will justify an action for recovery." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010); *Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 741 (7th Cir. 2017) ("Unjust enrichment does not constitute an independent cause of action. Rather, it is a condition that may be brought about by unlawful or improper conduct as defined by law, such as fraud, duress or undue influence, or, alternatively, it may be based on contracts which are implied in law."); *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 447 (7th Cir. 2011) (same).

In 2011, the Seventh Circuit in *Cleary v. Philip Morris* (2011) 656 F.3d 511 considered again whether unjust enrichment was a standalone tort or rather a parasitic claim for recovery tethered to an underlying tort. The Seventh Circuit analyzed a line of older Illinois Supreme Court decisions recognizes an independent cause of action for unjust enrichment and compared them with a 2009 Illinois appellate court decision *Martis v. Grinnell Mut. Reinsurance Co*, 905 N.E.2d 920 (2009) which held unjust enrichment is not a separate cause of action.

The *Cleary* Court reconciled the disparity by leaning toward the *Martis* decision, finding that if an unjust enrichment claim rests on the same improper conduct alleged in another claim, then the unjust enrichment claim will stand or fall with the related claim. *Cleary* at 517.

Seventh Circuit District Court cases since *Cleary* have continued to move in line with *Martis*, holding that unjust enrichment is not a separate claim of recovery. For example, in *Allergase, Inc. v. Walgreen Co.*, 2017 WL 66819 at *4 (N.D. Ill. 2017), a plaintiff claimed to have pled an unjust enrichment

13

claim in the alternative, if the court determined that a contract had not been formed. However, because the complaint also contained allegations of an express contract, the Northern District Court dismissed the plaintiff's unjust enrichment theory. *Id.* In *Buschauer v. Columbia College Chicago*, 2022 WL 103695 (N.D. Ill. 2022), the Court noted that, "[w]ithout addressing Cleary's prediction that the Illinois Supreme Court would recognize unjust enrichment as a separate cause of action, subsequent Seventh Circuit cases have disagreed with *Cleary* and aligned with *Martis*, concluding that unjust enrichment may not proceed as a separate claim.

Here, Plaintiff cannot recover on an unjust enrichment for several reasons. First, Plaintiff pled the existence of a written contract, including such allegations in its Count I for unjust enrichment. [Complaint ¶¶ 87, 102-104]. Plaintiff's unjust enrichment claim is premised on a failure to fulfill contractual terms, and therefore dismissal of the unjust enrichment claim is appropriate. *Miller v. Lewis Univ.,* No. 20 C 5473, 2021 WL 1379488, at *6 (N.D. Ill. Apr. 11, 2021). When the predicate claim fails, the parasitic claim for unjust enrichment fails with it. Second, Plaintiff has not alleged fraud and there is no evidence of deceptive conduct by Defendant Griffin in this case. See *Toulon*, 877 F.3d at 742. Third and finally, the Seventh Circuit and the most recent district court opinions have found that unjust enrichment is not a standalone tort that can stand either in the absence of a predicate claim or as an alternative to such a claim.

## VIII. THE ACCOUNTING CLAIM FAILS AS TO DEFENDANT GRIFFIN

"Under Illinois law, to state a claim for an equitable accounting, a plaintiff must show the absence of an adequate remedy at law and one of the following: (1) a breach of fiduciary relationship between the parties; (2) a need for discovery; (3) fraud; or (4) the existence of mutual accounts which are of a complex nature." *Rosenstock v. Sollars*, 2018 WL 5808471, at *2 (N.D. Ill. Nov. 6, 2018). Plaintiff alleges an accounting is appropriate because "any information on the current status and location of that money is within the exclusive knowledge of Defendants." [Complaint ¶ 99]. However, Plaintiff has not asserted and

cannot assert any claims of fraud against Defendant Griffin. To that end, Edelson already stipulated that Mr. Griffin did not have access to the settlement funds. [MSF #3.]

## IX. CONCLUSION

The entire basis of this action against Defendant Griffin arises from the foundation that Edelson had a proper fee sharing agreement with Girardi Keese. If such arrangement is void as a matter of law, then Edelson has no claim against Mr. Griffin to enforce such fee sharing agreement. As such, all Counts should be dismissed.

For the foregoing reasons, Defendant Keith Griffin respectfully requests that the Court dismiss Plaintiff's Count I for unjust enrichment, Count II for accounting, Count III for breach of contract, and Count V for conversion.

    Respectfully submitted,

    */s/ Ryan Saba*
    Ryan Saba – Pro Hac Vice
    Rosen Saba LLP
    2301 Rosecrans Ave., Suite 3180
    El Segundo, CA 90245
    Telephone: (310) 285-1727
    Fax: (310) 285-1728
    rsaba@rosensaba.com
    **Attorneys for Defendant, Keith Griffin, an individual**

John. A. O'Donnell, Sr.
CASSIDAY SCHADE LLP
222 West Adams Street, Suite 2900
Chicago, IL 60606
(312) 641-3100
(312) 444-1669 – fax
jodonnellsr@cassiday.com
*Attorney for Defendant, Keith Griffin*