# IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF ILLINOIS

## EASTERN DIVISION

| | |
|---|---|
| EDELSON PC, an Illinois Professional corporation, <br><br>       Plaintiff, <br><br> THOMAS GIRARDI, an individual, et al., <br><br>       Defendants. | Case No.: <br><br> 20-cv-07115 <br><br> Honorable Matthew F. Kennelly |

**MEMORANDUM OF LAW IN SUPPORT OF SUMMARY
JUDGMENT OR IN THE ALTERNATIVE, FOR PARTIAL
SUMMARY JUDGMENT FILED BY DEFENDANT DAVID LIRA**

i

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ....................................................................................................... 1

II.    STATEMENT OF FACTS .......................................................................................... 1

    A.    The Underlying Boeing Action ........................................................................ 1

    B.    Procedural Status............................................................................................. 3

III.   LEGAL STANDARD ................................................................................................. 4

IV.   THE FEE SHARING-AGREEMENT IS VOID UNDER CALIFORNIA LAW ............... 4

    A.    California Law and Illinois Law Apply to this Dispute. ................................... 4

V.    THE FEE SHARING-AGREEMENTS ARE VOID UNDER ILLINOIS LAW ............... 5

    A.    The Agreements do not meet the requirements of Ill. Rule of Prof. Conduct Rule 1.5... 5

    B.    The Agreements are Void under Illinois Law. ................................................ 6

VI.   THE FEE SHARING AGREEMENT IS VOID UNDER CALIFORNIA LAW................ 9

VII.   THE DECEMBER 2, 2021 CONSENTS ARE VOID UNDER THE AMERICAN BAR ASSOCIATION MODEL RULES OF PROFESSIONAL CONDUCT, RULE 1.5 .................... 10

VIII.  THE UNJUST ENRICHMENT CLAIM FAILS AS TO DEFENDANT LIRA .......... 12

IX.   THE ACCOUNTING CLAIM FAILS AS TO DEFENDANT LIRA.............................. 13

X.    THE BREACH OF CONTRACT CLAIM FAILS AS TO DEFENDANT LIRA ........... 13

XI.   THE CONVERSION CLAIM FAILS AS TO DEFENDANT LIRA .............................. 14

XII.   CONCLUSION ........................................................................................................ 15

## **TABLE OF AUTHORITIES**

### **FEDERAL CASES**

*Cleary v. Philip Morris Inc.*
  656 F.3d 511 (7th Cir. 2011) ................................................................. 13

*Drake Enterprises, Inc. v. Colloid Environmental Technologies Co.*
  No. 08 C 6753, 2009 WL 1789355 ....................................................... 13

*Durham v. The Loan Store, Inc.*
  No. 04 C 6627, 2006 WL 1371423 ......................................................... 6

*Gunn v. Cont'l Cas. Co.*
  968 F.3d 802 (7th Cir. 2020) ................................................................... 4

*Hess v. Kanoski & Assocs.*
  668 F.3d 446, 452 (7th Cir. 2012) ........................................................ 14

*McCoy v. Iberdrola Renewables, Inc*.
  760 F.3d 674 (7th Cir. 2014) ................................................................... 4

*Stevens v. Interactive Fin. Advisors, Inc.*
  830 F.3d 735 (7th Cir. 2016) ................................................................. 14

*Tarzy v. Dwyer*
  No. 18 CIV. 1456 (JFK), 2019 WL 132280 .......................................... 11

*Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis Brittingham, Gladd & Carwile, P.C.*
  (2d Cir. 2010) 596 F.3d 84 ................................................................... 12

*Wilson v. Career Educ. Corp.*
  729 F.3d 665 (7th Cir. 2013) ................................................................. 12

*Woods v. Southwest Airlines, Co.*
  (N.D. Ill.2007) 523 F.Supp.2d 812 ..................................................... 6, 7

### **STATE CASES**

*Bank of Orlando v. Harlan*
  188 Cal. 413 (1922) ................................................................................. 9

*Barbara's Sales, Inc. v. Intel Corp.*
  879 N.E.2d 910 (Ill. 2007) ...................................................................... 4

*Bennett v. GlaxoSmithKline LLC*
  2020 IL App (5th) 180281, 151 N.E.3d 1184 (Ill. 2020) ..................... 7, 8

*Bright v. Dicke*
  166 Ill. 2d 204, 210, 209 Ill.Dec. 735, 652 N.E.2d 275 (1995) ................................. 7

*Chambers v. Kay*
  29 Cal.4th 142 (2002) ........................................................................................ 9

*Coles v. Glaser*
  2 Cal. App. 5th 384, 391, 205 Cal. Rptr. 3d 922, 927 (2016) .................................. 14

*Donald W. Fohrman & Assocs., Ltd. v. Alberts*
  2014 IL App (1st) 123351, 7 N.E.3d 807, 7 N.E.3d 807 ........................................ 8

*Ferris, Thompson & Zweig, Ltd. v. Esposito*
  90 N.E.3d 400 (2017) ......................................................................................... 7

*Hodges v. Cty. of Placer*
  41 Cal. App. 5th 537, 551, 254 Cal. Rptr. 3d 324, 335 (2019) ............................... 14

*HPI Health Care Servs.*
  131 Ill.2d at 160, 137 Ill.Dec. 19, 545 N.E.2d 672 ............................................... 12

*Huskinson & Brown v. Wolf*
  32 Cal.4th 453 (2004) ........................................................................................ 9

*In re Vrdolyak*
  137 Ill. 2d 407, 422, 148 Ill.Dec. 243, 560 N.E.2d 840 (1990) ............................... 7

*Lectrodryer v. SeoulBank*
  77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881, 883 (2000) .................................. 12

*Mark v. Spencer*
  166 Cal.App.4th 219 (2008) ................................................................................ 9

*McCracken & McCracken, P.C. v. Haegele*
  248 Ill. App. 3d 553, 561, 618 N.E.2d 577, 582 (1993) ......................................... 6

*Naughton v. Pfaff*
  (2016) IL App (2d) 150360, ¶¶65-66, 57 N.E.3d 503, 520–21 ............................... 8

*Paul B. Episcope, Ltd. v. Law Offices of Campbell and Di Vencenzo*
  373 Ill.App.3d 384 at 392, Ill.Dec. 771, 869 N.E.2d 784 ...................................... 8

*Prakashpalan v. Engstrom, Lipscomb & Lack*
  223 Cal. App. 4th 1105, 1136–37, 167 Cal. Rptr. 3d 832, 859 (2014) .................... 13

*Romanek v. Connelly*
  324 Ill. App. 3d 393, 399, 257 Ill.Dec. 436, 753 N.E.2d 1062 (2001) .................... 7

iv

*Schniederjon v. Krupa*
    162 Ill. App. 3d 192, 195, 113 Ill.Dec. 189, 514 N.E.2d 1200 (1987) .................................... 8

*Thompson v. Hiter*
    356 Ill. App. 3d 574, 589-90, 292 Ill.Dec. 362, 826 N.E.2d 503 (2005) ................................. 8

## **STATUTES**

American Bar Association Rule 1.5(e) ........................................................................... 11

American Bar Association, Formal Ethics Opinion No. 16-474 .................................. 11

California Rules of Professional Conduct, Rule 1.5.1(a)........................................... 9, 10

Federal Rule Civil Procedure 37(c)(1).......................................................................... 6

Illinois Rules of Professional Conduct, Rule 1.5(b) ...................................................... 5

Illinois Rules of Professional Conduct, Rule 1.5(e) ................................................. 5, 10

Northern District of Illinois, Local Rule 83.50............................................................. 5

### MEMORANDUM OF LAW

## I.     INTRODUCTION

Edelson seeks attorneys' fees it alleges it is owed pursuant to an April 3, 2019 letter from Girardi Keese and a December 2, 2021 Agreement with certain Lion Air clients. Both the April 3, 2019 letter and the December 2, 2021 consents, obtained a year and a half after the cases were settled and dismissed, are individually and collectively unenforceable and void as a matter of law under both Illinois and California law. Because those agreements are and void, Edelson has no right to the fees it alleges it is entitled to in this action. Edelson's claims for breach of contract, unjust enrichment, conversion, and its request for an accounting all fail against Mr. Lira in the absence of an enforceable fee agreement with Girardi Keese.

## II.    STATEMENT OF FACTS

### A.  The Underlying Boeing Action

On October 29, 2018, Lion Air Flight 610 crashed into the Java Sea killing all onboard. Families of some of the victims of the crash retained Girardi Keese to prosecute wrongful death claims against Boeing, the plane's manufacturer. All litigation against Boeing arising out of this crash was eventually consolidated into the matter of *In Re: Lion Air Flight JT610 Crash*, No. 18-cv-07686 (N.D. Ill.) ("Boeing Action"). [Docket #1; Complaint ¶¶34, 37].

Girardi Keese maintained its principal place of business in Los Angeles, California. [SMF # 3.] Mr. Lira, a former Girardi Keese attorney, is a resident of the State of California. Mr. Lira is licensed to practice law in the State of California and was previously employed by Girardi Keese as an attorney of the firm. [Statement of Material Fact ("SMF") #1.] Mr. Lira was not an owner or equity partner of the law firm. [SMF #2.]

Edelson PC  acted as local counsel and assisted in the litigation and settlement of the Boeing Action. [Complaint, ¶105]. Edelson is an Illinois professional corporation operating as a law  firm, with its principal place of business in Chicago, Illinois. [SMF #5].

In this matter, Edelson seeks attorneys' fees arising from the settlement of the following Lion Air clients: (1) Bias Ramadhan A.S. Bin Misyadi ("Mr. Bias") [Ex. "3" at p. 18]; 2) Dian

1

Daniaty Binti Udin Zaenudian ("Ms. Dian") [Ex. "3" at p. 21]; (3) Anice Kasin ("Ms. Anice") [Ex. "3" at p. 23]; (4) Elzawarti, Multi Rizki ("Mr. Rizki") [Ex. "3" at p. 25]; and (5) Septiana Damayanti ("Ms. Septiana") [Ex. "3" at p. 28]. (collectively "Lion Air clients".) Those claims were settled in February, March and May of 2019. [Boeing Action Docket #s 427, 424, 384, 593, and 419.]

When Lion Air clients reached a settlement with Boeing, money was transferred from Boeing to Girardi Keese. This money was for the benefit of the Lion Air clients, minus agreed upon attorneys' fees. [Complaint, ¶86.] Mr. Lira did not, at any time, receive any money from the Lion Air clients' settlements. The money was received by Girardi Keese. Girardi Keese did not pay Edelson the share of the attorneys' fees. [Complaint, ¶106.]

Edelson alleges that it entered into a written fee sharing agreement with Girardi Keese which provided that Edelson would act as local counsel, and Edelson would receive 50% of the total attorneys' fees received for a specific set of Lion Air clients. [Complaint ¶¶102, 104]. This agreement was documented by an April 3, 2019 letter drafted by Mr. Griffin, on behalf of Girardi Keese. The entirety of the fee split agreement consists of the following language:

> This will confirm our agreement that our fee split will be 50/50 on the Boeing cases that you have filed with us in Chicago concerning the Lion Air crash. If it turns out that one of our two firms performs significantly more work than expected, or less if the case settles fairly quickly, we will adjust the fee split as would be reasonable to both firms. [SMF #8.]

The cases covered by the April 3, 2019, letter included plaintiffs Mr. Bias, Ms. Dian, Ms. Anice, Mr. Rizki, and Ms. Septiana. [SMF #9.] The Lion Air clients were not copied on the April 3, 2019, letter and the clients did not sign the letter. [SMF #10.] There is no indication they were aware of the "fee split" until December 2021.

Edelson alleges it entered into a second written agreement dated June 17, 2019 with Girardi Keese for cases including other plaintiffs referred to Mr. Lira. Edelson is not seeking attorneys' fees arising out of those client matters. [SMF #s 11 and 12.][1]

---

[1] In response to all discovery requests related to these plaintiffs Edelson stated: "Plaintiff objects to this Request as irrelevant, in that Edelson does not seek attorney's fees from the parties in this case related to

Edelson was terminated and replaced as counsel in the Boeing Action on December 16 and 21, 2020. [SMF #13.]

On December 8, 9, and 14, 2021, the Court in the Boeing Action held a hearing regarding Edelson's OSC re Contempt. At the Contempt Hearing,  Mr. Jay Edelson, the Founder and CEO of Edelson PC, testified, that he was aware that the Edelson firm had a fee-sharing agreement with Griardi Keese, he was unaware if that agreement was ever confirmed by the clients, but that Edelson confirmed the "fee-split" in "the last few weeks" because the issue that the clients had not signed the agreements had been raised.

In December 2021, the Lion Air Clients each executed a "AGREEMENT TO DIVISION OF FEES BETWEEN LAW FIRMS." The Agreement contains the following terms:

1. The [clients] agree that Girardi Keese/Keith Griffin, on the one hand, and Edelson PC on the other hand, may divide any attorneys' fees properly due and owing in this matter (whether directly or indirectly) in accordance with the terms set forth in Mr. Griffin's letter of April 3, 2019, attached as Exhibit A.
2. To the extent any attorneys' fees are to be received by Edelson PC, it shall first notify the [Clients] of its entitlement. Unless and until paragraph 3 is triggered, Edelson PC will deposit these funds in an escrow account controlled by the [Clients'] current lawyers.
3. If at any time, and for any reason, the [Clients] desire a refund of any (or all) fees recovered by Edelson PC from this case, the [Clients] shall notify Edelson PC in writing…Edelson PC will, within seven days, refund any portion of the fee it has collected directly or indirectly to the [Clients]… [SMF #14.]

## B. Procedural Status

On December 2, 2020, Edelson filed the instant Complaint.

On July 19, 2021, this Court issued a Memorandum Opinion and Order Granting Lira's Motion to Dismiss, which stated that since the Edelson firm no longer represented the Lion Air clients, it lacked standing to pursue claims for missing monies on their behalf. [Docket #91.]

After this Court denied Griffin's Rule 12 (c) Motion for Judgment on these same issues on August 30, 2021 [Dkt. #97], on December 2, 2021, Edelson purportedly obtained the clients'

---

the representation of this Lion Air client. Plaintiff will not conduct a search for or respond to this Request." [Robie Decl. ¶8  .]

written consent to the April 3, 2019 letter. ("December 2, 2021 consent"). [SMF #14.]

On December 21, 2021, Mr. Lira propounded requests for production seeking all agreements upon which Edelson is basing their claim for fees in this action. Edelson responded:

> "Plaintiff has produced the fee-sharing agreements entered into between Plaintiff and Girardi Keese, which are in the form of letters between Edelson PC, Mr. Lira, and Mr. Griffin. *See* EDELSON 000030-000031.[2] Plaintiff also has produced the non-privileged documents evidencing client assent to the fee-sharing agreements. *See* EDELSON 000001-000029.[3]" (Exhibit 6)

### III.    LEGAL STANDARD

This motion only concerns legal issues and there are no triable issues of fact.  Summary judgment is the proper procedure to dismiss this action. Rule 56(c).

### IV.    THE FEE SHARING-AGREEMENT IS VOID UNDER CALIFORNIA LAW

#### A.  California Law and Illinois Law Apply to this  Dispute.

The April 3, 2019 letter does not contain a choice of law provision.

In general, "[f]ederal courts hearing state law claims under diversity or supplemental jurisdiction apply the forum state's choice of law rules to select the applicable state substantive law" *McCoy v. Iberdrola Renewables, Inc*., 760 F.3d 674, 684 (7th Cir. 2014), unless there is "an actual conflict with another state's law." *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020). Here, the Rules of Professional Conduct are not identical between California and Illinois. As such, Mr. Lira has analyzed the applicability of California and Illinois Rules, and the ABA Model Rules. Regardless of which Rules are applied, the result is the same – the April 3, 2019 letter and December 2, 2021 Agreement are individually and collectively void.[4]

When conducting a substantive choice-of-law analysis, Illinois courts follow the approach of the Second Restatement of Conflicts of Laws. *Barbara's Sales, Inc. v. Intel Corp.*, 879 N.E.2d 910, 919 (Ill. 2007). The Northern District of Illinois has address the issue of which

---

[2] The documents with these bates numbers are the April 3, 2019 and the June 17, 2019 letters.
[3] The documents with these bates numbers are Exhibit "3."
[4] The June 17, 2019 letter is likewise void. However, since Edelson is not seeking fees related to the matters covered by that letter, whether the June 17, 2019 letter is a proper fee agreement is immaterial for purposes of this instant motion.

Rules of Professional Conduct apply in this exact situation—if the state laws conflict then an Illinois lawyer is bound by Illinois law and an out of state lawyer is bound by the laws of the state in which his principal office is located. Northern District of Illinois, LR 83.50.

Here, in interpreting the fee agreements, the Girardi Keese Attorneys would be bound by California law and the Edelson attorneys would be bound by Illinois law.

## V. THE FEE SHARING-AGREEMENTS ARE VOID UNDER ILLINOIS LAW

### A. The Agreements do not meet the requirements of Ill. Rule of Prof. Conduct Rule 1.5.

Illinois Rules of Professional Conduct, Rule 1.5(b) (eff. Jan. 1, 2010) regarding attorney-client fee agreements provides that:

> "…(b)The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing, before or **within a reasonable time** after commencing the representation, except when the lawyer will charge a regularly represented client on the same basis or rate. Any changes in the basis or rate of the fee or expenses shall also be communicated to the client." (emphasis added.)

Illinois Rules of Professional Conduct, Rule 1.5(e) regarding the division of fees provides:

> (e) A division of a fee between lawyers who are not in the same firm may be made only if:
> (1)      the division is in proportion to the services performed by each lawyer, or if the primary service performed by one lawyer is the referral of the client to another lawyer and each lawyer assumes joint financial responsibility for the representation;
> (2)      the client agrees to the arrangement, including the share each lawyer will receive, **and the agreement is confirmed in writing**;[5] and
> (3)      the total fee is reasonable. (emphasis added).

Neither the April 3, 2019 nor the December 2, 2021 agreements comply with the requirements of Ill. Prof. Conduct Rule 1.5(e). The April 3, 2019 letter does not state what the final division of the fees will be. The letter states that the "fee split will be 50/50" but "[i]f it turns out that one of our two firms preforms significantly more work than expected, or less if the

---

[5] Please note the future tense of the phrase "the share each lawyer will receive". This issue is analyzed below in Section VI and is indicative that the fee sharing agreement must be signed at or in reasonable proximity to the outset of the representation, not 32 months after the representation ends.

case settles fairly quickly, we will adjust the fee split as would be reasonable to both firms." The letter was not agreed to by the clients during any phase of the representation.

The December 2, 2021 consents do not meet the requirements of Rule 1.5 either. The consents state that Girardi Keese/Keith Griffin and Edelson "**may** divide any attorneys' fees properly due and owing in this matter (whether directly or indirectly) in accordance with the terms set forth in Mr. Griffin's letter of April 3, 2019." There is no determination whether that the fee split will be 50/50 or whether it will be subject to an adjustment based on the work performed by each firm. There is no agreement that the fees will be proportional to the work done.

The Edelson firm must demonstrate that its share of the attorneys' fees under a fee agreement are reasonable and proportionate to the work done in the underlying matter. *McCracken & McCracken, P.C. v. Haegele*, 248 Ill. App. 3d 553, 561, 618 N.E.2d 577, 582 (1993). Edelson objected to all discovery requests in this action seeking evidence of work done by the Edelson firm in the underlying action: "Plaintiff objects to this Request as irrelevant, in that Edelson only seeks a fee split based on the percentages set forth in the letters with Mr. Lira and Mr. Griffin, to which the clients have agreed. These letters have already been produced to Mr. Lira."

The only way this Court or Lira could ever determine whether the work by Edelson was "in proportion to the services performed by each lawyer" is for Edelson to have provided that information in discovery. They objected to doing so. [Robie Decl. ¶ 7.]  They cannot now ask to be excused from the consequences of those objections.[6]

**B.  The Agreements are Void under Illinois Law.**

Fee-sharing arrangements are acceptable under Illinois law only if they serve the client's best interest. *Woods v. Southwest Airlines, Co.* (N.D. Ill.2007) 523 F.Supp.2d 812, 822. In

---

[6] Nor can they belatedly withdraw the objection in order to place before the Court information they refused to provided in discovery. *Durham v. The Loan Store, Inc.*, No. 04 C 6627, 2006 WL 1371423, at *2 (N.D. Ill. May 16, 2006); Fed.R.Civ.Pro, Rule 37(c)(1).

Illinois, a client demonstrates whether a fee arrangement is in his or her best interest by consenting to it, not consenting to it, or changing his or her mind about consenting to it. *Id.*

In *Bennett v. GlaxoSmithKline LLC*, 2020 IL App (5th) 180281, 151 N.E.3d 1184 (Ill. 2020), the Court of Appeal held that an agreement which is in violation of the provisions of Rule 1.5 is against public policy and unenforceable. *Id.* at 1195.

In *Bennet*, a "bundled" complaint (*Gabel v. GlaxoSmithKline*, No. 09-L-621 (Cir. Ct. St. Clair County)) was filed against defendant, GlaxoSmithKline LLC ("GSK"), on behalf of numerous individual plaintiffs who alleged they suffered cardiovascular injuries after taking Avandia. Attorney Steven Johnson was retained to sue GSK on behalf of plaintiffs. He subsequently associated attorney Michael Baum to act as trial counsel. They agreed to a fee arrangement whereby Baum would receive 75% of the attorney fees collected from certain clients in that action, and 10% of the attorney fees from a separate set of clients in the underlying action. A dispute arose regarding the attorney's fees and the circuit court ordered payment of Baum's attorney fees be made from the plaintiffs' settlement fund. *Id* at 1193.

On Appeal, the *Bennett* Court held that the Illinois Rules of Professional Conduct of 2010 provide a comprehensive set of rules governing the professional conduct of Illinois attorneys. *Id.* The Rules of Professional Conduct are part of the Illinois Supreme Court rules, and so they operate with the force and effect of law. *In re Vrdolyak*, 137 Ill. 2d 407, 422, 148 Ill.Dec. 243, 560 N.E.2d 840 (1990). The Supreme Court rules are not aspirational or mere suggestions; they have the force and effect of law. *Bright v. Dicke*, 166 Ill. 2d 204, 210, 209 Ill.Dec. 735, 652 N.E.2d 275 (1995). Additionally, the Rules of Professional Conduct are interpreted in accordance with the principles of statutory construction. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, 21-22, 418 Ill.Dec. 242, 90 N.E.3d 400.

Rule 1.5 embodies Illinois's public policy of placing the rights of clients above any remedies of lawyers seeking to enforce fee-sharing arrangements. *Bennett*, supra, at 1195; *Romanek v. Connelly*, 324 Ill. App. 3d 393, 399, 257 Ill.Dec. 436, 753 N.E.2d 1062 (2001). A fee-sharing agreement that violates the provisions of Rule 1.5 is against public policy and

unenforceable. *Thompson v. Hiter*, 356 Ill. App. 3d 574, 589-90, 292 Ill.Dec. 362, 826 N.E.2d 503 (2005). Since the clients were not informed of, and did not consent to the fee division agreement, the *Bennett* Court held that the fee-sharing agreement between Baum and Johnson was unenforceable pursuant to Rule 1.5 as against public policy. *Bennet* supra, at 1196.

Other Illinois Courts have similarly held that the failure to comply with Rule 1.5(e) precludes enforcement of the fee-sharing arrangement. *Hiter* supra, 356 Ill. App. 3d at 590; *Schniederjon v. Krupa*, 162 Ill. App. 3d 192, 195, 113 Ill.Dec. 189, 514 N.E.2d 1200 (1987) (courts will not enforce an agreement that is against public policy, no matter "whose ox is gored"; *Donald W. Fohrman & Assocs., Ltd. v. Alberts,* 2014 IL App (1st) 123351, 7 N.E.3d 807, 7 N.E.3d 807.) Strict compliance with the applicable provisions of the Rules is required for any claim seeking fees under a fee-sharing agreement to be successful. *Paul B. Episcope, Ltd. v. Law Offices of Campbell and Di Vencenzo,* 373 Ill.App.3d 384 at 392, Ill.Dec. 771, 869 N.E.2d 784.

Here, the Lion Air clients were not informed of the fee arrangement between Edelson and Girardi Keese during the period of the representation by the two firms. Edelson's belated December 2021 attempt to cure this defect is unavailing. The client consent is too late as a matter of law. Edelson's belated attempt to obtain consent to the fee split well after the clients no longer have an opportunity to make an informed decision about the retention of counsel or the division of labor between them in the fee sharing agreement contemplated by the attorney at the time of the arrangement, is against public policy to protect the interest of the clients.

Obtaining the clients' consent after the case has already been settled defeats the objective of Illinois Rule 1.5.  In *Naughton v. Pfaff* (2016) IL App (2d) 150360, ¶¶65-66, 57 N.E.3d 503, 520–21, the Court held that "[u]nder Rule 1.5, the obligation to ensure that the client signed such a disclosure could not be delegated to [defendant] alone, and the lack of the signed disclosure precludes [plaintiff] from recovering under the alleged fee-sharing agreement underlying his breach-of-fiduciary-duty claim." *Naughton*, supra, at 521 [granting summary judgment].

8

Rule 1.5 was not strictly followed. Client consent was not properly obtained during the representation. Post-settlement consent is insufficient under Illinois law.

## VI. THE FEE SHARING AGREEMENT IS VOID UNDER CALIFORNIA LAW.

California Rules of Professional Conduct, Rule 1.5.1(a) (Adopted, eff. Nov. 1, 2018) concerns fee divisions among lawyers in different firms. The Rule states that:

> (a) Lawyers who are not in the same law firm shall not divide a fee for legal services unless:
>> (1)     the lawyers enter into a written agreement to divide the fee;
>> (2)     **the client has consented in writing, <u>either at the time the lawyers enter into the agreement to divide the fee or as soon thereafter as reasonably practicable</u>, after a full written disclosure to the client** of: (i) the fact that a division of fees will be made; (ii) the identity of the lawyers or law firms that are parties to the division; and (iii) the terms of the division;  (emphasis added).

The April 3, 2019, letter and the December 2, 2021 Consents do not meet these requirements.

California's Supreme Court noted that the rules requiring written client consent to fee-sharing were specifically and "formally approved in order 'to protect the public[.]'" *Chambers v. Kay*, 29 Cal.4th 142, 158 (2002). The Rule's disclosure and consent requirements are intended to safeguard clients' right to know how their legal fees will be determined and the extent of, and basis for, their attorneys' sharing of fees. *Huskinson & Brown v. Wolf*, 32 Cal.4th 453, 459 (2004); *Mark v. Spencer*, 166 Cal.App.4th 219, 226 (2008). It is well settled that "a contract which is against public policy, good morals, or the express mandate of law cannot be made the basis of either legal or equitable relief in the courts[.]" *Bank of Orlando v. Harlan*, 188 Cal. 413, 421 (1922).

California Rule of Prof. Conduct 1.5.1(a) recognizes that fee division agreements create a potential attorney-client conflict of interest. *Mark v. Spencer,* 166 Cal.App.4th 219, 225 (2008). For this reason timely client consent is essential.

The clients did not consent in writing to the April 3, 2019 letter "at the time **the lawyers** enter[ed] into the agreement to divide the fee or as soon thereafter as reasonably practicable." The terms of the division included in the letter lack any specificity as the fee split can be adjusted

based on what the lawyers decide is "reasonable" sometime down the road. This does not meet the requirement of CRPC 1.5.

The December 2, 2021 consents are likewise unenforceable and against public policy as the clients were not informed of, and did not consent to, a 50/50 attorney fee division in 2019 or at any time prior to the resolution of their claims against Boeing. The Rule requires that the consent be entered into at the time of the April 3, 2019, letter or as soon thereafter as reasonably practicable. Cal. R. Prof. Conduct R. 1.5.1(a)(2). Edelson obtained the December 2, 2021 consent 32 months after the April 3, 2019 letter and after its representation of the purportedly consenting clients ended. That is violative of California Rule 1.5.1(a)(2).

The December 2, 2021 Consents also do not identify a specific division of fees. They merely state that Girardi Keese and Edelson **may** divide attorneys' fees in accordance with the indefinite fee split in the April 3, 2019 letter.

Allowing Edelson's belated attempt to obtain consent to a fee division defeats the purpose of the Rule's intent and purpose to protect the client's interest. Edelson's self-serving attempt to collect attorneys' fees in this matter long after the attorneys entered into an alleged fee division agreement, and long after the case was settled and dismissed, is against public policy and is therefore void as a matter of law.

## VII. THE DECEMBER 2, 2021 CONSENTS ARE VOID UNDER THE AMERICAN BAR ASSOCIATION MODEL RULES OF PROFESSIONAL CONDUCT, RULE 1.5

Rule 1.5(e) of the Illinois Rules of Professional Conduct, is nearly identical to the Rule 1.5(e) of the American Bar Association ("ABA") Model Rules of Professional Conduct[7], which provides as follows:

---

[7] The only difference between the Illinois Rules of Professional Conduct, Rule 1.5(e), and the American Bar Association Rules, Rule 1.5(e), is that the former adds the following in italics: "(1) the division is in proportion to the services performed by each lawyer, or if the primary service performed by one lawyer is the referral of the client to another lawyer and each lawyer assumes joint financial responsibility for the representation."

(e) A division of a fee between lawyers who are not in the same firm may be made only if:

(1)     the division is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation;

(2)     the client agrees to the arrangement, including the share each lawyer *will receive*, and the agreement is confirmed in writing; and

(3)     the total fee is reasonable.  (emphasis added).

In April 2016, the ABA issued Formal Ethics Opinion No. 16-474, in connection with ABA Rule 1.5(e), the formal opinion stated:

 "[w]hen one lawyer refers a matter to a second lawyer outside of the firm and the first lawyer either performs legal services in connection with or assumes joint responsibility for the matter and accepts a referral fee, **the agreement regarding the division of fees, including client consent confirmed in writing, must be completed before or within a reasonable time after the commencement of the representation**." ABA Formal Op. 16-474 at 1 (emphasis added). [Exhibit "4."]

The Opinion goes on to state that:

"Rule 1.5(e)(2) uses the future tense in the phrase 'including the share each lawyer will receive' to describe what the fee division agreement must include, and Comment [7] to Rule 1.5 explains 'the client must agree to the arrangement, including the share that each lawyer is to receive . . . .' **The use of the future tense envisions that the fee division agreement will precede the division of fees. Such an agreement should not be entered into toward the end of such a relationship. Instead, the division of fees must be agreed to either before or within a reasonable time after commencing the representation**." *Id.* at 6 (emphasis added).

In a case in the Southern District of New York, the Court held that the client's signing of the confidential settlement agreement at the end of his case, did not bring the fee sharing agreement into compliance with either New York Rule of Professional Conduct 1.5(g) or New Jersey Rule of Professional Conduct 1.5(e). *Tarzy v. Dwyer*, No. 18 CIV. 1456 (JFK), 2019 WL 132280, at *1–2 (S.D.N.Y. Jan. 8, 2019). The Court stated:

**"This Court has found no case law that holds that a client can ratify a fee sharing agreement after a dispute has been litigated. In fact, the ABA has authored a formal opinion interpreting ABA Model Rule of Professional Conduct 1.5 -- on which both rules are based -- which states that a client's consent to a fee sharing agreement must be obtained either before or within a reasonable time after commencing the representation**. ABA Comm'n on Ethics & Prof'l Responsibility, Formal Op. 474 (2016), at 6." *Tarzy v. Dwyer*, *supra*, at *8 (S.D.N.Y. Jan. 8, 2019) (emphasis added).

11

The Second Circuit issued a similar ruling in in *Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis Brittingham, Gladd & Carwile, P.C*., (2d Cir. 2010) 596 F.3d 84. There, the appellants argued that even if there was a violation of the fee division rules, it was a prospective violation of technical requirements and curable, presumably by providing the client with a "joint responsibility" letter before the fees were paid. *Id.* at 92. The Circuit Court disagreed, holding that while the fee division rule "does not impose an explicit time requirement, it clearly anticipates compliance with its requirements early on in the representation, as it requires that '[t]he client consents to the employment of the other lawyer.'" *Id.* The Court continued:

> "Moreover, the undertaking of joint responsibility is difficult (to say the least) to accomplish, other than as a charade, after a settlement with the defendant has been reached. Therefore, the district court did not abuse its discretion by not allowing appellants to 'cure' the violation after a settlement and scheduling of an infant compromise hearing." *Id.*

Here, Edelson should not be allowed to "cure" the violation by belatedly obtaining the clients' post settlement consent to a purported fee division that was entered into 32 months prior. Edelson's actions have led to precisely what the court in *Wagner* condemned when it stated that the undertaking of joint responsibility is difficult to accomplish, other than as a charade, after a settlement has been reached. As stated previously, the agreements also fail to specify the share of the fee to be received.

## VIII. THE UNJUST ENRICHMENT CLAIM FAILS AS TO DEFENDANT LIRA

Edelson alleges that it has "contractually created property rights to specific percentages of attorneys' fees" and that Lira is holding those funds. (Complaint ¶¶87, 93.)

To state a claim of unjust enrichment, "a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience." *Wilson v. Career Educ. Corp.*, 729 F.3d 665, 682 (7th Cir. 2013) (quoting *HPI Health Care Servs.*, 131 Ill.2d at 160, 137 Ill.Dec. 19, 545 N.E.2d 672*); Lectrodryer v. SeoulBank,* 77 Cal. App. 4th 723, 726, 91 Cal. Rptr. 2d 881, 883 (2000). While a plaintiff need not show loss or damages, he must show a

12

detriment—and, significantly, a connection between the detriment and the defendant's retention of the benefit. *Cleary v. Philip Morris Inc.*, 656 F.3d 511, 518–19 (7th Cir. 2011).

Edelson alleges its detriment is that Lira is holding funds belonging to it pursuant to "contractually created property rights." If Edelson has no right to fees pursuant to the April 3, 2019 letter and the December 2, 2021 consent because they are void as a matter of law, there is no detriment that has been suffered by Edelson and Edelson cannot establish this claim against Mr. Lira.

## IX.     THE ACCOUNTING CLAIM FAILS AS TO DEFENDANT LIRA

Edelson alleges that the agreed upon attorneys' fees were transferred from Boeing to GK and that an accounting is necessary to determine what party is responsible, in what amount, for the missing attorneys' fees. Like Edelson's other claims, the request for an accounting fails if Edelson has no contractual right to attorneys' fees.[8]

An accounting is an equitable proceeding which is proper where there is an unliquidated and unascertained amount owing that cannot be determined without an examination of the debits and credits on the books to determine what is due and owing. *Prakashpalan v. Engstrom, Lipscomb & Lack*, 223 Cal. App. 4th 1105, 1136–37, 167 Cal. Rptr. 3d 832, 859 (2014), *as modified on denial of reh'g* (Feb. 27, 2014) *Drake Enterprises, Inc. v. Colloid Environmental Technologies Co.*, No. 08 C 6753, 2009 WL 1789355, *2 (N.D.Ill. June 24, 2009) (citation and internal quotation marks omitted)

Without a valid contract Edelson cannot establish that it suffered the alleged injury in fact (the loss of attorneys' fees it was owed). If there is no right to the fees, there is no equitable basis to trace where any funds went. For these reasons, Edelson is not entitled to an accounting in this matter.

## X.     THE BREACH OF CONTRACT CLAIM FAILS AS TO DEFENDANT LIRA

---

[8] As previously stated, Edelson has refused to provide discovery responses necessary to permit a determination as to the proportion of services performed—a necessary prerequisite to the establishment of a quantum meruit clam for fees. Edelson cannot now belatedly waive its objections and provide those responses at this juncture to opposed this motion.

In order to prevail on a breach of contract claim a plaintiff must establish: "(1) the existence of a valid and enforceable contract; (2) performance by the plaintiff; (3) breach of contract by the defendant; and (4) resultant injury to the plaintiff." *Hess v. Kanoski & Assocs.*, 668 F.3d 446, 452 (7th Cir. 2012); *Coles v. Glaser*, 2 Cal. App. 5th 384, 391, 205 Cal. Rptr. 3d 922, 927 (2016). Since the April 3, 2019 letter and December 2, 2021 Agreement upon which Edelson bases its breach of contract claims are void as a matter of law. Edelson cannot recover under its breach of contract claims in this action.

## XI. THE CONVERSION CLAIM FAILS AS TO DEFENDANT LIRA

Edelson alleges they have a contractually created property right specific to percentages of the attorneys' fees generated by those settlement funds." (Complaint ¶116.) "Under those contracts, Plaintiff Edelson has an absolute and unconditional right to the immediate possession of the attorneys' fees…" (Complaint ¶117) Lira has wrongfully and without authorization assumed control and ownership over the attorneys' fees and refused to provide them to Plaintiff. (Complaint ¶119.) "Edelson limits its conversion claim and the resulting damages to 'its share of the attorneys' fees." [Docket # 91 at p 25.]

Conversion is the wrongful exercise of dominion over the property of another. "To prove conversion under Illinois law, a plaintiff must show that: (1) he has a right to the property at issue; (2) he has an absolute unconditional right to the immediate possession of the property; (3) he made a demand for possession; and (4) the defendant wrongfully and without authorization assumed control, dominion, or ownership over the property." *Stevens v. Interactive Fin. Advisors, Inc.*, 830 F.3d 735, 738 (7th Cir. 2016). Likewise, the elements of a conversion claim in California are: (1) the plaintiff's ownership or right to possession of the property; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages. *Hodges v. Cty. of Placer*, 41 Cal. App. 5th 537, 551, 254 Cal. Rptr. 3d 324, 335 (2019).

The April 3, 2019 letter and the December 2, 2021 Consents are not valid enforceable agreements. Edelson has no property right to any attorneys fees and they cannot maintain their claim that Mr. Lira has converted fees belonging to them under those agreements.

14

## XII.   CONCLUSION

Edelson's entire action relies on the prerequisite requirement that Edelson had a proper fee sharing agreement with Girardi Keese for the Lion Air Clients' matters. If that agreement is unenforceable under the Illinois, California, and ABA Rules and is thus void as a matter of law, then Edelson has no claim against Mr. Lira to enforce that agreement. Without a right to those fees, Edelson cannot prosecute its claims against Mr. Lira. As such, all Counts should be dismissed. For the foregoing reasons, Defendant David Lira respectfully requests that the Court dismiss Plaintiff's Count I for unjust enrichment, Count II for accounting, Count III for breach of contract, and Count V for conversion.

DAVID LIRA

/s/ Leigh P. Robie

By:    _____

His Attorney

Edith R. Matthai, Esq.-Pro Hac Vice
Leigh P. Robie, Esq.-Pro Hac Vice
350 S. Grand Avenue, Suite 3950
Los Angeles, California  90071
(213) 706-8000
ematthai@romalaw.com
lrobie@romalaw.com
**Attorneys for Defendant David Lira**

15

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 25, 2022, I electronically filed the foregoing document with the Clerk of Court, using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record via transmission of Notices of Electronic Filing generated by CM/ECF.

/s/ Leigh P. Robie