**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **EDELSON PC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **Case No. 20 C 7115** |
| | ) | |
| **THOMAS GIRARDI, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

MATTHEW F. KENNELLY, District Judge:

This case arises from the legal aftermath of the Lion Air Flight 610 tragedy, where both Girardi Keese and Edelson PC represented dozens of crash victim families in a lawsuit against Boeing. In December 2020, after learning that several clients had not received all of their settlement funds, Edelson filed this lawsuit against Girardi Keese and a number of related individuals and entities, alleging that they had helped embezzle the proceeds of the Lion Air settlements and failed to compensate Edelson for its work on the lawsuit. As relevant to this decision, two of those defendants are Keith Griffin and David Lira, who were attorneys at Girardi Keese when the funds were allegedly stolen. Griffin and Lira have now moved for summary judgment. For the reasons set forth below, the Court grants the motions on certain claims but not on others.

**Background**

The following facts are undisputed except where otherwise noted. Girardi Keese

was a law firm based in California that is now defunct and the subject of bankruptcy proceedings. Edelson is a law firm based in Chicago. In 2019, Girardi Keese brought Edelson in as local counsel to help represent the families of victims of the Lion Air 610 crash in a lawsuit based in the Northern District of Illinois. According to Edelson, the two law firms entered into a fee-sharing agreement under which Edelson would receive fifty percent of the total attorneys' fees. This agreement was memorialized in a letter from Girardi Keese dated April 3, 2019:

> This will confirm our agreement that our fee split will be 50/50 on the Boeing cases that you have filed with us in Chicago concerning the Lion Air crash. If it turns out that one of our two firms performs significantly more work than expected, or less if the case settles fairly quickly, we will adjust the fee split as would be reasonable to both firms. Thanks again for your work so far and looking forward to our future work together.

Griffin Opening Mem. in Supp. of Summ. J. at 2 (dkt. no. 121-1). Importantly, however, the Lion Air clients were not copied on this letter, and they never signed this particular written agreement. This initial lack of client consent is the focus of Griffin's and Lira's motions for summary judgment.

In the first few weeks of 2020, the parties in the Lion Air litigation finalized individual settlements for each of the families that Girardi Keese and Edelson represented. The litigation against Boeing was dismissed on February 24, 2020. Boeing transferred the clients' settlement payments to Girardi Keese, which was responsible for disbursing funds to the clients. Although there is considerable dispute over what exactly happened to those funds, what is clear is that the clients did not receive everything to which they were entitled. Additionally, it is undisputed that Girardi Keese did not pay Edelson any attorneys' fees.

In December 2020, Edelson filed a petition for rule to show cause in the related

Lion Air case, and Judge Thomas Durkin held Girardi Keese and Tom Girardi in contempt of court and entered judgments against the firm and Girardi for the outstanding amounts of each family's balance. Edelson also filed this lawsuit that same month. In July 2021, this Court granted Lira's and Griffin's motions to dismiss in part and stayed litigation on Edelson's unjust enrichment claim under 11 U.S.C. § 362(a)(3) because of the bankruptcy proceedings against Girardi Keese. *See Edelson PC v. Girardi*, No. 20 C 7115, 2021 WL 3033616 (N.D. Ill. July 19, 2021).

In December 2021, Edelson executed an agreement with the Lion Air clients. This agreement contained the following provisions:

1. The [clients] agree that Girardi Keese/Keith Griffin, on the one hand, and Edelson PC on the other hand, may divide any attorneys' fees properly due and owing in this matter (whether directly or indirectly) in accordance with the terms set forth in Mr. Griffin's letter of April 3, 2019, attached as Exhibit A.
2. To the extent any attorneys' fees are to be received by Edelson PC, it shall first notify the [Clients] of its entitlement. Unless and until paragraph 3 is triggered, Edelson PC will deposit these funds in an escrow account controlled by the [Clients'] current lawyers.
3. If at any time, and for any reason, the [Clients] desire a refund of any (or all) fees recovered by Edelson PC from this case, the [Clients] shall notify Edelson PC in writing . . . Edelson PC will, within seven days, refund any portion of the fee it has collected directly or indirectly to the [Clients] . . . .

Lira Opening Mem. in Supp. of Summ. J. at 3 (dkt. no. 130-1) (alterations in original).

In March 2021, Griffin and Lira separately filed motions for summary judgment. In April 2021, Edelson filed a motion for leave to file an amended complaint, which the Court continued pending its ruling on the motions for summary judgment.

## Discussion

To obtain summary judgment, a party must demonstrate that "there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a). There is a genuine issue of material fact if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Hanover Ins. Co. v. N. Bldg. Co.*, 751 F.3d 788, 791 (7th Cir. 2014) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The non-moving party must identify "specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). "If the nonmoving party fails to establish the existence of an element essential to his case, one on which he would bear the burden of proof at trial, summary judgment must be granted to the moving party." *Cervantes v. Ardagh Grp.*, 914 F.3d 560, 564 (7th Cir. 2019).

**A.    Contract enforceability**

**1.    Choice of law**

As an initial matter, the parties dispute whether Illinois or California law should control in determining whether the fee-sharing agreement is valid. This distinction is important because both states' professional rules of conduct have the force of law, meaning the failure to comply with the rules can make a contract unenforceable. *See In re Vrdolyak*, 137 Ill. 2d 407, 422, 560 N.E.2d 840, 845 (1990); *Chambers v. Kay*, 29 Cal. 4th 142, 145, 56 P.3d 645, 647 (2002). Although Edelson—which advocates for application of Illinois law—correctly points out that the defendants have not engaged in a choice-of-law analysis, the Court need not rely on this omission because the proper analysis leads to the same end point: Illinois law applies.

When a federal court sits in diversity, it applies the choice-of-law rules of the forum state, in this case Illinois. *See Sosa v. Onfido, Inc.*, 8 F.4th 631, 637 (7th Cir. 2021). "Under Illinois choice-of-law rules, forum law is applied 'unless an actual conflict

with another state's law is shown, or the parties agree that forum law does not apply.'" *Id.* (quoting *Gunn v. Cont'l Cas. Co.*, 968 F.3d 802, 808 (7th Cir. 2020)). Actual conflict is shown by demonstrating that "a difference in law will make a difference in the outcome." *Bridgeview Health Care Ctr., Ltd. v. State Farm Fire & Cas. Co.*, 2014 IL 116389, ¶ 14, 10 N.E.3d 902, 905 (quotation omitted). If there is a conflict, Illinois applies the law of the forum that has "the most significant relationship" with the dispute and follows the approach in the Second Restatement of Conflict of Laws. *Townsend v. Sears, Roebuck & Co.*, 227 Ill. 2d 147, 160, 879 N.E.2d 893, 901 (2007) (listing factors to consider, including "the place where the injury occurred" and "the place where the relationship . . . is centered"). Finally, "[t]he party seeking the choice-of-law determination bears the burden of demonstrating a conflict." *Bridgeview Health Care*, 2014 IL 116389, ¶ 14, 10 N.E.3d at 905.

A comparison of the two states' relevant rules reveals a key difference regarding the necessary timing of client consent, which could make a difference in the outcome. Illinois Rule of Professional Conduct 1.5(e) covers attorney fee-sharing agreements; subparagraph two states that such a division requires that "the client agrees to the arrangement, including the share each lawyer will receive, and the agreement is confirmed in writing." Ill. R. Prof. Conduct 1.5(e)(2). California Rule of Professional Conduct 1.5.1(a) similarly covers the division of attorney fees; subparagraph two requires that "the client has consented in writing, *either at the time the lawyers enter into the agreement to divide the fee or as soon thereafter as reasonably practicable*, after a full written disclosure to the client." Cal. R. Prof. Conduct 1.5.1(a)(2) (emphasis added). Notably, California's rule contains a temporal element that contemplates obtaining client

5

consent in short order; Illinois's rule, in contrast, contains no such element. Because Edelson obtained the Lion Air client signatures almost two years after first agreeing to the 50-50 fee split with Girardi Keese, this likely suffices as a "difference in law [that] will make a difference in the outcome." *Bridgeview Health Care*, 2014 IL 116389, ¶ 14, 10 N.E.3d at 905.

Given this conflict, the Court must address which forum has the most significant relationship to the dispute. On this front, the answer is clearly Illinois. First and foremost, the Lion Air lawsuit is being litigated in the Northern District of Illinois, meaning the attorney-client relationship is "centered" here. *See, e.g.*, *Royce v. Michael R. Needle, P.C.*, 381 F. Supp. 3d 968, 979 (N.D. Ill. 2019) (concluding that Illinois law applied when the underlying lawsuit was litigated in the Northern District of Illinois). On top of that, applying another state's law would subject an Illinois attorney to the ethics rules of another state when serving as counsel in a lawsuit filed in Illinois, which would make no sense at all. *Cf.* N.D. Ill. LR 83.50 (explaining that Illinois lawyers are governed by the Illinois Rules of Professional Conduct when the ABA Model Rules are inconsistent with Illinois's rules). Illinois law does not call for this. In this regard, the Court notes that at least one Illinois court has applied the state's ethics rules to fee-sharing agreements between lawyers of other states when appearing in this state *pro hac vice*. *See, e.g.*, *Bennett v. GlaxoSmithKline LLC*, 2020 IL App (5th) 180281, ¶ 59, 151 N.E.3d 1184, 1197 (applying Rule 1.5(e) to a fee-sharing agreement between Texas and California attorneys when the lawsuit was in Illinois).

The Court concludes that Illinois law applies, and thus Illinois's Rules of Professional Conduct govern the enforceability of the fee-sharing agreement.

6

2.      **Breach of contract**

The primary disagreement between the parties is whether the fee-sharing

agreement, ultimately signed by the Lion Air clients in December 2021, is an

enforceable contract.  This dispute hinges on whether the contract complied with the

Illinois Rules of Professional Conduct, which as the Court has noted have the force of

law in Illinois.  *See In re Vrdolyak*, 137 Ill. 2d at 422, 560 N.E.2d at 845.  The

defendants argue that the agreement is not enforceable because the Lion Air clients

signed off too late.  In their view, Illinois Rule of Professional Conduct 1.5(e) requires

clients to consent to any fee-sharing agreement within a reasonable period of time—an

interpretation of the rule that the ABA supports—and that this did not happen here.

Edelson, on the other hand, argues that the plain language of Rule 1.5(e) indicates that

there is no time limitation for obtaining client consent, so long as it occurs before the

fees are divided.  Additionally, to the extent that the ABA has suggested that consent

should be obtained at the outset of the fee-sharing arrangement, Edelson contends that

the ABA Model Rules are not binding in Illinois.

As mentioned above, Rule 1.5(e) is unlike other state rules concerning fee-

sharing agreements because it includes no express requirement of client consent at or

near the outset.  In its entirety, the rule provides:

> (e) A division of a fee between lawyers who are not in the same firm may
> be made only if:
>> (1) the division is in proportion to the services performed by each
>> lawyer, or if the primary service performed by one lawyer is the
>> referral of the client to another lawyer and each lawyer assumes
>> joint financial responsibility for the representation;
>> (2) the client agrees to the arrangement, including the share each
>> lawyer will receive, and the agreement is confirmed in writing; and
>> (3) the total fee is reasonable.

Ill. R. Prof. Conduct 1.5(e).  The "will receive" language of subparagraph two indicates that the client must agree to the arrangement *before* the attorneys actually divide any fees.  But this is the only temporal limitation the Rule contains.  Unlike other states such as California and Texas, there is no other language limiting when that consent must be obtained.  *See* Cal. R. Prof. Conduct 1.5.1(a); Tex. R. Prof. Conduct 1.04(f)(2) (requiring "the client consents in writing to the terms of the arrangement prior to the time of the association or referral proposed").  As the Illinois Supreme Court has recognized, a rule of professional conduct must be read using its plain language, and courts are not permitted to "insert a condition [the Illinois Supreme Court] did not express when the rule was adopted." *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 40, 90 N.E.3d 400, 411.  Thus, based solely on the text, Edelson complied with Rule 1.5(e) by obtaining the Lion Air client consent in December 2021 before any fees were divided.

This understanding is also supported when subsection e is read in context with the rest of the rule.  Subsection b in Rule 1.5—the primary provision directing attorneys to communicate representation scope and fees to clients—contains a clause requiring such communication "before or within a reasonable time after commencing the representation." Ill. R. Prof. Conduct 1.5(b).  The Court finds it instructive that the Illinois Supreme Court omitted this "reasonable time" clause from the subsection concerning the communication of fee-sharing agreements.  *See Bennett*, 2020 IL App (5th) 180281, ¶ 51, 151 N.E.3d at 1195 ("[T]he Rules of Professional Conduct of 2010 are interpreted in accordance with the principles of statutory construction.").  The juxtaposition of Rule 1.5(b) and (e) accordingly further supports the conclusion that the contract at issue is enforceable.

8

The ABA Model Rules do not compel a different result. The defendants correctly point out that ABA Model Rule 1.5(e) mirrors Illinois Rule 1.5(e). ABA commentary on the model rule opines that client consent "must be completed before or within a reasonable time after the commencement of the representation." ABA Comm. on Ethics & Prof'l Responsibility, Formal Op. 16-474 (2016). But as Edelson correctly notes the ABA Model Rules are "merely advisory" in Illinois. *In re Vrdolyak*, 137 Ill. 2d at 421, 560 N.E.2d at 845. The Illinois Supreme Court "remains the final authority in formulating, defining and enforcing" the state's Rules of Professional Conduct. *Id.* In short, the plain language of the rules, as guided by basic principles of statutory interpretation, is the primary touchstone for construing them. *See Esposito*, 2017 IL 121297, ¶ 40, 90 N.E.3d at 411 (rejecting an interpretation that "would require [the court] to depart from the rule's plain language"); *see also Gaffney v. Bd. of Trustees of Orland Fire Prot. Dist.*, 2012 IL 110012, ¶ 56, 969 N.E.2d 359, 372 ("We will not depart from the plain statutory language by reading into it exceptions, limitations, or conditions that conflict with the expressed intent . . . .").

The final point buttressing a conclusion of enforceability is Illinois's public policy rationale underlying Rule 1.5—empowering clients. The Illinois Supreme Court has explained that Rule 1.5 "require[s] disclosure of fee-sharing arrangements in order to preserve a client's right to be represented by the attorney of his or her choosing." *Esposito*, 2017 IL 121297, ¶ 38, 90 N.E.3d at 410; *see also Romanek v. Connelly*, 324 Ill. App. 3d 393, 399, 753 N.E.2d 1062, 1067 (2001) (Rule 1.5 "embod[ies] this State's public policy of placing the rights of clients above and beyond any lawyers' remedies in seeking to enforce fee-sharing arrangements"); *Holstein v. Grossman*, 246 Ill. App. 3d

9

719, 737, 616 N.E.2d 1224, 1236 (1993) ("Our paramount concern must be the effect these fee-sharing agreements have on the clients, not the attorneys involved."). Declining to enforce the fee-sharing agreement in this case would effectively nullify the will of the Lion Air clients and, therefore, Rule 1.5's reason for being. The Lion Air clients did ultimately agree to the fee split. The Court concludes that the timing of that consent does not render the agreement unenforceable.

Finally, Lira and Griffin each offer individual arguments for why summary judgment should be entered in their favor on Edelson's breach of contract claim. These arguments lack merit. Lira argues that the contract's fee split does not comport with Rule 1.5 because it does not specify whether the fee will be split 50-50 or whether it will be subject to adjustment based on the work performed. The Court disagrees with Lira's apparent contention that a fee-sharing agreement must set a definitive fee-splitting formula and cannot, like this one, contain a clause permitting an adjustment to ensure proportionality. The only provision in Rule 1.5(e) potentially constraining the division amounts in a fee-sharing agreement is subparagraph one, which requires that the division of fees be "in proportion to the services performed by each lawyer." Ill. R. Prof. Conduct 1.5(e)(1). This requirement does not require a predetermined division percentage, nor does it preclude a clause allowing an adjustment in the event that the initial division is not proportional. If anything, an adjustment clause like the one in the agreement at issue actually *ensures* that the agreement comports with Rule 1.5(e). Furthermore, the sole case that Lira cites to support his argument—*McCracken & McCracken, P.C. v. Haegele*, 248 Ill. App. 3d 553, 618 N.E.2d 577 (1993)—does not even concern the division of fees between lawyers and accordingly does not actually

10

support his position.  *Id.* at 560, 618 N.E.2d at 581 (discussing the reasonableness of contingency fees).  Finally, to the extent that Lira premises his argument on the notion that Edelson cannot factually prove the proportionality of its fees, the Court concludes that this argument is premature because it comes before the end of discovery. Defendants asked to submit their motions for summary judgment before the completion of discovery, and the Court allowed this in light of their representation that they would be presenting, essentially, legal arguments (i.e. their arguments regarding the enforceability of the fee-splitting agreement).

Griffin separately argues that he cannot be held liable for breach of contract because he is not a party to the contract.  But Griffin asserted this argument for the first time in his reply brief.  For this reason, he has forfeited the point for purposes of summary judgment, *see Narducci v. Moore*, 572 F.3d 313, 324 (7th Cir. 2009), though Edelson should be prepared to address the point as the case proceeds.

 For these reasons, the Court denies the defendants' motions for summary judgment with respect to Edelson's breach of contract claim.

B.   **Remaining claims**

Edelson has asserted a claim of unjust enrichment in its complaint, and now, in the course of summary judgment briefing, the firm asserts a claim of *quantum meruit* as a basis for recovery even if the written agreement is invalidated.[1]  The unjust

---

[1] Although these two claims are similar in that they both provide for compensation in lieu of an express contract, the method of recovery under each theory is distinct.  "In a *quantum meruit* action, the measure of recovery is the reasonable value of work and material provided, whereas in an unjust enrichment action, the inquiry focuses on the benefit received and retained as a result of the improvement provided by the contractor."  *Hayes Mech., Inc. v. First Indus., L.P.*, 351 Ill. App. 3d 1, 9, 812 N.E.2d 419, 426 (2004).

enrichment claim has been stayed in this case on the defendants' motion due to the bankruptcy proceedings against Girardi Keese. Having obtained a stay of proceedings relating to that claim, defendants cannot appropriately seek summary judgment on it now. This aspect of their motions is overruled without prejudice.

As to the putative *quantum meruit* claim, the Court notes that quasi-contract claims can only be brought in the absence of an express contract. *See Archon Constr. Co., Inc. v. U.S. Shelter, L.L.C.*, 2017 IL App (1st) 153409, ¶ 32, 78 N.E.3d 1067, 1074. As such, because the Court has concluded that the fee-sharing agreement is enforceable, there is no basis for a claim of *quantum meruit*. The Court notes, however, that if it had found the agreement unenforceable, it would not have permitted Edelson to proceed with a *quantum meruit* claim. In response to twelve of Lira's interrogatories that each ask Edelson about the time spent or costs incurred on behalf of the Lion Air clients—which would be significant on a *quantum meruit* claim—Edelson uniformly wrote, "Plaintiff objects to this Interrogatory as irrelevant, in that Edelson only seeks a fee split based on the percentages set forth in the letters with Mr. Lira and Mr. Griffin, to which the clients have agreed." Pl.'s Resps. to Def. Lira's Interrogs. at 2–4 (dkt. no. 130-10). Edelson cannot, on the one hand, decline to respond to the defendants' discovery requests for information regarding the costs it incurred, and on the other hand, simultaneously maintain that the defendants were on notice that the firm would pursue recovery on a theory of *quantum meruit*. *Cf. Beaton v. SpeedyPC Software*, 907 F.3d 1018, 1023 (7th Cir. 2018) (explaining that although "plaintiffs do not need to plead legal theories," they cannot "switch course" when "the change unfairly harms the defendant").

In a similar vein, Edelson argues in its response brief that the defendants can be held liable under California Penal Code section 496. But Edelson did not include this claim or anything like it in the complaint, and there is nothing in the record to suggest that it put the defendants on notice of any potential for liability under this provision. *See id.* (explaining how defendants must have "fair notice of what [the] suit is about" to permit an unpleaded claim); s*ee also Chessie Logistics Co. v. Krinos Holdings, Inc.*, 867 F.3d 852, 860 (7th Cir. 2017) (discussing when plaintiffs can amend legal theories on summary judgment). There is thus no reason for the Court to address the claim now. The Court takes no position at this time regarding whether a claim under this provision is proper or may be included in Edelson's anticipated amended complaint.

Lastly, both Griffin and Lira have also moved for summary judgment on Edelson's accounting claim, but Edelson does not respond to their arguments. The Court accordingly concludes that Edelson has conceded this claim against both defendants. *See Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Additionally, Lira has solely moved for summary judgment on Edelson's conversion claim against him. Here too, Edelson does not respond to this argument, so the Court concludes that it has conceded this claim against Lira.

### Conclusion

For the reasons stated above, the Court grants Griffin's motion for summary judgment on the accounting claim (Count 2 of the current complaint), but otherwise denies the motion [dkt. no. 121]. The Court grants Lira's motion for summary judgment on the accounting and conversion claims (Counts 2 and 5), but otherwise denies the motion [dkt. no. 130]. The Court sets the case for a telephonic status hearing on August

13

17, 2022 at 8:55 a.m.  The following call-in number will be used:  888-684-8852, access code 746-1053.  The parties are directed to promptly confer regarding a schedule for further proceedings and are to file on August 15, 2022 a joint status report with an agreed proposed schedule, or alternative proposals if they cannot agree.

_____
MATTHEW F. KENNELLY
United States District Judge

Date:  August 9, 2022